# DAVID A. THOMPSON
# STECKLOW COHEN & THOMPSON

WWW.WYLIELAW.COM

10 SPRING STREET SUITE 1
NEW YORK, NEW YORK 10012
TEL:    (212) 566-8000
FAX:    (212) 202-4952
DTHOMPSON@WYLIELAW.COM

May 1, 2014

**BY ECF and FAX**
Honorable Judge Henry B. Pitman
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007
Fax: (212) 805-6111

Re:     Wiles v. City of New York, 13-cv-2898 (HB) (HP)

Dear Honorable Judge Pitman:

1.     I write as counsel for the plaintiff is this action.  This letter is intended to provide your Honor with information concerning the issues the plaintiff intends to raise in the conference already scheduled for tomorrow, May 2, 2014.

**I.     The City Has Revealed a Previously-Undisclosed Arresting Officer, and Denied Further Information on Grounds of Attorney-Client Privilege; Sanctions Are Warranted**

2.     As the Court is aware, fact discovery in this case was originally scheduled to close on March 15, 2014.  Due to the City's failure to comply with its discovery obligations, discovery has twice been extended, and fact discovery will now close on May 16, 2014. Yesterday, with two weeks left in discovery, the defendants revealed that a person whose existence was never before disclosed was the plaintiff's "real" arresting officer in the November 5, 2011 incident.  In the conference tomorrow, the plaintiff will ask, among other relief, that the Court set a briefing schedule for a motion for discovery sanctions against the City of New York.

3.     The facts are as follows.  The Omniform arrest record for the November 5, 2011 incident states that the plaintiff's arresting officer was Sergeant Nikim Walker.  The defendants

1

identified Sergeant Walker, and only Sergeant Walker, as the plaintiff's arresting officer in

response to an interrogatory. Counsel for the defendants represented to counsel for the plaintiff

that Sergeant Walker was indeed the arresting officer, but that he was in the military and on an

overseas deployment that will last until November. ACC Andrew Lucas made the same

representation to this Court during the conference on March 28, 2014. According to the City,

Sergeant Walker is overseas on military duty and will not return until after trial.

       4.      During the 30(b)(6) deposition yesterday, Deputy Chief Steven Anger revealed

for the first time that the "real" arresting officer was a Police Officer McNamara (a different

person from the Deputy Chief McNamara who was involved in the Sept. 17, 2012 arrest).

Deputy Chief Anger stated that he believed that P.O. McNamara was the driver for a Captain who

was present at the scene, but he was unable to provide the name of the Captain, or any further

information.

       5.      I asked Deputy Chief Anger what the basis was for his testimony concerning

P.O. McNamara's involvement. Mr. Lucas directed Deputy Chief Anger not to answer, invoking

attorney-client privilege. Deputy Chief Anger testified that, apart from allegedly privileged

attorney-client communications, he had no independent basis for his testimony. Deputy Chief

Anger testified that he has not contacted or attempted to contact P.O. McNamara as part of his

preparation to testify as a 30(b)(6) witness. As of this writing, no documents reflecting P.O.

McNamara's alleged role in the arrest have been produced.

**II.**     **The 30(b)(6) Witness Failed To Prepare for the Deposition; Sanctions Are**
          **Warranted**

       6.      The defendants designated Deputy Chief Steven Anger as the City's 30(b)(6)

witness with respect to the subject matter in parts 1 and 2 of the 30(b)(6) notice. By email, Mr.

Lucas limited the scope of the designation to matters relating to the Nov. 5, 2011 arrest. Even as

so limited, Deputy Chief Anger was unprepared to testify.

7.     I questioned Deputy Chief Anger on his preparations to testify. He testified that he reviewed 35 pages of documents that were in a file maintained by the NYPD Operations division, and he reviewed two videos. The documents reviewed by Deputy Chief Anger did **not** include the majority of the documents produced in discovery, including any of the documentation of the plaintiff's arrest, such as the arrest report, the DAT, and so on. Deputy Chief Anger did not communicate with any of the officers who were present at the scene of the arrest. Deputy Chief Anger did not communicate with any of the officers who were responsible for processing the plaintiff's arrest. Other than a single file clerk at the NYPD Operations Division, Deputy Chief Anger did not communicate with anyone in preparing for the deposition.

8.     As a result, Deputy Chief Anger was unable to answer many of the questions posed to him during the deposition. For example, Deputy Chief Anger testified that P.O. McNamara was the arresting officer, but was unable to provide further information due to a combination of his own lack of knowledge and defense counsel's assertion of attorney-client privilege cutting off further questioning. In addition, Deputy Chief Anger was unable to testify concerning the manner in which the plaintiff was handcuffed, how long the plaintiff was in custody, and where the plaintiff was processed.

III.    **The Defendants Have Willfully Failed to Comply With Their Discovery Obligations; Sanctions Are Warranted**

9.     The City's failure to provide a properly-informed 30(b)(6) witness is just the latest in a sequence of violations of the rules of discovery that began with the beginning of discovery itself. It has become apparent Counsel for defendants submitted Rule 26(a) disclosures, answers to interrogatories and documentary discovery responses without ever communicating with **either** the Incident Commander or the arresting officer for the November 5, 2011 arrest.

10.     Deputy Chief Anger was the Incident Commander at the November 5, 2011 incident. As Incident Commander, Deputy Chief Anger was the person who was ultimately

3

responsible for all police activity at the location of the arrest. During the deposition yesterday, I asked Deputy Chief Anger when he first learned of the existence of this litigation. He answered that he first learned of it last week. The existence of the alleged arresting officer McNamara was disclosed only this week.

11.     It is also apparent that the City has systematically failed to undertake proper due diligence in responding to discovery. Deputy Chief Anger arrived at the deposition with approximately 30 pages of previously-undisclosed documents. Deputy Chief Anger testified that these were the contents of a file about the November 5, 2011 incident that was maintained at the NYPD Operations Unit. Many of these documents relate directly to the identification of involved officers, information which the City has stubbornly resisted providing since the March 28th conference. I asked Deputy Chief Anger how he obtained the file. He responded that he called the Operations Unit and asked for their file on the deployment of officers that day, and he received it **within an hour**. The inescapable conclusion is that these documents would have come to light much earlier if counsel for the City had simply contacted the Operations Unit when responding to the plaintiff's document demands back in February.

12.     The NYPD Operations Unit is an obvious place to seek records of any large scale police action. More than 70 different procedures in the Patrol Guide involve the NYPD Operations Unit. It acts as a clearinghouse for information and a distributor of resources (both human and equipment) to the field. Almost all the procedures relating to policing unusual events, or to the deployment of large numbers of officers, involve the Operations Unit. Any attorney making a good faith effort to comply with discovery obligations in a case such as this one would contact the Operations Unit as a first step -- not a step to be taken at the end of discovery. The inescapable conclusion is that the City did not make a good faith effort to comply with its discovery obligations.

13.     The plaintiff's interrogatories included four interrogatories that were interposed in order to allow the Court to monitor the City's compliance. These interrogatories were:

Interrogatory No. 1: Please state the name, address, job title and employer of the person(s) answering these interrogatories, and identify the person(s) or police units who provided information contained or reflected in the response(s).

Interrogatory No. 2: Please identify each person or police unit who was the custodian of, or who provided, the documents produced by the defendants in response to the Plaintiffs demands for the production of documents.

Interrogatory No. 3: Please identify each person or police unit which was notified of the Plaintiff's interrogatories and demands for the production of documents.

Interrogatory No. 7: Identify the custodian(s) of any documents concerning the Incidents(s) in the custody or control of the NYPD or the City of New York, and the location(s) at which such documents are stored. Please note that, pursuant to Local Rule 26.3(c), the term "document" includes electronically stored information.

14.     The City provided no substantive response to any of these interrogatories, except

to identify Andrew Lucas as the attorney who answered the interrogatories in response to

interrogatory number 1.  For interrogatories number 2, 3 and 7, the response was the same:

Defendants object to Interrogatory No. [_] on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, to the extent that it is not relevant nor reasonably calculated to lead to the discovery of admissible evidence, and to the extent the request seeks information protected by attorney client privilege.[1]

15.     Thus, **the City did not identify any individuals or police units as having**

**participated in any way in responding to discovery**. The inescapable conclusion today is that

the City refused to answer these interrogatories because the answer would have revealed the

City's lack of effort and lack of good faith in performing its discovery obligations.

IV.     **The City Must Provide a 30(b)(6) Witness Concerning the Plaintiff's Lost Wages**

16.     During the 30(b)(6) deposition yesterday, the City initiated a call to the Court in

order to seek a ruling that the scope of the 30(b)(6) excludes the plaintiff's lost wages damages.

As the Court may recall, the defendants did not articulate any objections to the scope of the

deposition notice, from the time the notice was served on February 28, 2014, until the recent

---

[1]     The City's boilerplate objections, which were made 50 days after the discovery demands were served, were both inadequate and untimely. The City's reference to privilege was contingent and hypothetical. It did not comply with Local Rule 26.2(b), requiring written identification of, *inter alia*, the documents or communication concerning which privilege is asserted, the "general subject matter" of the document or communication, and the author/recipient/parties.

conference held on April 23, 2014. The Court properly held that because "[a]n objection to an error or irregularity in a deposition notice is waived unless promptly served in writing on the party giving the notice," the City had waived any objections to the scope of the notice. See F.R.C.P. § 32(d)(1). The question of whether the scope of the notice is overbroad is *res judicata*. The only question to be decided is whether the plaintiff's lost wages claim is stated within the notice.

17.     Item One of Appendix A to the 30(b)(6) notice states that the City will be deposed, *inter alia*, on the facts underlying paragraphs 1 though 119 of the Complaint. Paragraphs 2 and 67-72 of the Complaint relate the fact that, due to the two arrests at issue in this case, the plaintiff lost a full time teaching position with the New York City Department of Education and then lost the opportunity to take a part-time teaching position. They state that, as a result, the plaintiff suffered lost wages. The deposition notice, by identifying particular paragraphs in the pleadings, gives very precise notice that the subject of the plaintiff's lost wages falls within the scope of the notice. Indeed, the purpose of citing particular paragraphs in the Complaint was to remove any ambiguity as to the scope of Item One. The plaintiff's lost wages claim is unambiguously within the scope of the 30(b)(6) deposition.

## V.     Relief Requested

18.     Because there are numerous issues to be addressed, and because the plaintiff intends to seek a variety of sanctions including preclusion and attorneys' fees, the plaintiff believes a formal motion is the best way to flesh out the issues for the Court's decision. Accordingly, the plaintiff requests that the Court set a motion schedule for the plaintiff's motion.

19.     The plaintiff requests that the Court issue an Order compelling the defendants to answer 1, 2, 3 and 7 before the date set for the plaintiff's motion to be filed. The plaintiff requests that the Court order the defendants to provide, in these answers, the dates when the particular individuals or police units identified were contacted. The degree to which the City delayed

performing its required discovery obligations is highly relevant to the questions of intent and willfulness that will be central to the plaintiff's motion.

20.    The plaintiff requests that the Court issue an Order permitting the plaintiff to amend the Complaint to name additional defendants, including the newly-disclosed alleged arresting officer P.O. McNamara.  Because the City has not yet produced reliable information concerning the participation of P.O. McNamara, the plaintiff requests that the plaintiff's time to amend not be limited, so that the plaintiff will not be prejudiced by further delay on the part of the City in providing responsive information.

21.    The plaintiff requests that the Court issue an Order requiring the City to obey the Court's previous April 23, 2014 Order directing compliance with the plaintiff's Rule 30(b)(6) deposition notice, by identifying and producing a witness to testify concerning the plaintiff's lost wages claim.

Thank you very much for your time and attention.

Respectfully submitted,

David Thompson

cc:    Andrew Lucas, Esq.
       Fax: (212) 788-8896