13 CV 2898 (HB) (HBP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA WILES,

                            Plaintiff,

                -against-

THE CITY OF NEW YORK, a municipal entity, NEW YORK CITY POLICE OFFICER PASTULA, NEW YORK CITY POLICE LIEUTENANT ZIELINSKI, NEW YORK CITY POLICE SERGEANT JOHN SLAYNE and NEW YORK CITY POLICE OFFICERS "JOHN DOES 1-10"

                          Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

***ZACHARY CARTER***
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Andrew Lucas*
*Tel: (212) 356-2373*
*NYCLIS #: 2013-016424*

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL HISTORY................................................................................................ 2

STATEMENT OF FACTS ................................................................................................. 2

STANDARD OF REVIEW ............................................................................................... 6

ARGUMENT..................................................................................................................... 7

PROBABLE   CAUSE   EXISTED   FOR   THE   ARREST   AND
IMPRISONMENT   OF   PLAINTIFF,   AND   THE   OFFICERS   ARE
PROTECTED BY QUALIFIED IMMUNITY...................................................................7

    **A.**   **Probable Cause Existed for Plaintiff's November 5, 2011 Arrest** ...................... 8

    **B.**   **Probable Cause Existed for Plaintiff's September 17, 2012 Arrest** .................... 9

    **C.**   **Plaintiff's Claims for Failure to Intervene Must be Dismissed as Probable Cause Existed for the Arrest of Plaintiff**................................................................ 11

    **D.**   **Plaintiff's First Amendment Claims Must Be Dismissed** ................................... 11

    **E.**   **Plaintiff's Malicious Abuse of Process Claims Must Be Dismissed**................... 12

    **F.**   **Qualified Immunity Precludes Any Liability From Plaintiff's Arrests**............ 12

PLAINTIFF'S   CLAIM   FOR   EXCESSIVE   FORCE   FAILS   AS   A
MATTER OF LAW AND UNDER THE FACTS PRESENTED...................................14

PLAINTIFF'S   MALICIOUS   PROSECUTION   CLAIMS   MUST   BE
DISMISSED. ...................................................................................................................18

PLAINTIFF'S   MUNICIPAL   LIABILITY   CLAIMS   FAIL   ON   THE
MERITS AND AS A MATTER OF LAW........................................................................20

PLAINTIFF'S STATE CLAIMS FAIL AS A MATTER OF LAW.............................22

    **A.**   **Plaintiff's Assault and Battery Claims Must be Dismissed**................................ 22

**B.    Plaintiff's Negligent Retention, Hiring, Training and Supervision Claims Must Be Dismissed.**................................................................................................ 22

PLAINTIFF'S LOST WAGES CLAIM MUST BE DISMISSED OR LIMITED. ..........................................................................................................................23

CONCLUSION .......................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

Alford v. City of New York, 2012 U.S. Dist. LEXIS 123137 (E.D.N.Y. Aug. 29, 2012) ........... 15

Beckles v. City of New York, 2012 U.S. App. LEXIS 17433 (2d Cir. 2012)............................ 16

Bernard v. United States, 25 F.3d 98 (2d Cir. 1994) ...................................................... 7

Bradway v. Gonzales, 26 F.3d 313 (2d Cir. 1994) ....................................................... 13

Broughton v. State, 37 N.Y.2d 451 (1975)................................................................ 18

Burg v. Gosselin, 591 F.3d 95 (2d Cir. 2010)............................................................ 20

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ............................................... 6, 14, 21

City of Los Angeles v. Heller, 475 U.S. 796 (1986) ............................................... 11, 20

Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994)............................................................. 12

Covington v. City of New York, 171 F.3d 117 (2d Cir. 1999)....................................... 7

Curiano v. Suozzi, 63 N.Y.2d 113 (1984) ............................................................... 12

Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001)............................................ 11

Devenpeck v. Alford, 543 U.S. 146 (2004) ............................................................. 7

Dunaway v. New York, 442 U.S. 200 (S. Ct. 1979)..................................................... 8

Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451 (1992)............................ 6

Esmont v. City of New York, 371 F. Supp. 2d 202 (E.D.N.Y.2005) ............................... 16

Estate of Yankel Rosenbaum v. City of New York, 982 F. Supp. 894 (E.D.N.Y. 1997)............ 22

Fabrikant v. French, 691 F.3d 193 (2d Cir. 2012) ...................................................... 11

Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310 (S.D.N.Y. 2012 ............................ 15

Faruki v. City of New York, 517 Fed. Appx. 1, 3 (2d Cir. 2013) ........................................ 15, 20

Fulton v. Robinson, 289 F.3d 188 (2d Cir. 2002)........................................................ 18

Gonzalez v. City of New York, 38 Fed. Appx. 62 (2d Cir. 2002)..................................... 14

Graham v. Connor, 490 U.S. 386 (1989)............................................................ 14, 15

Grant v. City of New York, 500 F. Supp. 2d 211 (S.D.N.Y. 2007) ................................... 16

Hunter v. Bryant, 502 U.S. 224 (1991)................................................................... 13

Hyde v. Caputo, 2001 U.S. Dist. Lexis 6253 (E.D.N.Y. 2001)....................................... 7

Irish v. City of New York, 2010 U.S. Dist. LEXIS 130466 (S.D.N.Y. 2010)............................ 12

Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) .................................................................... 7

Janetka v. Dabe, 892 F.2d 187, (2d Cir. 1989) ................................................................... 18

Johnson v. Constantellis, 221 Fed. Appx. 48 (2d Cir. 2007) ............................................. 19

Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973) ................................................................. 15

Johnston v. Port Auth. of N.Y. & N.J., 2011 U.S. Dist. LEXIS 82815 (E.D.N.Y. 2011) ........... 22

Karoon v. New York City Transit Auth., 241 A.D.2d 323 (1st Dep't 1997) ....................... 23

Kerman v. City of New York, 261 F.3d 229 (2d Cir. 2001) ................................................. 15

Kia P. v. Mcintyre, 235 F.3d 749 (2d Cir. 2000) ................................................................ 14

Kuck v. Danaher, 600 F.3d 159 (2d Cir. 2010) ................................................................... 11

LaTrieste Rest. & Cabaret v. Vill. of Port Chester, 40 F.3d 587 (2d Cir. 1994) ............... 14

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) .............................................................. 13, 18

Lopez v. City of New York, 901 F. Supp. 684 (S.D.N.Y. 1995) .......................................... 12

Malley v. Briggs, 475 U.S. 335 (1986) ............................................................................... 13

Marcavage v. City of New York, 689 F.3d 98 (2d Cir. 2012) .............................................. 7

Martinez v. City of New York, 2008 U.S. Dist. LEXIS 49203 (S.D.N.Y. 2008) ................ 21

Martinez v. Muentes, 340 Fed. Appx. 700 (2d Cir. 2009) ................................................. 21

Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) ......... 20

Murphy v. Lynn, 118 F.3d 938, (2d Cir. 1997) ................................................................... 18

Nogbou v. Mayrose, 2009 U.S. Dist. LEXIS 96118 (S.D.N.Y. 2009) ............................... 16

Nogbou v. Mayrose, 400 Fed. Appx. 617 (2d Cir. 2010) ................................................... 16

O'Neill v. Town of Babylon, 986 F.2d 646 (2d Cir. 1993) ................................................... 7

Ortiz v. Leak, 214 A.D.2d 840 (3rd Dep't 1995) ............................................................... 24

Rasmussen v. City of New York, 766 F. Supp. 2d 399 (E.D.N.Y. 2011) ............................ 23

Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335 (S.D.N.Y. 2005) .................... 15

Romano v. Howarth, 998 F.2d 101 (2d Cir. 1993) ............................................................. 15

Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) ..................................................... 16

Roundtree v. New York, 778 F. Supp. 614 (E.D.N.Y. 1991) ............................................. 16

Russell v. Smith, 68 F.3d 33, (2d Cir. 1995) ...................................................................... 18

Santulli v. Russelo, 2013 U.S. App. LEXIS 5285 (2d Cir. 2013) ..................................... 11

Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003) ................................................... 12

Schy v. Vermont, 2 F. App'x 101 (2d Cir. 2001) ............................................................... 16

Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. 2009) ............................ 12

Singer v. Fulton County, 63 F.3d 110 (2d Cir. 1995) ................................................................ 7

Southerland v. City of New York, 667 F.3d 87 (2d Cir. 2011) .................................................. 14

State Farm Mut. Auto. Ins. Co. v. Stack, 55 A.D.3d 594 (2nd Dep't 2008) ................................ 24

Stefanopoulos v. City of New York, 2005 U.S. Dist. LEXIS 22445 (E.D.N.Y. 2005) ................ 16

Tracy v. Freshwater, 623 F.3d 90 (2d Cir. 2010) .................................................................... 15

U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012) ............................................................ 8, 9, 13

United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999) ............................................................ 15

Wilder v. City of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) .................................. 16

Wilkins v. Gaddy, 130 S. Ct. 1175 (2010) ................................................................................ 15

Wims v. New York City Police Dep't, et al., 2011 U.S. Dist. LEXIS 78641 (S.D.N.Y. 2011) ... 16

Ying Jing Gan v. City of New York, 996 F.3d 522 (2d Cir. 1993) ........................................ 7, 14

Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007) ........................................................ 7, 13, 20

## Statutes

42 U.S.C. § 1983 ................................................................................................................ 1, 20

Fed. R. Civ. P. 56 ........................................................................................................... 1, 6, 23

N.Y. Penal Law §240.20 ........................................................................................................ 8, 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

JOSHUA WILES,

                                  Plaintiff,

                    -against-

THE CITY OF NEW YORK, a municipal entity, NEW YORK
CITY POLICE OFFICER PASTULA, NEW YORK CITY
POLICE LIEUTENANT ZIELINSKI, NEW YORK CITY
POLICE SERGEANT JOHN SLAYNE and NEW YORK CITY
POLICE OFFICERS "JOHN DOES 1-10"

                                 Defendants.

-------------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

**13 CV 2898 (HB) (HBP)**

        Defendants City of New York and Officer Pastula by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Memorandum of Law in support of their Motion to Dismiss pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

        Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against defendants alleging that he was subjected to a violation of his First, Fourth, and Fourteenth Amendment rights, as well as common laws claims of assault, battery, negligent hiring, retention, training, and supervision.

        Defendants are entitled to summary judgment on these claims as probable cause and qualified immunity exist for plaintiff's arrests and any prosecution to the extent judicial process was brought.  Plaintiff's First Amendment claim fails as probable cause and qualified immunity render his arrests privileged.  Plaintiff's excessive force claim fails as the handcuffing plaintiff experienced is not actionable as a matter of law, and any force was not excessive

regardless.  Plaintiff's Monell claim cannot survive on the merits, or given the underlying facts

of plaintiff's arrest.  Finally, Plaintiff's common law claims, limited to his September 17, 2012

arrest, fail procedurally and under the facts presented.

## PROCEDURAL HISTORY

Plaintiff filed a notice of claim on or about December 19, 2012 with respect to his

September 17, 2012 arrest only.  Decl. Exhibit A.  He appeared for a statutory hearing on

January 17, 2013.  Decl. Exhibit B.  The instant action was filed on April 30, 2013.  Decl.

Exhibit C.  An amended complaint was filed on April 4, 2014.  Decl. Exhibit E.  Discovery

closed on May 16, 2014.

## STATEMENT OF FACTS

Plaintiff brings claims related to his arrests on November 5, 2011 and September

17, 2012 at Occupy Wall Street events.

On November 5, 2011, Plaintiff attended an Occupy Wall Street march that

traveled from Zuccotti Park to the New York Supreme Court building at 60 Centre Street.  56.1

¶¶ 11-14.  Plaintiff arrived at Zuccotti Park in the late morning and the march left within one

hour.  56.1 ¶¶ 6, 11.  Plaintiff wore a distinctive white T-shirt that he had spelled out "I'm

human" on the front and "I demand justice" on the back, he also wore a winter hat, gloves, a long

sleeve shirt underneath his T-shirt and jeans.  56.1 ¶¶ 4-5.  Hundreds of protestors, including

plaintiff, filled the sidewalk in front of 60 Centre Street.  56.1 ¶¶ 35, 74.  Police officers lined up

a the bottom of the steps of the Courthouse and prevented protestors from moving onto the stairs.

56.1 ¶¶ 17-18.  When the protestors and plaintiff were not permitted onto the steps they became

upset.  56.1 ¶ 19.  Plaintiff and the protestors were told they must disperse because they were

blocking the sidewalk.  56.1 ¶¶ 30, 35.  After the dispersal orders had begun, Plaintiff, from the

base of the steps faced the crowd of protestors and led a chant of "we want the steps."  56.1 ¶¶

29, 75, 77. Numerous orders to disperse were given, including warnings that failure to disperse would result in arrest, over the course of over ten minutes prior to Plaintiff's arrest.  56.1 ¶¶ 32-34, 36, 75, 79-84, 86, 87, 89, 92.  Of the hundreds obstructing the sidewalk in front of 60 Centre Street at the time the orders to disperse began, twenty individuals were arrested.  56.1 ¶ 97.

   In response to the orders to disperse and warnings about being arrested Plaintiff admits that he refused to comply.  56.1 ¶ 31.  Plaintiff believed the orders were not lawful and he had the right to ignore them.  56.1 ¶ 37.  Plaintiff chose to remain on the sidewalk circling in place while police issued dispersal orders just feet away from him.  56.1 ¶¶ 84-85; 90-91.  Plaintiff decided to read a copy of the Constitution to police officers while dispersal orders were read around him.  56.1 ¶¶ 92-93.  When police deployed orange mesh barriers to clear the sidewalk and continued to issue dispersal orders, Plaintiff deliberately pushed against them to prevent the police from clearing the sidewalk.  56.1 ¶¶ 41-42, 88, 94.  After the police had continuously issued dispersal orders and warning to the protestors, including plaintiff, for at least ten minutes, plaintiff decided to sit down on the sidewalk.  56.1 ¶¶ 43-44.  Plaintiff was arrested after he sat down on the ground as he had been given numerous dispersal orders and refused to comply.  56.1 ¶¶ 95-96.  Plaintiff refused orders to even stand up.  56.1 ¶¶ 50-51.  In fact Plaintiff never attempted to leave.  56.1 ¶ 23.

   Plaintiff's excessive force claim from November 5, 2011 relate to his being placed in zip-tie handcuffs only.  56.1 ¶ 59.  Plaintiff never requested any medical treatment while in custody, or sought out any medical treatment after his release.  56.1 ¶¶ 60-61.  Apart from bruising that dissipated within a week plaintiff had no ongoing injury.  56.1 ¶¶ 61-62.  Plaintiff does not know and cannot describe who he complained about his handcuffs to, or who replaced them.  56.1 ¶¶ 64-65, 68.  Plaintiff's zip-tie handcuffs were replaced twice in response

to his requests, once before he was transported from the scene of his arrest, and again when he arrived at 1 Police Plaza.  56.1 ¶¶ 66-67.  After eight hours in custody Plaintiff was released with a Desk Appearance Ticket.  56.1 ¶ 71.  The District Attorney's office declined to prosecute prior to Plaintiff's first court date.  56.1 ¶ 72.

On September 17, 2012 Plaintiff attended the one year anniversary events related to Occupy Wall Street in lower Manhattan.   Plaintiff learned about the events through the internet but is not sure where.  56.1 ¶¶ 102-104.  Plaintiff knew there were demonstrations at different banks, marches for various reasons and the events may have included blocking access to the Stock Exchange and the Wall Street area.  56.1 ¶¶ 105-106.  In fact the events planned for that day called explicitly for disruptions to lower Manhattan and the Wall Street area including "roving intersection occupations" around the stock exchange, and actions to "block Wall Street with non-violent civil disobedience."   56.1 ¶¶ 99-100.   Plaintiff knew ahead of time that Broadway and Wall Street, the location of his arrest, was a designated gathering location for protestors.  56.1 ¶ 120.  Plaintiff also knew that there were events around the opening bell of the Stock Exchange.  56.1 ¶ 106.  The opening bell of the stock exchange is at 9:30, and the Stock Exchange is less than one block from Broadway and Wall Street.

Plaintiff arrived in lower Manhattan at approximately 9:15 and after a brief detour on Nassau Street began to head towards Broadway and Wall Street.  56.1 ¶¶ 112-116.  As he approached Broadway and Wall Street he was aware of individuals demonstrating near the intersection.  56.1 ¶ 119.  As Plaintiff got closer the Broadway and Wall Street the police made a line across the sidewalk and ordered the crowd, including plaintiff to get back.  56.1 ¶¶ 121, 124.  Based on what he could hear, Plaintiff believed there were other individuals affiliated with Occupy Wall Street present.  56.1 ¶ 123.   After they ordered the crowd to get back officers

pushed the crowd back.  56.1 ¶ 122.  Officer Pastula guided Plaintiff north and continued to order Plaintiff to move back.  56.1 ¶¶ 125-127.  In response Plaintiff extended his arm in the air and stated this is what the 1st Amendment looks like to a group he perceived to be press.  56.1 ¶¶ 128-129.

After Plaintiff made this statement everything became stationary, except for individuals attempting to get to work.  56.1 ¶¶ 130-131.  Plaintiff remained in place on the sidewalk trying to figure out where to go next.  56.1 ¶ 134.  He remained near an entrance where police were permitting  employees of the Wall Street area to gain access.  56.1 ¶¶ 132, 135.  While he remained near that employee entrance, Plaintiff began chanting, including leading a call and response of "Who's Sidewalk?" "Our Sidewalk!"  56.1 ¶¶ 135-136.  Officer Pastula, a short distance away, approached Plaintiff a second time and placed him under arrest.  56.1 ¶¶ 137-138.

Plaintiff was placed on a police bus and put in zip-tie handcuffs.  56.1 ¶ 143.  Plaintiff's excessive force claims related to September 17, 2012 is based upon Officer Pastula placing his hand on plaintiff's neck and Plaintiff being placed in zip-tie handcuffs.  Plaintiff does not know who placed him in zip-tie handcuffs.  56.1 ¶ 144.  Plaintiff did not complain about his handcuffs for twenty minutes.  56.1 ¶ 146.  Within ten to fifteen minutes of Plaintiff's first complaint about his handcuffs they were removed and replaced.  56.1 ¶¶ 147-148.  Plaintiff treated his wrists with ice that night but never asked for medical treatment in custody or sought out any medical treatment after his release.  56.1 ¶¶ 152, 154-155.  Plaintiff's only complaint was of bruising that dissipated in about a week.  56.1 ¶ 156. Officer Pastula's contact with the back of Plaintiff's neck was momentary.  56.1 ¶¶ 139-140.  When asked to describe the pressure

on his neck Plaintiff described it only as enough to know he was about to be arrested.  56.1 ¶ 139.

Plaintiff also claims damages related to his loss of earnings as a teacher stemming from his arrests, however the lost wages from losing his job stem from his failure to maintain his teaching certification.  Plaintiff was fired by the Board of Education on July 1, 2012 as a result of having ignored four separate notices that his teaching certification was going to expire.  56.1 ¶¶ 160-161.  As described in the letter which terminated his service with the Department of Education Plaintiff was permitted to complete the summer session but lost his position for the following school year.  56.1 ¶¶ 162-163.  While he was eventually able to restore his certification, this restoration did not occur until after he had been fired.  56.1 ¶ 164.  Plaintiff's second arrest rendered him briefly ineligible to be a substitute teacher.  56.1 ¶¶ 167-168.  However, as a substitute teacher plaintiff had no contract, no right to work, and any loss of eligibility came as a result of policies that plaintiff was aware of and had submitted to.  56.1 ¶¶ 168-170.

### STANDARD OF REVIEW

Under Rule 56(c), summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 457 (1992).  A motion for summary judgment requires the party with the burden of proof at trial to "make a showing sufficient to establish the existence of [each] element essential to that party's case…since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

To establish the existence of each element of their claim, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.3d 522, 532 (2d Cir. 1993).

## ARGUMENT

### PROBABLE CAUSE EXISTED FOR THE ARREST AND IMPRISONMENT OF PLAINTIFF, AND THE OFFICERS ARE PROTECTED BY QUALIFIED IMMUNITY.

The existence of probable cause to arrest constitutes justification and is a complete defense to a claim of false arrest and imprisonment.  Hyde v. Caputo, 2001 U.S. Dist. Lexis 6253, *7 (E.D.N.Y. 2001); *citing* Covington v. City of New York, 171 F.3d 117, 112 (2d Cir. 1999).  "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotations omitted); *citing* Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993).

Where there is probable cause to arrest for any offense a false arrest claim is subject to dismissal.  Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); *citing* Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); *see also* Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).

"Probable cause exists where the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been, or is

being committed by the person to be arrested."  Dunaway v. New York, 442 U.S. 200, 208 (S. Ct. 1979).

### A. Probable Cause Existed for Plaintiff's November 5, 2011 Arrest

On November 5, 2011, Plaintiff was charged under the disorderly conduct statute. Decl. Exhibit U.  Probable cause existed to arrest plaintiff for disorderly conduct on November 5, 2011.  "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . (5) He obstructs vehicular or pedestrian traffic; or (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse…"  N.Y. Penal Law § 240.20(5),(6); U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).

The sidewalk in front of 60 Centre Street was completely blocked by protestors prior to the police issuing orders to disperse.  56.1 ¶¶ 35, 74; Decl. Exhibit G; Decl. Exhibit H. When police began issuing dispersal orders plaintiff heard them, and made the conscious decision to disregard them.  56.1 ¶¶ 31-33.  Plaintiff maintains both that he did not think the orders were legal, and that he eventually thought he would be arrested regardless of his conduct. 56.1 ¶¶ 37, 47.  However, it is clear that Plaintiff could have exited at almost any point after the first order to disperse was issued, and the orders were lawful.  56.1 ¶¶ 35, 74.  U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).  Officers not only made announcements from the steps of the Courthouse, but circulated through the crowd, and using bullhorns, issued countless orders, requests and warnings to disperse and allowed an opportunity to leave, whether to Foley Square or elsewhere.  56.1 ¶¶ 32-34, 36, 75, 79-84, 86, 87, 89, 92; Decl. Exhibit G; Decl. Exhibit H. Over at least ten minutes the vast majority of protestors complied, and were able to exit the location, and a large number crossed over to Foley Square and were able to continue their

protest.  56.1 ¶¶ 35, 97;  Decl. Exhibit G; Decl. Exhibit H.  Conversely, Plaintiff seems to have actively sought out confrontation with the police.  At the outset he admits he never attempted to leave at any point.  56.1 ¶ 23.  He responded to dispersal orders by defying and questioning the dispersal orders.  56.1 ¶¶ 85, 90-91.  When the police resorted to mesh barriers to move the remaining protestors from the sidewalk Plaintiff approached and pushed into those barriers.  56.1 ¶¶ 88, 94.  Finally, Plaintiff told others he was going to sit down on the sidewalk, sat down with a group, and refused to get up when ordered to.  56.1 ¶¶ 45, 50.  At this point, Plaintiff was part of a protest that was blocking pedestrian traffic and given a lawful order to disperse.  He refused to disperse culminating in his sitting on the sidewalk and refusing to stand up, let alone disperse, there was not only probable cause for his arrest but commission of the violation at issue.

### B.  Probable Cause Existed for Plaintiff's September 17, 2012 Arrest

On September 17, 2012 Plaintiff was charged with, *inter alia*, disorderly conduct subsections five and six.  As above these make it a violation to block pedestrian traffic or to refuse a lawful order to disperse.  N.Y. Penal Law § 240.20(5),(6); U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).

Plaintiff knew that demonstrations may have included blocking access to the Stock Exchange and the Wall Street area.  56.1 ¶¶ 105-106.  The events planned for that day called explicitly for disruptions to lower Manhattan and the Wall Street area including "roving intersection occupations" around the stock exchange, and actions to "block Wall Street with non-violent civil disobedience."  56.1 ¶¶ 99-100.  Plaintiff knew ahead of time that Broadway and Wall Street, the location of his arrest, was a designated gathering location for protestors.  56.1 ¶ 120.  Plaintiff also knew that there were events around the opening bell of the Stock Exchange.

56.1 ¶ 106.  The opening bell of the stock exchange is at 9:30, and the Stock Exchange is less than one block from Broadway and Wall Street.  Plaintiff's arrest was at 9:30.  Decl. Exhibit M.

Plaintiff arrived at the intersection of Broadway and Wall Street and admits that he was approached and asked to move on.  56.1 ¶ 124.  Officers, including Officer Pastula then urged Plaintiff on, and continued to order him to move on.  56.1 ¶¶ 125-127.  Despite having a clear path north, Plaintiff did not move, and remained near the employee entrance to Wall Street. 56.1 ¶¶ 126, 130, 132, 134.  After being ordered to move Plaintiff remained stationary near the location where individuals trying to get to work needed access.  56.1 ¶¶ 131, 134-135.  Over the course of at least one minute Plaintiff remained at that location chanting on the sidewalk.  56.1 ¶¶ 135-136.  This included a call and response of "Who's Sidewalk?" "Our Sidewalk!"  56.1 ¶ 136.  After Plaintiff responded to the order to move on by refusing to move on, and chanting with other protestors about the sidewalk, Officer Pastula approached Plaintiff to place him under arrest.  56.1 ¶ 137.  Plaintiff was blocking pedestrian traffic near the narrow employee entrance, had refused a previous order to disperse, and his chanting made it seem that he intended to Occupy the sidewalk and contribute to the disruptions to Wall Street and the individuals who work and live in the area.

Plaintiff does not, and cannot contest that he was ordered and urged to move on, by various officers including Officer Pastula personally, and he instead remained not only by the intersection of Broadway and Wall Street, but near the access point for employees seeking to get to work.  Additionally, Plaintiff's chanting with other protestors, who evidently planned to disrupt the area and block Wall Street, made it appear that he had the intent to do the same, particularly as he was remaining there in defiance of a dispersal order at a choke point for employees and residents attempting to conduct business.  Plaintiff was arrested while actually

engaged in disorderly conduct for failure to disperse and for blocking pedestrian traffic so there can be no question that there was probable cause for his arrest as well.

### C. Plaintiff's Claims for Failure to Intervene Must be Dismissed as Probable Cause Existed for the Arrest of Plaintiff

The Second Circuit has held "Nonetheless, where, as here, the arresting officers committed no infringement, the logic of Heller would appear to preclude liability [for failure to intervene]." Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001); *citing* City of Los Angeles v. Heller, 475 U.S. 796 (1986).

Here Plaintiff brings failure to intervene claims with respect to both of his arrests. Where there has been no underlying Constitutional violation, as in this case, no claim for failure to intervene can lie. Accordingly any claim for failure to intervene must be dismissed.

### D. Plaintiff's First Amendment Claims Must Be Dismissed

In order to state a claim for First Amendment Retaliation, Plaintiff must establish "1) he has an interest protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by his exercise of that right; and 3) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168, (2d Cir. 2010); Santulli v. Russelo, 2013 U.S. App. LEXIS 5285, *3-4 (2d Cir. 2013).[1]

Plaintiff's First Amendment Retaliation claim fails as probable cause existed for his arrests and qualified immunity shields the actions of the officer. Probable cause is a complete defense to a claim of First Amendment retaliation. "Fabrikant's claims of malicious prosecution, unreasonable search and seizure, and First Amendment retaliation fail because defendants had probable cause…" Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012).

---

[1] Plaintiff does not set forth any basis for a retaliatory prosecution claim separate from his 1st Amendment retaliation claim. Accordingly, Plaintiff's retaliatory prosecution claim should be subsumed under his 1st Amendment retaliation claim or dismissed.

Here, as outlined above probable cause and qualified immunity render Plaintiff's arrests proper, and insulate Defendants from any liability.  As such, there can be no liability for alleged First Amendment retaliation.

### E.   Plaintiff's Malicious Abuse of Process Claims Must Be Dismissed

To maintain a claim for malicious abuse of process or retaliatory prosecution, Under New York law plaintiff must show that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process."  Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)); Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984).  "The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim."  Lopez v. City of New York, 901 F. Supp. 684, 691 (S.D.N.Y. 1995).

A finding of probable cause defeats a claim of malicious abuse of process.  Irish v. City of New York, 2010 U.S. Dist. LEXIS 130466, *16 (S.D.N.Y. 2010) (finding that probable cause to issue process "negates a claim for abuse of process") (quoting Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358, *49-50 (S.D.N.Y. 2009)).

Here Plaintiff's claim fails as probable cause existed for his arrest and prosecution.  Additionally, Plaintiff cannot set forth any collateral objective that any defendants sought after legal process was issued.  Plaintiff's abuse of process claim must be dismissed.

### F.   Qualified Immunity Precludes Any Liability From Plaintiff's Arrests

Even if the Court finds there was not probable cause for either arrest, the defendants are entitled to qualified immunity in this case.  The "doctrine of qualified immunity

shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights."  Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted).

A police officer is entitled to qualified immunity from a claim for arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause.  Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (citations omitted).  "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances."  Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).

The Supreme Court has noted "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

As the officers had probable cause they violated no clearly established rights of Plaintiff's.  Furthermore even if probable cause did not exist the officers acted reasonably under the circumstances in believing probable cause existed.  On November 5, 2011 Protestors completely blocked the sidewalk in front of 60 Centre.  Regardless Plaintiff willfully disobeyed orders to disperse and never attempted to comply.  Eventually he sat down on the sidewalk and refused to even stand signaling his complete refusal to disperse despite being part of the protest that blocked the sidewalk.  U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).

- 13 -

Similarly on September 17, 2012, Plaintiff was personally ordered to disperse, failed to do so, and engaged in chanting at a narrow pedestrian access point that signaled he may have been attempting to engage in the disruptions planned by the Occupy Wall Street Movement that morning.  It was certainly reasonable to believe that probable cause existed in this case.

Plaintiff separately alludes to claims under the 14th Amendment.  Summary judgment should be granted with respect to his 14th Amendment claims.  Plaintiff fails to expand upon these claims and cannot set forth any facts that support them.  Ying Jing Gan v. City of New York, 996 F.3d 522, 532 (2d Cir. 1993).  Furthermore "[w]here another provision of the Constitution provides an explicit textual source of Constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process."  Southerland v. City of New York, 667 F.3d 87, 103 (2d Cir. N.Y. 2011); quoting Kia P. v. Mcintyre, 235 F.3d 749, 757 (2d Cir. 2000).  Any claim under the equal protection clause fails as plaintiff cannot point to any admissible evidence that identifies him as treated differently from other individuals who were deliberately defying orders to disperse.  Gonzalez v. City of New York, 38 Fed. Appx. 62, 64 (2d Cir. 2002); LaTrieste Rest. & Cabaret v. Vill. of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE FAILS AS A MATTER OF LAW AND UNDER THE FACTS PRESENTED.

An "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment ..."  Graham v. Connor, 490 U.S. 386, 394 (1989).  The Courts have consistently held "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof . . . ."  Graham, 490 U.S. at 396 (citations

omitted).   Thus, "[d]etermining whether the force used to effect a particular seizure is 'reasonable'… requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citations omitted) .

A plaintiff must establish "through evidence, that the 'alleged use of force is objectively sufficiently serious or harmful enough to be actionable.'"  Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335, *11 (S.D.N.Y. 2005); citing United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 397; citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  The Second Circuit has been clear that minimal injuries also speak to the reasonableness of force used.  Tracy v. Freshwater, 623 F.3d. 90, 97 (2d Cir. 2010)(Striking multiple times with a metal flashlight in the course of a hand-to-hand struggle is subject to qualified immunity, even where plaintiff claims he was not resisting).

"The right to make an arrest carries with it the right to use some degree of physical coercion as long as the force used is reasonable based on the perception of the arresting officer at the time of arrest.  Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310, *17 (S.D.N.Y. 2012) (citing Kerman v. City of New York, 261 F.3d 229, 239 (2d Cir. 2001)); aff'd, 517 Fed. Appx. 1, 3 (2d Cir. 2013).  Accordingly, "a de minimis use of force will rarely suffice to state a Constitutional claim."  Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  "'[T]he extent of injury may . . . provide some indication of the amount of force applied.'"  Alford v. City of New York, 2012 U.S. Dist. LEXIS 123137, *9-11 (E.D.N.Y. Aug. 29, 2012); citing Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010)).

Painful handcuffing does not amount to a constitutional violation as a matter of law.  Schy v. Vermont, 2 F. App'x 101, 101-02 (2d Cir. 2001); Beckles v. City of New York, 2012 U.S. App. LEXIS 17433, *5 (2d Cir. 2012) "'Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective[,] handcuffs must be tight enough to prevent the arrestee's hands from slipping out.'"  Grant v. City of New York, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007) (quoting Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y.2005) (citations omitted)).

As a matter of law, an "allegation of sore, yet uninjured, wrists [as a result of handcuffing] simply does not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation."  Wilder v. City of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003).  Even a showing of minor injuries from handcuffs is "insufficient to constitute a Fourth Amendment claim of unreasonable force."  Stefanopoulos v. City of New York, 2005 U.S. Dist. LEXIS 22445, *3 (E.D.N.Y. 2005).

Here Plaintiff does not state a claim for excessive force related to either arrest.  See Roundtree v. New York, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) ("to conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that any physical contact by an arresting officer with the arrested person is actionable."); Nogbou v. Mayrose, 2009 U.S. Dist. LEXIS 96118, at *15-19 (S.D.N.Y. 2009), aff'd, 400 Fed. Appx. 617, 619 (2d Cir. 2010); Wims v. New York City Police Dep't, et al., 2011 U.S. Dist. LEXIS 78641, at *14-15 (S.D.N.Y. 2011); Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993); Wilder v. City of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003).

Plaintiff's claims related to his November 5, 2011 arrest are limited to a claim that his handcuffs were too tight.  Plaintiff concedes however that he never requested or subsequently sought any medical treatment.  56.1 ¶¶ 59-61.  Plaintiff suffered no injury except bruising that lasted approximately one week.  56.1 ¶ 62.  Additionally, as handcuffing is frequently necessary and privileged as part of a valid arrest, and a Fourth Amendment violation can only stem from a deliberate harm, police officers replacing Plaintiff's handcuffs multiple times, both at the scene and at 1 Police Plaza, shows not only that no Fourth Amendment violation could have taken place, but the deference and reasonableness of the officers at the scene.  56.1 ¶¶ 66-67.  Finally, to the extent plaintiff could sustain a Fourth Amendment claim despite having no injury, seeking no treatment and having his requests accommodated throughout his arrest, his claim still fails as he cannot identify or describe the officers who placed him in handcuffs, or who he complained about his handcuffs to.  56.1 ¶¶ 64-65, 68.

Plaintiff's claims from his September 17, 2012 arrest relate to a claim of tight cuffing and Officer Pastula placing his hand on the back of Plaintiff's neck when he first affected the arrest of Plaintiff.  Plaintiff's force claim related to the tight cuffs mirrors his November 5, 2011 claim.  Plaintiff suffered no injury apart from bruising and neither requested nor sought medical treatment.  56.1 ¶¶ 154-156.  The bruising subsided within one week.  56.1 ¶ 156.  Additionally, Plaintiff delayed making any complaints about his handcuffs for twenty minutes.  56.1 ¶ 146.  When he finally requested his handcuffs be removed they were replaced within ten minutes.  56.1 ¶¶ 147-148.  Plaintiff cannot sustain any Fourth Amendment claim as again, he suffered no injury, required no medical treatment, and had his requests to loosen his handcuffs accommodated shortly after he spoke up.  Further, plaintiff again is unable to identify which officer placed him in handcuffs in the first place.  56.1 ¶ 144.

Plaintiff's claim related to Officer Pastula putting his hand on Plaintiff's neck immediately prior to his arrest is similarly attenuated.  Plaintiff suffered no injury to his neck, requested and sought no treatment related to his neck, and even in describing the contact did not describe a Fourth Amendment claim.  Plaintiff describes that Officer Pastula held him by the back of the neck between his thumb and the rest of his hand.  Decl. Exhibit B, 51: 6-9; 56.1 ¶ 139.  When directly questioned about the amount of pressure applied Plaintiff did not describe pain or discomfort, but just stated that he knew he was about to be arrested.  56.1 ¶ 139.  The contact with Plaintiff's neck was exceedingly brief and not excessive, and apparently appropriate in alerting Plaintiff to his impending arrest.  56.1 ¶ 140-141; Decl. Exhibit N, 01:40-01:52.

Finally Defendants are still shielded by qualified immunity for the application of handcuffs and minimal force to the extent they are no objectively unreasonable.  "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances."  Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).  Accordingly Plaintiff's claims for excessive force must be dismissed with prejudice.

## PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS MUST BE DISMISSED.

In Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002), the Second Circuit discussed malicious prosecution in federal actions:

> In order to prevail on a § 1983 claim against a state actor for malicious prosecution, plaintiff must show a violation of his rights under the Fourth Amendment, see,e.g., Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997), cert. denied, 118 S. Ct. 1051 (1998), and establish the elements of a malicious prosecution claim under state law, see, e.g., Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir. 1989). To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor. See, e.g., id.; Murphy v. Lynn, 118 F.3d at 947; Broughton v. State, 37 N.Y.2d 451, 457 (1975);cert. denied, 423 U.S. 929

(1975).

Here plaintiff's malicious prosecution claims fail at the outset for both arrest dates as probable cause existed for his arrest and prosecution and the officers are protected by qualified immunity. "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." Johnson v. Constantellis, 221 Fed. Appx. 48, 50 (2d Cir. 2007).

However, assuming that probable cause and qualified immunity do not preclude this claim, it still fails as to both incidents. Plaintiff claims that for his November 5, 2011 arrest he was "repeatedly and continually deprived of his liberty" as a result of a summons that required him to appear at one Court date on January 10, 2011. However, as of January 9, 2011, the district attorney's office had declined to prosecute. Decl. Exhibit U. As outlined by the District Attorney's office "the case did not go to court." Decl. Exhibit U. Plaintiff's alleged prosecution never even went before the Court.

Similarly, plaintiff claims that for his September 17, 2012 arrest he was "repeatedly and continually deprived of his liberty" as a result of a summons that required him to appear at one Court date on December 5, 2012. Decl. Exhibit V. At that time the District Attorney's office informed Plaintiff that the case was not ready, and he would be notified to appear if the case was reinstated. Decl. Exhibit V. Less than a month later the District Attorney declined to prosecute, and as with Decl. Exhibit U, the case did not go before the court.

Plaintiff fails to outline a seizure sufficient to constitute a malicious prosecution claim. A single court appearance from a summons or desk appearance ticket does not to rise to the level of a Constitutional deprivation. "The proceedings against Faruki placed no restriction on her other than a requirement that she appear in court on two occasions—an insufficient

deprivation of liberty to support a Fourth Amendment malicious prosecution claim." Faruki v. City of New York, 517 Fed. Appx. 1, 2 (2d Cir. 2013) (citing Burg v. Gosselin, 591 F.3d 95, 101 (2d Cir. 2010) ("[A] pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure."))

Finally to the extent probable cause was lacking, defendants are still shielded by qualified immunity to the extent (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause. Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).

### PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS FAIL ON THE MERITS AND AS A MATTER OF LAW.

Plaintiff argues for Municipal Liability on two theories, that the police targeted Occupy Wall Street participants for arrest without cause, and engaged in random arrests to frighten, confuse and deter assembly. These claims are without merit and must be dismissed as a matter of law.

While municipalities may be sued under 42 U.S.C. § 1983, they are not liable under the theory of *respondeat superior*. The Supreme Court held in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) that:

> The language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

Where there is no underlying constitutional violation, there can be no liability pursuant to Monell. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Martinez v. City

of New York, 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), aff'd Martinez v. Muentes, 340 Fed. Appx. 700 (2d Cir. 2009). Here, where Plaintiff's arrests were plainly justified, and Plaintiff's conduct implies he may have sought out arrest, no underlying constitutional violation can be claimed and no liability pursuant to Monell can be maintained on any theory.

Additionally a municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through [ ] official decisionmaking channels." Monell, 436 U.S. at 690-91. Here plaintiff cannot show that any customary policy exists with respect to targeting participants for arrest as he must. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In fact plaintiff's pleadings allude to only four individuals who were arrested before relying on unrelated law school clinics' reports on force, not arrests, by the police. Decl. Exhibit E, ¶¶ 137-164.

Similarly Plaintiff's argument that there is a policy of random arrests is not supported by the evidence, and certainly not by Plaintiff's own case. As outlined above there was ample probable cause for Plaintiff's arrest. His conduct, and the numerous warnings and requests that went unheeded before any action was taken, make clear that the police acted properly and with restraint at all times. Plaintiff's only basis to support this claim is to discuss several arrests from press articles that he alleges were 'random.' Decl. Exhibit E, ¶¶ 165-176. This is inadmissible and insufficient to maintain a claim at this stage, and regardless meritless in the face of Plaintiff's justified arrests that he seemingly sought out..

## PLAINTIFF'S STATE CLAIMS FAIL AS A MATTER OF LAW.

### A.  Plaintiff's Assault and Battery Claims Must be Dismissed

With respect to plaintiff's claims for assault and battery, "[o]fficers executing a lawful arrest are privileged to commit any battery that is reasonably necessary to effect the arrest."  Johnston v. Port Auth. of N.Y. & N.J., 2011 U.S. Dist. LEXIS 82815, *36 (E.D.N.Y. 2011) (granting summary judgment to defendants against plaintiff's claim of assault).  As discussed above the officers use of force was privileged, necessary and de minimis.  Additionally the conduct of the officers at both incidents reflects their continued monitoring and accommodation of Plaintiff's requests to prevent any harm, let alone injury.

Additionally to the extent officers are granted qualified immunity for the federal claims, with respect to the state law claims the officers are immune from suit if they were exercising the discretion and judgment inherent to his or her job.  Estate of Yankel Rosenbaum, 982 F. Supp. 894, 895-6 (E.D.N.Y. 1997).  Accordingly Plaintiff's state assault and battery claims must be dismissed.

### B.  Plaintiff's Negligent Retention, Hiring, Training and Supervision Claims Must be Dismissed.

To the extent probable cause existed for Plaintiff's arrests his negligent retention, hiring, training, and superivsion claims must be dismissed.  Griffin v City of New York, 67 A.D.3d 550, 551 (1st Dep't 2009).  Additionally as the Officer Defendants were acting on behalf of the New York City Police Department no liability can fall under these theories.

> "We find that defendants are entitled to summary judgment dismissing plaintiff's negligent hiring, retention and training claims. Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention.  Imposing liability on the

> employer, and if the employee was negligent, the employer must
> pay the judgment regardless of the reasonableness of the hiring or
> retention or the adequacy of the training."

> Karoon v. New York City Transit Auth., 241 A.D.2d 323, 324 (1st Dep't 1997)

(citations omitted).  Accordingly Plaintiff's claims for negligent retention, hiring, training and supervision must be dismissed.

## PLAINTIFF'S LOST WAGES CLAIM MUST
## BE DISMISSED OR LIMITED.

The 2010 amendments to Rule 56 of the Federal Rules of Civil provide, in pertinent part, that "[a] party may move for summary judgment, identifying each claim or defense–*or the part of each claim or defense*–on which summary judgment is sought."  Rule 56(a), Fed. R. Civ. P. (emphasis added).  Since the 2010 Amendment, it has been recognized that part of a claim includes the element of damages.  See, e.g., Rasmussen v. City of New York, 766 F. Supp. 2d 399, 404 (E.D.N.Y. 2011) ("the reference to 'part' is best understood as relating to either the entirety of liability, or damages, or at least a discrete element of damages.").  Here, plaintiffs lost employment and any lost wages stem from his firing for failure to maintain his teaching certification.  56.1 ¶ 163.  That unrelated dismissal from his employment is solely traceable to Plaintiff's failure to respond to the four warnings regarding his expiring teaching certificate.  Any lost wages after that are speculative and non-recoverable as Plaintiff was not a salaried employee, but worked in various positions including as a per diem substitute teacher.

After he was fired, unrelated to his arrest, there was no obligation for any party to re-hire Plaintiff.  He worked as a substitute teacher and at other schools.  While plaintiff has provided various pay stubs and financial records, his lost earnings claim is necessarily speculative as it is not based on any lost salary flowing from his arrest.  As a hopeful substitute teacher with no weekly schedule, and paid per days worked, his wages are necessarily

speculative.  State Farm Mut. Auto. Ins. Co. v. Stack, 55 A.D.3d 594, 595-596 (2nd Dep't 2008)

(no lost income award to self-employed broker who had no financial records to prove damages

with reasonable certainty); Ortiz v. Leak, 214 A.D.2d 840, 840-841 (3rd Dep't 1995) (no lost

earnings for 'self-employed' construction worker who offered no documentary evidence).

   Plaintiff's second arrest, on September 17, 2012, briefly made Plaintiff ineligible

to substitute teach, however, that was only between November 28, 2012 and January 18, 2013.

56.1 ¶¶ 167-168.  This ineligible designation was pursuant to Chancellor's Regulation C-105,

which requires an investigation, and for a substitute teacher, requires that they not be placed in

pedagogical settings.  Decl. Exhibit Y.  Plaintiff agreed to abide by C-105 prior to becoming a

substitute teacher.  56.1 ¶ 170.  Regardless, any damages are still necessarily speculative as

Plaintiff had not yet begun substitute teaching when he was rendered ineligible.  56.1 ¶ 167.


### CONCLUSION

   For the foregoing reasons defendants respectfully request that the Court grant

summary judgment on both causes of action and dismiss plaintiffs' complaint with prejudice, and

grant such other and further relief as the Court deems just and proper.

Dated:   New York, New York
      June 2, 2014

        ZACHARY CARTER
        Corporation Counsel - City of New York
        *Attorney for Defendants*
        100 Church Street
        New York, New York 10007
        (212) 356-2373

      By:  /s/_____
        Andrew Lucas
        New York City Law Department
        Special Federal Litigation Division