UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA WILES,

Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal entity, NEW YORK CITY POLICE OFFICER PASTULA, NEW YORK CITY POLICE LIEUTENANT ZIELINSKI, NEW YORK CITY POLICE SERGEANT JOHN SLAYNE, NEW YORK CITY POLICE OFFICER JOHN MCNAMARA and NEW YORK CITY POLICE OFFICERS "JOHN DOES 1-10."

Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

***ZACHARY CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Andrew Lucas*
*Tel: (212) 356-2373*
*Matter #: 2013-016424*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY .................................................................................................. 2

STATEMENT OF FACTS ................................................................................................... 2

STANDARD OF REVIEW .................................................................................................. 7

ARGUMENT ....................................................................................................................... 8

PROBABLE CAUSE EXISTED FOR THE ARREST AND IMPRISONMENT
OF PLAINTIFF, AND THE OFFICERS ARE PROTECTED BY QUALIFIED
IMMUNITY .......................................................................................................................... 8

    **A.**    **Probable Cause Existed for Plaintiff's November 5, 2011 Arrest** ....................... 9

    **B.**    **Probable Cause Existed for Plaintiff's September 17, 2012 Arrest** ................... 12

    **C.**    **The Orders Disregarded by Plaintiff were Lawful** ............................................. 13

    **D.**    **Plaintiff's Claims for Failure to Intervene and His Claims
           Against Defendants Slayne and Zielinski Must be Dismissed as a
           Matter of Law** ..................................................................................................... 15

    **E.**    **Plaintiff's First Amendment Claims Must Be Dismissed** ................................... 16

    **F.**    **Plaintiff's Malicious Abuse of Process Claims Must Be Dismissed** ................... 17

    **G.**    **Qualified Immunity Precludes Any Liability From Plaintiff's
           Arrests** ................................................................................................................ 17

PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE FAILS AS A MATTER OF
LAW AND UNDER THE FACTS PRESENTED. .......................................................... 20

PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS MUST BE
DISMISSED. ...................................................................................................................... 24

PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS FAIL ON THE MERITS
AND AS A MATTER OF LAW. ....................................................................................... 26

PLAINTIFF'S STATE CLAIMS FAIL AS A MATTER OF LAW ................................. 30

    **A.**    **Plaintiff's Assault and Battery Claims Must be Dismissed** ................................ 30

    **B.**    **Plaintiff's Negligent Retention, Hiring, Training and Supervision
           Claims Must be Dismissed.** ................................................................................ 30

PLAINTIFF'S LOST WAGES CLAIM MUST BE DISMISSED. ................................. 31

CONCLUSION .................................................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Pages**

Alford v. City of New York,
    11-CV-0622 (ERK) (E.D.N.Y. Aug. 29, 2012) ........................................................................ 21

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ................................................................................................................. 28

Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ................................................................................................................. 28

Back v. Hastings on Hudson Union Free Sch. District,
    365 F.3d 107 (2d Cir. 2004) ..................................................................................................... 15

Beckles v. City of New York,
    492 Fed. Appx. 181 (2d Cir. 2012) .......................................................................................... 21

Berger v. Schmitt,
    91 F. App'x 189 (2d Cir. 2004) ............................................................................................... 11

Bernard v. United States,
    25 F.3d 98 (2d Cir. 1994) ........................................................................................................... 8

Bradway v. Gonzales,
    26 F.3d 313 (2d Cir. 1994) ....................................................................................................... 18

Brown v. City of New York,
    13-CV-1018 (KBF) (S.D.N.Y. Jun. 18, 2014),
    2014 U.S. Dist. LEXIS 83513 ................................................................................................. 11

Burg v. Gosselin,
    591 F.3d 95 (2d Cir. 2010) ....................................................................................................... 26

C.G. v. City of New York,
    12-CV-1606 (ARR) (E.D.N.Y. Oct. 24, 2013),
    2013 U.S. Dist. LEXIS 153020 ........................................................................................ 10-11

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ..................................................................................................... 8, 20, 27

City of Los Angeles v. Heller,
    475 U.S. 796 (1986) ......................................................................................................... 15, 27

Cook v. Sheldon,
    41 F.3d 73 (2d Cir. 1994) ......................................................................................................... 17

**Cases**                                                          **Pages**

Corley v. Nabeel Shahid,
13 Civ. 4743 (BMC) (E.D.N.Y. Mar. 5, 2015), 2015 U.S. Dist. LEXIS 27091 ...................... 16

Covington v. City of New York,
171 F.3d 117 (2d Cir. 1999) ......................................................................... 8

Crenshaw v. City of Mount Vernon,
372 F. Appx 202 (2d Cir. 2010) ...................................................................... 14

Crowell v. Kirkpatrick,
400 F. App'x 592 (2d Cir. 2010) ...................................................................... 21

Curiano v. Suozzi,
63 N.Y.2d 113 (1984) .................................................................................. 17

Curley v. Village of Suffern,
268 F.3d 65 (2d Cir. 2001) ............................................................................ 15

Devenpeck v. Alford,
543 U.S. 146 (2004) .................................................................................... 8

Eastman Kodak Co. v. Image Technology Services, Inc.,
504 U.S. 451 (1992) .................................................................................... 7

Elliott v. County of Monroe,
115 Fed. Appx. 497 (2d Cir. 2004) .................................................................... 22

Esmont v. City of New York,
371 F. Supp. 2d 202 (E.D.N.Y.2005) ................................................................. 21

Estate of Yankel Rosenbaum,
982 F. Supp. 894 (E.D.N.Y. 1997) ................................................................... 30

Fabrikant v. French,
691 F.3d 193 (2d Cir. 2012) .......................................................................... 16

Faruki v. City of New York,
2012 U.S. Dist. LEXIS 47310 (S.D.N.Y. Mar. 30, 2012),
aff'd, 517 Fed. Appx. 1, 2 (2d Cir. 2013) ......................................................... 7, 26

Garcia v. Bloomberg,
865 F. Supp. 2d 478 (S.D.N.Y. 2012) ................................................................ 29

Garcia v. Doe,
2014 U.S. App. LEXIS 24772 (2d Cir. N.Y. Aug. 21, 2014) ......................................... 7, 18

**Cases**          **Pages**

Garrett v. Port Auth.,
04 Civ. 7368 (DC) (S.D.N.Y. Aug. 8, 2006),
2006 U.S. Dist. LEXIS 55548 .................................................................................... 25

Gonzalez v. City of New York,
38 Fed. Appx. 62 (2d Cir. 2002)................................................................................ 20

Graham v. Connor,
490 U.S. 386 (1989).................................................................................................... 20

Grant v. City of New York,
500 F. Supp. 2d 211 (S.D.N.Y. 2007)........................................................................ 21

Griffin v. City of New York,
67 A.D.3d 550 (1st Dep't 2009) ................................................................................ 30

Hunter v. Bryant,
502 U.S. 224 (1991)................................................................................................... 18

Hyde v. Caputo,
2001 U.S. Dist. Lexis 6253 (E.D.N.Y. 2001) ............................................................ 8

Illinois v. Gates,
462 U.S. 213 (1983)..................................................................................................... 9

Irish v. City of New York,
2010 U.S. Dist. LEXIS 130466 (S.D.N.Y. 2010) .................................................... 17

Jaegly v. Couch,
439 F.3d 149 (2d Cir. 2006)........................................................................................ 8

Johnson v. City of New York,
05 Civ. 7519 (PKC) (S.D.N.Y. Sept. 29, 2008),
2008 U.S. Dist. LEXIS 78984 (S.D.N.Y 2008).................................................... 11

Johnson v. Constantellis,
221 Fed. Appx. 48 (2d Cir. 2007)............................................................................. 24

Johnson v. Glick,
481 F.2d 1028 (2d Cir. 1973).................................................................................... 20

Johnston v. Port Auth. of N.Y. & N.J.,
2011 U.S. Dist. LEXIS 82815 (E.D.N.Y. 2011)...................................................... 30

**Cases**                                                                          **Pages**

Karoon v. New York City Transit Auth.,
241 A.D.2d 323 (1st Dep't 1997) ........................................................ 31

Kia P. v. Mcintyre,
235 F.3d 749 (2d Cir. 2000) ............................................................. 19

Kuck v. Danaher,
600 F.3d 159, 168 (2d Cir. 2010) ....................................................... 16

LaTrieste Rest. & Cabaret v. Vill. of Port Chester,
40 F.3d 587 (2d Cir. 1994) .............................................................. 20

Lennon v. Miller,
66 F.3d 416 (2d Cir. 1995) ....................................................... 11, 18, 23

Lopez v. City of New York,
901 F. Supp. 684 (S.D.N.Y. 1995) ....................................................... 17

Malley v. Briggs,
475 U.S. 335 (1986) ...................................................................... 18

Marcavage v. City of New York,
689 F.3d 110 (2d Cir. 2012) .......................................................... 11, 15

Marcavage v. City of New York,
689 F.3d 98 (2d Cir. 2012) ............................................................ 7, 8

Martinez v. City of New York,
2008 U.S. Dist. LEXIS 49203 (S.D.N.Y. 2008) ........................................... 27

Martinez v. Muentes,
340 Fed. Appx. 700 (2d Cir. 2009) ...................................................... 27

Matter of Ashley M.,
30 A.D.3d 178 (1st Dept. 2006) ......................................................... 14

Miloslavsky v. AES Eng'gSoc'y, Inc.,
808 F. Supp. 351 (S.D.N.Y. 1992),
aff'd, 993 F.2d 1534
cert. denied, 510 U.S. 817 (1993) ........................................................ 9

Monell v. Department of Social Services of the City of New York,
436 U.S. 658 (1978) ...................................................................... 27

**Cases**                                                                          **Pages**

Murphy v. Lynn,
   118 F.3d 938 (2d Cir. 1997)...................................................................................... 24

Nogbou v. Mayrose,
   07 Civ. 3763 (RWS) (S.D.N.Y. Oct. 15, 2009),
   aff'd, 400 Fed. Appx. 617 (2d Cir. 2010) ................................................................ 22

O'Neill v. Town of Babylon,
   986 F.2d 646 (2d Cir. 1993)........................................................................................ 8

Ortiz v. Leak,
   214 A.D.2d 840 (3rd Dep't 1995)............................................................................. 32

People v. Hanson,
   178 Misc.2d 932 (Dist. Ct. Nassau County 1998) .................................................. 14

Posr v. Court Officer Shield # 207,
   180 F.3d 409 (2d Cir. 1999)...................................................................................... 24

Rasmussen v. City of New York,
   766 F. Supp. 2d 399 (E.D.N.Y. 2011) ..................................................................... 31

Ricciuti v. N.Y.C. Transit Auth.,
   124 F.3d 123 (2d Cir. 1997)................................................................................ 9,  24

Rincon v. City of New York,
   03 Civ. 8276(LAP) (S.D.N.Y. Mar. 21, 2005) ....................................................... 20

Rohman v. New York City Transit Auth.,
   215 F.3d 208 (2d Cir. 2000)............................................................................... 24, 25

Romano v. Howarth,
   998 F.2d 101 (2d Cir. 1993)............................................................................... 21, 22

Roundtree v. New York,
   778 F. Supp. 614 (E.D.N.Y. 1991) .......................................................................... 21

Santulli v. Russelo,
   519 Fed. Appx. 706 (2d Cir. 2013) .......................................................................... 16

Savino v. City of New York,
   331 F.3d 63 (2d Cir. 2003)........................................................................................ 17

Schumann v. New York,
   270 F. Supp. 730 (S.D.N.Y. 1967)........................................................................... 14

**Cases**                                                               **Pages**

Schy v. Vermont,
   2 F. App'x 101 (2d Cir. 2001) ............................................................ 21

Scott v. Harris,
   550 U.S. 372 (U.S. 2007) .................................................................... 7

Sforza v. City of New York,
   2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. 2009) ................................... 17

Singer v. Fulton County,
   63 F.3d 110 (2d Cir. 1995) ................................................................. 8

Southerland v. City of New York,
   667 F.3d 87 (2d Cir. N.Y. 2011) ........................................................ 19

State Farm Mut. Auto. Ins. Co. v. Stack,
   55 A.D.3d 594 (2nd Dep't 2008) ....................................................... 32

Stefanopoulos v. City of New York,
   01-CV-0771 (SJ) (E.D.N.Y. Mar. 2, 2005),
   2005 U.S. Dist. LEXIS 22445 ............................................................ 21

Swartz v. Insogna,
   704 F.3d 105 (2d Cir. 2013) ............................................................... 25

Tracy v. Freshwater,
   623 F.3d. 90 (2d Cir. 2010) ............................................................... 20

United States v. Nelson,
   500 Fed. Appx. 90 (2d Cir. 2012) ....................................... 9, 10, 12, 19

United States v. Walsh,
   194 F.3d 37 (2d Cir. 1999) ................................................................. 20

Wilder v. City of Amityville,
   288 F. Supp. 2d 341 (E.D.N.Y. 2003) ............................................ 21, 22

Wilkins v. Gaddy,
   130 S. Ct. 1175 (2010) ....................................................................... 21

Wims v. New York City Police Dep't, et al.,
   10 Civ. 6128 (PKC) (S.D.N.Y. Jul. 20, 2011),
   2011 U.S. Dist. LEXIS 78641 ............................................................ 22

Ying Jing Gan v. City of New York,
   996 F.3d 522 (2d Cir. 1993) .......................................................... 8, 19, 28

**Cases**                                                                          **Pages**

Zellner v. Summerlin,
   494 F.3d 344 (2d Cir. 2007)............................................................................ 8, 18, 26

**Statutes**

42 U.S.C. §1983 ................................................................................. 1, 15, 24, 25, 27

Fed. R. Civ. P. 56 .......................................................................................... 1, 7, 31

N.Y. Penal Law § 195.05 ...................................................................................... 11

N.Y. Penal Law § 240.20(5) ....................................................................... 9, 12, 18

New York City Charter §435(a) ............................................................ 11, 14, 15, 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------x

JOSHUA WILES,

                                        Plaintiff,

                    -against-

THE CITY OF NEW YORK, a municipal entity, NEW YORK
CITY POLICE OFFICER PASTULA, NEW YORK CITY
POLICE LIEUTENANT ZIELINSKI, NEW YORK CITY
POLICE SERGEANT JOHN SLAYNE, NEW YORK CITY
POLICE OFFICER JOHN MCNAMARA and NEW YORK
CITY POLICE OFFICERS "JOHN DOES 1-10."

                                        Defendants.

----------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

**13 CV 2898 (VSB) (HBP)**

          Defendants City of New York, Officer Pastula, Lieutenant Zielinski, Sergeant

Slayne and Officer McNamara, by their attorney Zachary Carter, Corporation Counsel of the

City of New York, hereby submit this Memorandum of Law in support of their Motion to

Dismiss pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

          Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against defendants

alleging that he was subjected to a violation of his First, Fourth, and Fourteenth Amendment

rights, as well as common laws claims of assault, battery, and negligent hiring, retention,

training, and supervision.

          Defendants are entitled to summary judgment on these claims as probable cause

and qualified immunity exist for plaintiff's arrests and prosecution, additionally plaintiff suffered

no malicious prosecution as a matter of law.  Plaintiff's First Amendment claim fails as probable

cause and qualified immunity render his arrests privileged.  Plaintiff's excessive force claim fails

as the handcuffing plaintiff experienced is not actionable as a matter of law, and any other force was not excessive. Plaintiff's Monell claim cannot survive on the merits, as pled, or given the underlying facts of plaintiff's arrest. Finally, Plaintiff's common law claims, limited to his September 17, 2012 arrest, fail procedurally and under the facts presented.

## PROCEDURAL HISTORY

Plaintiff filed a notice of claim on or about December 19, 2012 with respect to his September 17, 2012 arrest only. Decl. Exhibit A. He appeared for a statutory hearing on January 17, 2013. Decl. Exhibit B. The instant action was filed on April 30, 2013. Decl. Exhibit C. An amended complaint was filed on April 4, 2014. A second amended complaint was filed on July 2, 2014.

## STATEMENT OF FACTS

Plaintiff brings claims related to his arrests on November 5, 2011 and September 17, 2012 at Occupy Wall Street events.

On November 5, 2011, Plaintiff attended an Occupy Wall Street march that traveled from Zuccotti Park to the New York Supreme Court building at 60 Centre Street. 56.1 ¶¶ 11-14. Plaintiff arrived at Zuccotti Park in the late morning and the march left within one hour. 56.1 ¶¶ 6, 11. Plaintiff wore a distinctive white T-shirt on which he had spelled out "I'm human" on the front and "I demand justice" on the back, he also wore a winter hat, gloves, jeans, and a long sleeve shirt underneath his T-shirt. 56.1 ¶¶ 4-5. Plaintiff, alongside hundreds of protestors, filled the sidewalk in front of 60 Centre Street. 56.1 ¶¶ 35, 74. Police officers lined up at the bottom of the steps of the Courthouse and prevented protestors from moving onto the stairs. 56.1 ¶¶ 17-18. When the protestors and plaintiff were not permitted onto the steps they became upset. 56.1 ¶ 19. Plaintiff and the protestors were told they must disperse because they were blocking the sidewalk. 56.1 ¶¶ 30, 35. After the dispersal orders had begun, Plaintiff, from

the base of the steps faced the crowd of protestors and led a chant of "we want the steps," encouraging the protestors to storm through a line of police. 56.1 ¶¶ 29, 75, 77. Numerous orders to disperse were given, including warnings that failure to disperse would result in arrest, over the course of over ten minutes prior to Plaintiff's arrest. 56.1 ¶¶ 32-34, 36, 75, 79-84, 86, 87, 89, 92. Of the hundreds obstructing the sidewalk in front of 60 Centre Street the majority complied with the order, but ultimately twenty individuals who refused to disperse were arrested, including Plaintiff. 56.1 ¶ 97.

        In response to the orders to disperse and warnings about being arrested Plaintiff admits that he refused to comply. 56.1 ¶ 31. Plaintiff believed the orders were not lawful and he had the right to ignore them. 56.1 ¶ 37. Plaintiff chose to remain on the sidewalk circling in place while police issued dispersal orders just feet away from him. 56.1 ¶¶ 84-85; 90-91. Plaintiff decided to read a copy of the Constitution to police officers while dispersal orders were read around him. 56.1 ¶¶ 92-93. When police deployed orange mesh barriers to clear the sidewalk and continued to issue dispersal orders, Plaintiff deliberately pushed against the mesh which prevented the police from moving and clearing the sidewalk. 56.1 ¶¶ 41-42, 88, 94. After the police had continuously issued dispersal orders and warning to the protestors, including plaintiff, for at least ten minutes, plaintiff decided to sit down on the sidewalk. 56.1 ¶¶ 43-44. Plaintiff was arrested after he sat down on the ground as he had been given numerous dispersal orders and refused to comply. 56.1 ¶¶ 95-96. Plaintiff refused orders to even stand up. 56.1 ¶¶ 50-51. In fact Plaintiff never attempted to leave. 56.1 ¶ 23. Plaintiff subsequently revealed his intent to get arrested on November 5, 2011, and contrasted it with the arrest he did not intend on September 17, 2012. 56.1 ¶

Plaintiff's excessive force claim from November 5, 2011 relate to his being placed in zip-tie handcuffs only. 56.1 ¶ 59. Plaintiff never requested any medical treatment while in custody, or sought out any medical treatment after his release. 56.1 ¶¶ 60-61. Apart from bruising that dissipated within a week plaintiff had no injury. 56.1 ¶¶ 61-62. Plaintiff does not know and cannot describe who he complained about his handcuffs to, or who replaced them. 56.1 ¶¶ 64-65, 68. Plaintiff's zip-tie handcuffs were replaced twice in response to requests, once before he was transported from the scene of his arrest, and again when he arrived at 1 Police Plaza. 56.1 ¶¶ 66-67. After eight hours in custody Plaintiff was released with a Desk Appearance Ticket. 56.1 ¶ 71. The District Attorney's office declined to prosecute prior to Plaintiff's first court date. 56.1 ¶ 72. There is no evidence that any zip-tie handcuffs were deliberately made too tight, or evidence that establishes a defendant placed zip-tie handcuffs on plaintiff.

On September 17, 2012 Plaintiff attended the one year anniversary events related to Occupy Wall Street in lower Manhattan. Plaintiff learned about the events through the internet but is not sure where. 56.1 ¶¶ 102-104. Plaintiff knew there were demonstrations at different banks, marches for various reasons and that events may have included blocking access to the Stock Exchange and the Wall Street area. 56.1 ¶¶ 105-106. In fact the events planned for that day called explicitly for disruptions to lower Manhattan and the Wall Street area including blockades, "roving intersection occupations" around the stock exchange, and actions to "block Wall Street with non-violent civil disobedience." 56.1 ¶¶ 99-100. Plaintiff knew ahead of time that Broadway and Wall Street, the location of his arrest, was a designated gathering location for protestors. 56.1 ¶ 120. Plaintiff also knew that there were events around the opening bell of the

Stock Exchange. 56.1 ¶ 106. The opening bell of the stock exchange is at 9:30, and the Stock Exchange is less than one block from Broadway and Wall Street, where plaintiff was arrested.

Plaintiff arrived in lower Manhattan at approximately 9:15 and after a detour on Nassau Street began to head towards Broadway and Wall Street. 56.1 ¶¶ 112-116. As he approached Broadway and Wall Street he was aware of individuals demonstrating near the intersection. 56.1 ¶ 119. As Plaintiff got closer to Broadway and Wall Street the police made a line across the sidewalk and ordered the crowd, including plaintiff to get back. 56.1 ¶¶ 121, 124. Based on what he could hear, Plaintiff believed there were other individuals affiliated with Occupy Wall Street present. 56.1 ¶ 123. After the police ordered the crowd to get back officers pushed the crowd back. 56.1 ¶ 122. Officer Pastula guided Plaintiff north and continued to order Plaintiff to move back. 56.1 ¶¶ 125-127. In response Plaintiff extended his arm in the air and stated "this is what the 1st Amendment looks like" to a group he perceived to be press. 56.1 ¶¶ 128-129.

After Plaintiff made this statement everything became stationary, except for individuals attempting to get to work. 56.1 ¶¶ 130-131. Plaintiff remained in place on the sidewalk trying to figure out where to go next. 56.1 ¶ 134. He remained near an entrance where police were permitting employees of the Wall Street area to gain access. 56.1 ¶¶ 132, 135. While he remained near that employee entrance, Plaintiff began chanting, including leading a call and response of "Who's Sidewalk?" "Our Sidewalk!" 56.1 ¶¶ 135-136. Officer Pastula, a short distance away, approached Plaintiff a second time and placed him under arrest. 56.1 ¶¶ 137-138.

Plaintiff was placed on a police bus and put in zip-tie handcuffs. 56.1 ¶ 143. Plaintiff's excessive force claim related to September 17, 2012 is based upon Officer Pastula

placing his hand on plaintiff's neck and Plaintiff being placed in zip-tie handcuffs. Plaintiff did not complain about his handcuffs for twenty minutes. 56.1 ¶ 146. Within ten to fifteen minutes of Plaintiff's first complaint about his handcuffs they were removed and replaced. 56.1 ¶¶ 147-148. Plaintiff treated his wrists with ice that night but never asked for medical treatment in custody or sought out any medical treatment after his release. 56.1 ¶¶ 152, 154-155. Plaintiff's only complaint was of bruising that dissipated in about a week. 56.1 ¶ 156. Officer Pastula's contact with the back of Plaintiff's neck was momentary. 56.1 ¶¶ 139-140. When asked to describe the pressure on his neck Plaintiff described it only as enough to know he was about to be arrested. 56.1 ¶ 139. There is no evidence that any zip-tie handcuffs were deliberately made too tight, and Plaintiff does not know who placed him in zip-tie handcuffs. 56.1 ¶ 144.

Plaintiff also claims damages related to his loss of earnings as a teacher stemming from his arrests, however the lost wages from losing his job stem from his failure to maintain his teaching certification. Plaintiff was fired by the Board of Education on July 1, 2012 as a result of having ignored four separate notices that his teaching certification was going to expire starting in November of 2011. 56.1 ¶¶ 160-161. As described in the letter which terminated his service with the Department of Education, Plaintiff was permitted to complete the summer session but lost his position for the following school year. 56.1 ¶¶ 162-163. While he was eventually able to restore his certification, this restoration did not occur until after he had been fired. 56.1 ¶ 164. Plaintiff's second arrest rendered him briefly ineligible to be a substitute teacher. 56.1 ¶¶ 167-168. However, as a substitute teacher plaintiff had no contract, no right to work, and any loss of eligibility came as a result of policies that plaintiff was aware of and had agreed to. 56.1 ¶¶ 168-170.

Under Rule 56(c), summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 457 (1992).  However, viewing facts in the light most favorable to the non-moving party is prescribed to material facts that are in genuine dispute.  A non-determinative issue of fact will not defeat a motion, and neither will reliance on demonstrably false assertions by the non-moving party.  "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts… When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (U.S. 2007).  Situations where plaintiff's factual positions are blatantly contradicted by the record includes where their conduct has been recorded.  Faruki v. City of New York, 2012 U.S. Dist. LEXIS 47310 (S.D.N.Y. Mar. 30, 2012) ("Furthermore, the store owners can be heard on the audio tape of the third 911 call asking Plaintiff to leave the store… Plaintiff's claim that the owners never asked her to leave the store is contradicted by the incontrovertible record[.]") aff'd, 517 Fed. Appx. 1, 2 (2d Cir. 2013); *see also* Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012) (disregarding plaintiffs stated version of events where it is contradicted by an audio recording); Garcia v. Doe, 2014 U.S. App. LEXIS 24772, *3 (2d Cir. 2015) ("we take as true the facts set forth in the complaint, [] to the extent they are not contradicted by the video evidence.")

A motion for summary judgment requires the party to "make a showing sufficient to establish the existence of [each] element essential to that party's case…since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

To establish the existence of each element of their claim, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.3d 522, 532 (2d Cir. 1993).

<u>**ARGUMENT**</u>

**PROBABLE CAUSE EXISTED FOR THE ARREST AND IMPRISONMENT OF PLAINTIFF, AND THE OFFICERS ARE <u>PROTECTED BY QUALIFIED IMMUNITY.</u>**

The existence of probable cause to arrest constitutes justification and is a complete defense to a claim of false arrest and imprisonment. Hyde v. Caputo, 2001 U.S. Dist. Lexis 6253, *7 (E.D.N.Y. 2001); *citing* Covington v. City of New York, 171 F.3d 117, 112 (2d Cir. 1999). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotations omitted); *citing* Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993).

Where there is probable cause to arrest for any offense a false arrest claim is subject to dismissal. Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); *citing* Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); *see also* Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).

In determining whether probable cause exists to arrest a suspect, courts in this Circuit consider the facts available to the officer at the time of arrest. Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). The existence of probable cause must be determined on the basis of the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-2 (1983). Moreover, probable cause requires only a probability of criminal activity, not an actual showing of criminal activity or an ultimate finding of guilt or innocence. Gates, 462 U.S. at 244 n.13; Miloslavsky v. AES Eng'gSoc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993), cert. denied, 510 U.S. 817 (1993) (validity of arrest does not turn on ultimate finding of guilt or innocence).

### A. Probable Cause Existed for Plaintiff's November 5, 2011 Arrest

On November 5, 2011, Plaintiff was charged under the disorderly conduct statute. Decl. Exhibit U. Probable cause existed to arrest plaintiff for disorderly conduct on November 5, 2011. "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . (5) He obstructs vehicular or pedestrian traffic; or (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse…" N.Y. Penal Law § 240.20(5),(6); U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).

The sidewalk in front of 60 Centre Street was heavily congested with protestors prior to the police issuing orders to disperse. 56.1 ¶¶ 35, 74; Decl. Exhibit G; Decl. Exhibit H. When police began issuing dispersal orders plaintiff heard them, and made the conscious decision to disregard them. 56.1 ¶¶ 31-33. Plaintiff maintains both that he did not think the orders were legal, and that he eventually thought he would be arrested regardless of his conduct. 56.1 ¶¶ 37, 47. However, it is clear that Plaintiff could have exited at almost any point after the

first order to disperse was issued, and the orders were lawful.  56.1 ¶¶ 35, 74.  U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).  Officers not only made announcements from the steps of the Courthouse, but circulated through the crowd, and using bullhorns, issued countless orders, requests, and warnings, to disperse and allowed an opportunity to leave, whether to Foley Square or elsewhere.  56.1 ¶¶ 32-34, 36, 75, 79-84, 86, 87, 89, 92; Decl. Exhibit G; Decl. Exhibit H.  Over the course of at least ten minutes the vast majority of protestors complied, and were able to exit the location, in fact a large number continued their demonstration from Foley Square.  56.1 ¶¶ 35, 97;  Decl. Exhibit G; Decl. Exhibit H.  Conversely, Plaintiff seems to have actively sought out confrontation with the police.  At the outset he admits he never attempted to leave at any point.  56.1 ¶ 23.  He responded to dispersal orders by encouraging protestors to take the steps through a stationary police line, and defied repeated dispersal orders.  56.1 ¶¶ 85, 90-91.  When the police resorted to mesh barriers to move the remaining protestors from the sidewalk Plaintiff approached and pushed into those barriers.  56.1 ¶¶ 88, 94.  Finally, Plaintiff sat down with a group on the sidewalk, and refused to get up when ordered to.  56.1 ¶¶ 45, 50.  At this point, Plaintiff was part of a protest that was blocking pedestrian traffic, had heard countless orders to disperse and was again given a lawful order to disperse.  His decision to refuse to stand up, let alone disperse meant there was not only probable cause for his arrest but commission of the violation at issue.

Additionally, probable cause existed to arrest plaintiff for obstruction of governmental administration, "A person is guilty of this offense if he prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference... Refusing to obey orders to leave the premises can be the basis for an arrest for obstructing governmental administration."  C.G. v. City of New York, 12-CV-1606

(ARR) (E.D.N.Y. Oct. 24, 2013), 2013 U.S. Dist. LEXIS 153020, *21 (considering refusal to leave or to provide identification); *citing* N.Y. Penal Law § 195.05; <u>Berger v. Schmitt</u>, 91 F. App'x 189, 191 (2d Cir. 2004); *see also* <u>Brown v. City of New York</u>, 13-CV-1018 (KBF) (S.D.N.Y. Jun. 18, 2014), 2014 U.S. Dist. LEXIS 83513, *21 (Refusing to obey orders to leave the area provides probable cause for obstructing governmental administration); <u>Johnson v. City of New York</u>, 05 Civ. 7519 (PKC) (S.D.N.Y. Sept. 29, 2008), 2008 U.S. Dist. LEXIS 78984, *10 (S.D.N.Y 2008) ("an officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer"); <u>see</u> <u>also</u> <u>Lennon v. Miller</u>, 66 F.3d 416, 424 (2d Cir. 1995) (finding probable cause for arrest where plaintiff refused to follow officer's order to leave her vehicle). Plaintiff refused numerous orders to leave and demonstrated his intent not to comply by sitting on the sidewalk. This interfered with, *inter alia*, the officers' more general duties under New York City Charter §435(a). The charter states "the police department and force shall have the power and it shall be their duty to…preserve order at…all public meetings and assemblages…regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public…" <u>Id</u>.

This straightforward rule of law is not altered because plaintiff was at a demonstration. <u>Marcavage v. City of New York</u>, 689 F.3d 110 (2d Cir. 2012) (finding probable cause for obstruction of governmental administration where officers, carrying out a governmental function of regulating pedestrian traffic during a demonstration, ordered plaintiffs to leave the area numerous times before their arrest). As the record shows, and plaintiff concedes, that he disregarded police orders, probable cause existed for his arrest on November 5, 2011, and any claim related to that arrest must be dismissed.

## B. Probable Cause Existed for Plaintiff's September 17, 2012 Arrest

On September 17, 2012 Plaintiff was charged with, *inter alia*, disorderly conduct subsections five and six. As above these make it a violation to block pedestrian traffic or to refuse a lawful order to disperse. N.Y. Penal Law § 240.20(5),(6); U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).

Plaintiff knew that demonstrations may have included blocking access to the Stock Exchange and the Wall Street area. 56.1 ¶¶ 105-106. The events planned for that day called explicitly for disruptions to lower Manhattan and the Wall Street area including "roving intersection occupations" around the stock exchange, and actions to "block Wall Street with non-violent civil disobedience." 56.1 ¶¶ 99-100. Plaintiff knew ahead of time that Broadway and Wall Street, the location of his arrest, was a designated gathering location for protestors. 56.1 ¶ 120. Plaintiff also knew that there were events timed around the opening bell of the Stock Exchange. 56.1 ¶ 106. The opening bell of the Stock Exchange is at 9:30, and the Stock Exchange is less than one block from Broadway and Wall Street. Plaintiff's arrest was at 9:30. Decl. Exhibit M.

Plaintiff arrived at the intersection of Broadway and Wall Street and admits that he was approached and asked to move on. 56.1 ¶ 124. Officers, including Officer Pastula then urged Plaintiff on, and continued to order him to move on. 56.1 ¶¶ 125-127. Despite having a clear path north, Plaintiff did not move, and remained near the employee entrance to Wall Street. 56.1 ¶¶ 126, 130, 132, 134. After being ordered to move Plaintiff remained stationary near the location where individuals trying to get to work needed access. 56.1 ¶¶ 131, 134-135. Over the course of at least one minute Plaintiff remained at that location chanting on the sidewalk. 56.1 ¶¶ 135-136. This included a call and response of "Who's Sidewalk?" "Our Sidewalk!" 56.1 ¶

136.  After Plaintiff responded to the order to move on by refusing to move on, and chanting with other protestors about the sidewalk, Officer Pastula approached Plaintiff to place him under arrest.  56.1 ¶ 137.  Plaintiff was blocking pedestrian traffic near the narrow employee entrance, had refused a previous order to disperse, and his chanting made it clear that he intended to remain in place and contribute to the disruptions to Wall Street and the individuals who work and live in the area.

Plaintiff does not contest that he was ordered to move on by various officers including Officer Pastula personally, and he instead remained not only by the intersection of Broadway and Wall Street, but near the access point for employees seeking to get to work. Additionally, Plaintiff's chanting with other protestors, who evidently planned to disrupt the area and block Wall Street, about it being their sidewalk make it appear that he had the intent to disrupt lower Manhattan as well, particularly as he was remaining there in defiance of a dispersal order at a choke point for employees and residents attempting to conduct business.  Plaintiff was arrested while actually engaged in disorderly conduct for failure to disperse and for blocking pedestrian traffic so there can be no question that there was probable cause for his arrest as well. Similarly, his deliberate disregard for the orders by the police and Officer Pastula provided probable cause to arrest for obstruction of governmental administration as described above.

### C.  The Orders Disregarded by Plaintiff were Lawful

For both arrests plaintiff does not deny that he refused orders by the police to disperse.  With respect to his November 5, 2011 arrest plaintiff went as far as boasting on his social media account about disobeying police orders.  ==Decl. Exhibit Z.==  With respect to his September 17, 2012 arrest, plaintiff was headed to a rallying point one block from the stock market at the opening bell, claiming ignorance of multiple plans by protestors to form a human blockade of Wall Street at the opening bell.  At that point plaintiff was ordered, and even guided

away, but his response was to remain near a narrow access point for residents and employees of the area and lead a chant of "Whose sidewalk?" "Our Sidewalk." As he admits disobeying requests and orders to leave Plaintiff's only redoubt is to claim that the orders by the police were unlawful, however, that argument fails.

"[A]n order to disperse is lawful unless the order was purely arbitrary and not calculated in any way to promote the public order." Crenshaw v. City of Mount Vernon, 372 F. Appx 202, 206 (2d Cir. 2010); People v. Hanson, 178 Misc.2d 932, 937 (Dist. Ct. Nassau County 1998) ("An individual's refusal to obey a police order to disperse can only be justified when the circumstances show conclusively that the police officer's direction was purely arbitrary and not calculated in any way to promote the public order.") It is well-settled, and explicit as a duty of the Police Department, that "[c]ontrol of crowds is a legitimate police function." Schumann v. New York, 270 F. Supp. 730, 733 (S.D.N.Y. 1967); Matter of Ashley M., 30 A.D.3d 178, 180 (1st Dept. 2006) ("Crowd control is a legitimate governmental function exercised by the police department"); New York City Charter §435(a). Here plaintiff admits and the incontrovertible record demonstrates that he deliberately disobeyed orders, and that the police were well within their rights to issue those orders. The extremely congested sidewalk on November 5, 2011, as well as safety concerns about allowing the agitated crowd to take the steps made the numerous police orders anything but arbitrary, and undoubtedly lawful.

Similarly, on September 17, 2012, Occupy Wall Street protestors had designs to bring lower Manhattan, Wall Street, and the stock exchange in particular, to a halt using human blockades, timed for the opening bell of the stock market. This made concerns about demonstrators disrupting traffic on sidewalks and intersections, particularly where and when plaintiff was arrested, pronounced. Orders by the police reflected a proper exercise of delegated

power under New York City Charter §435(a). <u>Marcavage v. City of New York</u>, 689 F.3d 110. The police attempted to ensure that residents and employees of that area could carry on with their lives despite demonstrators actively trying to disrupt them. Plaintiff, in disregarding multiple orders, leading a chant of "whose sidewalk," and remaining at the narrow entrance police tried to keep clear was absolutely subject to the reasonable orders that he disregarded.

> ### D. Plaintiff's Claims for Failure to Intervene and His Claims Against Defendants Slayne and Zielinski Must be Dismissed as a Matter of Law

The Second Circuit has held "Nonetheless, where, as here, the arresting officers committed no infringement, the logic of <u>Heller</u> would appear to preclude liability [for failure to intervene]." <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001); *citing* <u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986).

Here Plaintiff brings failure to intervene claims with respect to both of his arrests. Where there has been no underlying Constitutional violation, as in this case, no claim for failure to intervene can lie. Accordingly any claim for failure to intervene must be dismissed.

Similarly, plaintiff asserts no specific allegations against defendants Slayne and Zielinski and can set forth no evidence of any specific wrongdoing by them. Under any theory defendants Slayne and Zielinski must be dismissed based on the lack of any specific allegations against them or admissible evidence adduced in discovery. Generally "in this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Back v. Hastings on Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 122 (2d Cir. 2004) (citations omitted). Assuming that Sergeant Slayne and Lieutenant Zielinski have been named on a failure to intervene theory plaintiff's claim still fails as he can offer no evidence that Slayne or Zielinski were nearby or even aware of any alleged constitutional deprivation; Furthermore plaintiff fails to allege that Slayne or Zielinski had any meaningful opportunity to

intervene in any alleged violation, let alone what conduct they failed to intervene in.  <u>Corley v. Nabeel Shahid</u>, 13 Civ. 4743 (BMC) (E.D.N.Y. Mar. 5, 2015), 2015 U.S. Dist. LEXIS 27091, *13-8.

### E.  Plaintiff's First Amendment Claims Must Be Dismissed

In order to state a claim for First Amendment Retaliation, Plaintiff must establish "1) he has an interest protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by his exercise of that right; and 3) defendants' actions effectively chilled the exercise of his First Amendment right." <u>Kuck v. Danaher</u>, 600 F.3d 159, 168, (2d Cir. 2010); <u>Santulli v. Russelo</u>, 519 Fed. Appx. 706, 709 (2d Cir. 2013).[1]

Plaintiff's First Amendment Retaliation claim fails as probable cause existed for his arrests and qualified immunity shields the actions of the officer.  Probable cause is a complete defense to a claim of First Amendment retaliation.  "Fabrikant's claims of malicious prosecution, unreasonable search and seizure,  and First Amendment retaliation fail because defendants had probable cause…" <u>Fabrikant v. French</u>, 691 F.3d 193, 215-216 (2d Cir. 2012). Plaintiff also cannot set forth any evidence that the defendants actions were motivated by any protected expression, or that it resulted in any chill to plaintiff's First Amendment rights.

Here, as outlined above probable cause and qualified immunity render Plaintiff's arrests proper, and insulate Defendants from any liability.  Additionally, plaintiff cannot make out the elements of his First Amendment retaliation claim, and no claim can attach.

---

[1] Plaintiff does not set forth any basis for a retaliatory prosecution claim separate from his 1st Amendment retaliation claim.  Accordingly, Plaintiff's retaliatory prosecution claim should be subsumed under his 1st Amendment retaliation claim or dismissed.

### F. Plaintiff's Malicious Abuse of Process Claims Must Be Dismissed

To maintain a claim for malicious abuse of process or retaliatory prosecution, Under New York law plaintiff must show that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)); Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984). "The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim." Lopez v. City of New York, 901 F. Supp. 684, 691 (S.D.N.Y. 1995).

A finding of probable cause defeats a claim of malicious abuse of process. Irish v. City of New York, 2010 U.S. Dist. LEXIS 130466, *16 (S.D.N.Y. 2010) (finding that probable cause to issue process "negates a claim for abuse of process") (quoting Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358, *49-50 (S.D.N.Y. 2009)).

Here Plaintiff's claim fails as probable cause existed for his arrest and prosecution. Additionally, Plaintiff cannot set forth any collateral objective that any defendants sought after legal process was issued. To the extent plaintiff claims it was associated with his exercise of his First Amendment rights, that claim should be subsumed under his First Amendment cause of action and dismissed. Plaintiff's abuse of process claim must be dismissed.

### G. Qualified Immunity Precludes Any Liability From Plaintiff's Arrests

Even if the Court finds there was not probable cause for either arrest, the defendants are entitled to qualified immunity in this case. The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted).

> In the confused and boisterous situation confronting the officers, the police were aware that the demonstrators were blocking the roadway in violation of § 240.20(5). [T]he officers would have known that a police official had attempted to advise the protestors through a bullhorn that they were required to disperse. While reasonable officers might perhaps have recognized that much or most of the crowd would be unable to hear the warning due to the noise created by the chanting protesters, it was also apparent that the front rank of demonstrators who presumably were able to hear exhibited no signs of dispersing.

Garcia v. Doe, 2014 U.S. App. LEXIS 24772 (2d Cir. N.Y. Aug. 21, 2014) (granting qualified immunity to officers making arrests at an Occupy Wall Street march even when protesters likely could not hear hear the warnings to disperse.) A police officer is entitled to qualified immunity from a claim for arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause. Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (citations omitted). "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).

The Supreme Court has noted "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

As the officers had probable cause they violated no clearly established rights of Plaintiff's. Furthermore even if probable cause did not exist the officers acted reasonably under

the circumstances in believing probable cause existed. On November 5, 2011 protestors blocked the sidewalk in front of 60 Centre until orders to disperse were issued. Plaintiff willfully disobeyed orders to disperse and never attempted to comply. Eventually he sat down on the sidewalk and refused to even stand signaling his complete refusal to disperse or comply with any request, despite being part of the protest that blocked the sidewalk. U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).

Similarly on September 17, 2012, Plaintiff was personally ordered to disperse, failed to do so, and led protestors in a chant about it being their sidewalk, apparently to the loss of the rest of the City and against the explicit powers of the police. N.Y.C. Charter §435(a). That this happened at a narrow pedestrian access point, at a planned location and time for disruptive blockades by protestors made Plaintiff at least appear to have been engaged in the deliberate plans by the Occupy Wall Street protestors to form a human wall and bring lower Manhattan to a standstill. It was certainly reasonable to believe that probable cause existed in this case.

Plaintiff separately alludes to claims under the 14th Amendment. Summary judgment should be granted with respect to his 14th Amendment claims. Plaintiff fails to expand upon these claims and cannot set forth any facts that support them. Ying Jing Gan v. City of New York, 996 F.3d 522, 532 (2d Cir. 1993). Furthermore "[w]here another provision of the Constitution provides an explicit textual source of Constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." Southerland v. City of New York, 667 F.3d 87, 103 (2d Cir. N.Y. 2011); *quoting* Kia P. v. Mcintyre, 235 F.3d 749, 757 (2d Cir. 2000). Any claim under the equal protection clause fails as plaintiff cannot point to any admissible evidence that identifies him as treated differently from other individuals who were deliberately defying orders to disperse.

Gonzalez v. City of New York, 38 Fed. Appx. 62, 64 (2d Cir. 2002); LaTrieste Rest. & Cabaret

v. Vill. of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994); Celotex Corp. v. Catrett, 477 U.S. 317,

322 (1986).

### PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE FAILS AS A MATTER OF LAW AND UNDER THE FACTS PRESENTED.

An "excessive force claim arises in the context of an arrest or investigatory stop

of a free citizen, it is most properly characterized as one invoking the protections of the Fourth

Amendment ..." Graham v. Connor, 490 U.S. 386, 394 (1989). The Courts have consistently

held "that the right to make an arrest or investigatory stop necessarily carries with it the right to

use some degree of physical coercion or threat thereof . . . ." Graham, 490 U.S. 396 (citations

omitted). Thus, "[d]etermining whether the force used to effect a particular seizure is

reasonable... requires a careful balancing of the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing governmental interests at

stake." Graham, 490 U.S. 396 (citations omitted) .

A plaintiff must establish "through evidence, that the 'alleged use of force is

objectively sufficiently serious or harmful enough to be actionable.'" Rincon v. City of New

York, 03 Civ. 8276 (LAP) (S.D.N.Y. Mar. 21, 2005), 2005 U.S. Dist. LEXIS 4335, *11 (citing

United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)). "Not every push or shove, even if it

may later seem unnecessary in the peace of a judge's chambers, violates the Fourth

Amendment." Graham, 490 U.S. 397; citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.

1973)).

The Second Circuit holds that minimal injuries speak to the reasonableness of

force used. Tracy v. Freshwater, 623 F.3d. 90, 97 (2d Cir. 2010)(Striking multiple times with a

metal flashlight in the course of a hand-to-hand struggle is subject to qualified immunity, even

where plaintiff claims he was not resisting); Crowell v. Kirkpatrick, 400 F. App'x 592, 595 (2d Cir. 2010). As the right to make an arrest allows for the right to use physical coercion "a *de minimis* use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993). "[T]he extent of injury may . . . provide some indication of the amount of force applied." Alford v. City of New York, 11-CV-0622 (ERK) (E.D.N.Y. Aug. 29, 2012), 2012 U.S. Dist. LEXIS 123137, *9-11; *quoting* Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010).

Painful handcuffing alone does not amount to a Constitutional violation as a matter of law. Schy v. Vermont, 2 F. App'x 101, 101-02 (2d Cir. 2001); *See also* Beckles v. City of New York, 492 Fed. Appx. 181, 182-3 (2d Cir. 2012). "'Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective[,] handcuffs must be tight enough to prevent the arrestee's hands from slipping out.'" Grant v. City of New York, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007) (quoting Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y.2005) (citations omitted)).

As a matter of law, an "allegation of sore, yet uninjured, wrists [as a result of handcuffing] simply does not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation." Wilder v. City of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003). Even a showing of minor injuries from handcuffs is "insufficient to constitute a Fourth Amendment claim of unreasonable force." Stefanopoulos v. City of New York, 01-CV-0771 (SJ) (E.D.N.Y. Mar. 2, 2005), 2005 U.S. Dist. LEXIS 22445, *3.

Here Plaintiff does not state a claim for excessive force related to either arrest. See Roundtree v. New York, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) ("to conclude that a 'push'

that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that any physical contact by an arresting officer with the arrested person is actionable."); Nogbou v. Mayrose, 07 Civ. 3763 (RWS) (S.D.N.Y. Oct. 15, 2009), 2009 U.S. Dist. LEXIS 96118, at *15-19; aff'd, 400 Fed. Appx. 617, 619 (2d Cir. 2010); Wims v. New York City Police Dep't, et al., 10 Civ. 6128 (PKC) (S.D.N.Y. Jul. 20, 2011), 2011 U.S. Dist. LEXIS 78641, at *14-15; Romano, 998 F.2d 105; Wilder, 288 F. Supp. 2d 344.

      Plaintiff's claims related to his November 5, 2011 arrest are limited to a claim that his handcuffs were too tight. Plaintiff concedes however that he never requested or subsequently sought any medical treatment. 56.1 ¶¶ 59-61. Plaintiff suffered no injury except bruising that lasted approximately one week. 56.1 ¶ 62. Handcuffing is privileged and typically necessary as part of an arrest. Further, a Fourth Amendment violation can only stem from a deliberate harm. Elliott v. County of Monroe, 115 Fed. Appx. 497, 498 (2d Cir. 2004). Police officers replacing handcuffs multiple times, both at the scene and at 1 Police Plaza, shows not only that no Fourth Amendment violation could have taken place, but the reasonableness of the officers at the scene. 56.1 ¶¶ 66-67. Finally, to the extent plaintiff could sustain a Fourth Amendment claim despite having no injury, seeking no treatment and having his requests accommodated throughout his arrest, his claim still fails as he cannot identify or describe any officers who placed him in handcuffs, or who he complained about his handcuffs to. 56.1 ¶¶ 64-65, 68.

      Plaintiff's claims from his September 17, 2012 arrest relate to a claim of tight cuffing and Officer Pastula placing his hand on the back of Plaintiff's neck when he first affected the arrest of Plaintiff. Plaintiff's force claim related to the tight cuffs mirrors his November 5, 2011 claim. Plaintiff suffered no injury apart from bruising and neither requested nor sought medical treatment. 56.1 ¶¶ 154-156. The bruising subsided within one week. 56.1 ¶ 156.

Additionally, Plaintiff delayed making any complaints about his handcuffs for twenty minutes. 56.1 ¶ 146. When he finally requested his handcuffs be removed they were replaced within ten minutes. 56.1 ¶¶ 147-148. Plaintiff cannot sustain any Fourth Amendment claim as again, he suffered no injury, required no medical treatment, and had his requests to loosen his handcuffs accommodated shortly after he spoke up. Further, plaintiff again is unable to identify which officer placed him in handcuffs in the first place, let alone any deliberate act that could present a constitutional violation. 56.1 ¶ 144.

Plaintiff's claim related to Officer Pastula putting his hand on Plaintiff's neck immediately prior to his arrest is similarly attenuated. Plaintiff suffered no injury to his neck, requested and sought no treatment related to his neck, and even in describing the contact did not describe a Fourth Amendment claim. Plaintiff stated that Officer Pastula held him by the back of the neck between his thumb and the rest of his hand. Decl. Exhibit B, 51: 6-9; 56.1 ¶ 139. When directly questioned about the amount of pressure applied Plaintiff did not describe pain or discomfort, but just stated that he knew he was about to be arrested. 56.1 ¶ 139. The contact with Plaintiff's neck was exceedingly brief, not excessive, and apparently had the affect only of alerting Plaintiff to his impending arrest. 56.1 ¶ 140-141; Decl. Exhibit N, 01:40-01:52.

Finally Defendants are still shielded by qualified immunity for the application of handcuffs and the use of minimal force to the extent they are not objectively unreasonable. "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995). Accordingly Plaintiff's claims for excessive force must be dismissed with prejudice.

# PLAINTIFF'S MALICIOUS PROSECUTION
## CLAIMS MUST BE DISMISSED.

Under New York law in order for plaintiff to prevail on a malicious prosecution claim he must show: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)). Further, in addition to the elements of malicious prosecution under state law, in order to allege a cause of action for malicious prosecution under §1983, plaintiff must also show that there was 5) a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights. Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (citing Murphy v. Lynn, 118 F.3d 938, 944-46 (2d Cir. 1997).

Plaintiff's malicious prosecution claims fail for both arrest dates as probable cause existed for his arrest and prosecution, no defendant can be said to have initiated legal process for the purpose of a malicious prosecution claim, plaintiff did not suffer an actionable deprivation of liberty under the 4th amendment, and the officers are protected by qualified immunity. "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." Johnson v. Constantellis, 221 Fed. Appx. 48, 50 (2d Cir. 2007).

However, assuming that probable cause does not preclude plaintiff's claims, it still fails as to both incidents because no prosecution was ever initiated. Plaintiff did not appear before the court on either matter. He attended no arraignment and ultimately needed to make no court appearances. His claims for malicious prosecution simply did not accrue as a matter of

law.  Garrett v. Port Auth., 04 Civ. 7368 (DC) (S.D.N.Y. Aug. 8, 2006), 2006 U.S. Dist. LEXIS 55548, *4. ("Therefore, although Officer Tuite's issuance of a summons may be relevant to Garrett's false arrest claims, the ticket was not the initiation of legal process for the purposes of the § 1983 malicious prosecution claim.  Absent the initiation of proceedings, a court appearance pursuant to the summons alone cannot give rise to a malicious prosecution claim.")  In Garrett, the Court reasoned that without any arraignment, there can be no post-arraignment detention, a necessary feature of a malicious prosecution claim.   Id., fn 10 (distinguishing Rohman v. New York City Trans. Auth., 215 F.3d 208 (2d Cir. 2000)).  Without an arraignment, it is clear plaintiff cannot suffer any post-arraignment seizure as required by law.  "Additionally, we have said, to be actionable under section 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures.  We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required suffers a Fourth Amendment deprivation of liberty."  Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013).

Plaintiff claims that for his November 5, 2011 arrest he was "repeatedly and continually deprived of his liberty" as a result of a summons that would have required him to appear at one Court date on January 10, 2011.  However, as of January 9, 2011, the district attorney's office had declined to prosecute.  Decl. Exhibit U.  As outlined by the District Attorney's office "the case did not go to court."  Decl. Exhibit U.  Plaintiff's alleged prosecution never even went before the Court, and he cannot claim to have been prosecuted, let alone maliciously.

Similarly, plaintiff claims that for his September 17, 2012 arrest he was "repeatedly and continually deprived of his liberty" as a result of a summons that required him to

appear at one Court date on December 5, 2012.  Decl. Exhibit V.  At that time the District Attorney's office informed Plaintiff that the case was not ready, and he would be notified to appear if the case was reinstated.  Decl. Exhibit V.  Less than a month later the District Attorney declined to prosecute, and as with plaintiff's prior summons, the case did not go before the court. He was never arraigned and no malicious prosecution claim could even accrue as a matter of law.

Plaintiff also fails to outline a seizure sufficient to constitute a malicious prosecution claim.  A single court appearance from a summons or desk appearance ticket does not to rise to the level of a Constitutional deprivation.  "The proceedings against Faruki placed no restriction on her other than a requirement that she appear in court on two occasions—an insufficient deprivation of liberty to support a Fourth Amendment malicious prosecution claim." Faruki v. City of New York, 517 Fed. Appx. 1, 2 (2d Cir. 2013) (citing Burg v. Gosselin, 591 F.3d 95, 101 (2d Cir. 2010) ("[A] pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure."))

Finally to the extent probable cause was lacking, defendants are still shielded by qualified immunity to the extent (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause.  Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).  As discussed at length above plaintiff actively, or at least recklessly, sought arrest and officers were reasonable to believe his arrest and any prosecutions were appropriate.

### PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS FAIL ON THE MERITS AND AS A MATTER OF LAW.

Plaintiff argues for Municipal Liability on two theories, that the police targeted Occupy Wall Street participants for arrest without cause, and engaged in random arrests to

frighten, confuse and deter assembly. These claims are without merit and must be dismissed as a matter of law.

While municipalities may be sued under 42 U.S.C. § 1983, they are not liable under the theory of *respondeat superior.* The Supreme Court held in <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978) that:

> The language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

Where there is no underlying constitutional violation, there can be no liability pursuant to <u>Monell</u>. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986); <u>Martinez v. City of New York</u>, 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), <u>aff'd</u> <u>Martinez v. Muentes</u>, 340 Fed. Appx. 700 (2d Cir. 2009). Here, where Plaintiff's arrests were plainly justified, and Plaintiff's conduct implies he may have sought out arrest, no underlying constitutional violation can be claimed and no liability pursuant to <u>Monell</u> can be maintained on any theory.

Additionally a municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through [ ] official decision making channels." <u>Monell</u>, 436 U.S. at 690-91. Here plaintiff cannot show that any customary policy exists with respect to targeting participants for arrest as he must. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). In fact

plaintiff's pleadings allude to only four individuals who were arrested before relying on unrelated law school clinics' reports on force, not arrests, by the police. Decl. Exhibit E, ¶¶ 137-164.

Similarly Plaintiff's arguments that there is a policy of random arrests, or targeted arrests of Occupy demonstrators, are not supported by the evidence, and certainly not by Plaintiff's own case. As outlined above there was ample probable cause for Plaintiff's arrest. His conduct, and the numerous warnings and requests that went unheeded before any action was taken, make clear that the police acted properly and with restraint at all times. Far from plaintiff being randomly plucked from a crowd or targeted, a crowd was requested to disperse over several minutes. On both occasions plaintiff was one of a few who deliberately ignored those lawful requests. The facts at issue plainly contradict plaintiff's claimed theories. Plaintiff's only basis to support this claim is to discuss several arrests from press articles that he alleges were 'random.' Decl. Exhibit E, ¶¶ 165-176. This is inadmissible and insufficient to maintain a claim at this stage, and regardless meritless in the face of Plaintiff's justified arrests that he seemingly sought out. As plaintiff cannot establish either theory his Monell claim must be dismissed as a matter of law. Ying Jing Gan v. City of New York, 996 F.3d 522, 532 (2d Cir. 1993)

Plaintiff's Monell claims must also be dismissed as implausible. Even when looking to a theory that as alleged is "consistent with an unlawful agreement," the Court must dismiss that same claim where it is "more likely explained by, lawful [] behavior." Atlantic Corp. v. Twombly, 550 U.S. 544, 567 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 681-2 (2009) ("Taken as true, these allegations are consistent with [discrimination based on race, religion or national origin]. But given more likely explanations they do not plausibly establish this purpose.") Plaintiff's first theory, that Occupy Wall Street protestors were targeted for arrest

is unsupported by his pleadings, and implausible.  Occupy Wall Street demonstrations spanned a period of over a year and included many thousands of individuals making their voices heard. And despite individual demonstrators sometimes engaging in illegal conduct, and  some large scale plans to break the law, (See e.g. Decl. Exhibit U), the movement resulted in relatively few arrests, owing in part to the professionalism of the New York City Police Department and its respect for the First Amendment.  "plaintiffs have neither plausibly alleged that the officers intended to discourage protesting nor explained why, had they intended to do so, they would have arrested only the protesters who [violated the law]." Garcia v. Bloomberg, 865 F. Supp. 2d 478, 492-3 (S.D.N.Y. 2012) (dismissing as implausible plaintiff's broad conspiratorial policy to allegedly deter Occupy Wall Street protests).  It is far more plausible that any arrests were based on illegal conduct and civil disobedience as described at length above.  Similarly, the idea that arrests were initiated to deter First Amendment activity is implausible on its face.  The plans to disrupt the functioning of lower Manhattan, coupled with the numerous warnings of the police amply demonstrate the respect for the First Amendment of the police department, and the opportunities given to demonstrators to comply before any arrest.  Plaintiff's November 5, 2011 arrest illustrates that point as arrest was clearly a last resort after over ten minutes of warnings, read by multiple individuals through bullhorns, when plaintiff and others ultimately responded by sitting on the sidewalk.

Plaintiff's Monell claim must be dismissed as he suffered no constitutional violation, any constitutional violation was not caused by any illegal policy, and plaintiff fails to plausibly allege, and cannot show a prima facie entitlement to relief as he is required to at this stage.

## PLAINTIFF'S STATE CLAIMS FAIL AS A MATTER OF LAW.

### A. Plaintiff's Assault and Battery Claims Must be Dismissed

With respect to plaintiff's claims for assault and battery, "[o]fficers executing a lawful arrest are privileged to commit any battery that is reasonably necessary to effect the arrest." Johnston v. Port Auth. of N.Y. & N.J., 2011 U.S. Dist. LEXIS 82815, *36 (E.D.N.Y. 2011) (granting summary judgment to defendants against plaintiff's claim of assault). As discussed above the officers use of force was privileged, necessary and de minimis. Additionally the conduct of the officers at both incidents reflects their continued monitoring and accommodation of Plaintiff's requests to prevent any harm, let alone injury.

Additionally to the extent officers are granted qualified immunity for the federal claims, with respect to the state law claims the officers are immune from suit if they were exercising the discretion and judgment inherent to his or her job. Estate of Yankel Rosenbaum, 982 F. Supp. 894, 895-6 (E.D.N.Y. 1997). Accordingly Plaintiff's state assault and battery claims must be dismissed.

### B. Plaintiff's Negligent Retention, Hiring, Training and Supervision Claims Must be Dismissed.

To the extent probable cause existed for Plaintiff's arrests his negligent retention, hiring, training, and superivsion claims must be dismissed. Griffin v. City of New York, 67 A.D.3d 550, 551 (1st Dep't 2009). Additionally as the Officer Defendants were acting on behalf of the New York City Police Department no liability can fall under these theories.

> "We find that defendants are entitled to summary judgment dismissing plaintiff's negligent hiring, retention and training claims. Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention. Imposing liability on the

employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training."

Karoon v. New York City Transit Auth., 241 A.D.2d 323, 324 (1st Dep't 1997)

(citations omitted).  Accordingly Plaintiff's claims for negligent retention, hiring, training and supervision must be dismissed.

## PLAINTIFF'S LOST WAGES CLAIM MUST BE DISMISSED.

The 2010 amendments to Rule 56 of the Federal Rules of Civil provide, in pertinent part, that "[a] party may move for summary judgment, identifying each claim or defense–*or the part of each claim or defense*–on which summary judgment is sought."  Rule 56(a), Fed. R. Civ. P. (emphasis added).  Since the 2010 Amendment, it has been recognized that part of a claim includes the element of damages.  See, e.g., Rasmussen v. City of New York, 766 F. Supp. 2d 399, 404 (E.D.N.Y. 2011) ("the reference to 'part' is best understood as relating to either the entirety of liability, or damages, or at least a discrete element of damages.").  Here, plaintiffs lost employment and any lost wages stem from his firing for failure to maintain his teaching certification.  56.1 ¶ 163.  That unrelated dismissal from his employment is solely traceable to Plaintiff's failure to respond to the four warnings regarding his expiring teaching certificate.  Any lost wages after that are speculative and non-recoverable as Plaintiff was not a salaried employee, but worked in various positions including as a per diem substitute teacher.

After he was fired, unrelated to his arrest, there was no obligation for any party to re-hire Plaintiff.  He worked as a substitute teacher and at other schools.  While plaintiff has provided various pay stubs and financial records, his lost earnings claim is necessarily speculative as it is not based on any lost salary flowing from his arrest.  As a hopeful substitute teacher with no weekly schedule, and paid per days worked, his wages are necessarily too

speculative to be awarded.  <u>State Farm Mut. Auto. Ins. Co. v. Stack</u>, 55 A.D.3d 594, 595-596 (2nd Dep't 2008) (no lost income award to self-employed broker who had no financial records to prove damages with reasonable certainty); <u>Ortiz v. Leak</u>, 214 A.D.2d 840, 840-841 (3rd Dep't 1995) (no lost earnings for 'self-employed' construction worker who offered no documentary evidence).

Additionally, Plaintiff agreed to the restrictions that prevented him from substitute teaching.  Plaintiff's second arrest, on September 17, 2012, briefly made him ineligible to substitute teach, however, that was only between November 28, 2012 and January 18, 2013. 56.1 ¶¶ 167-168.  This ineligible designation was pursuant to Chancellor's Regulation C-105, which requires an investigation, and for a substitute teacher, requires that they not be placed in pedagogical settings.  Decl. Exhibit Y.  Plaintiff agreed to abide by C-105 prior to becoming a substitute teacher.  56.1 ¶ 170.  Regardless, any damages are still completely speculative as substitute teachers are not guaranteed any amount of work, their schedules are highly variable, and Plaintiff had not even begun substitute teaching when he was rendered ineligible making it impossible for him to offer relevant evidence on lost wages even by estimate.  56.1 ¶ 167.

## <u>CONCLUSION</u>

For the foregoing reasons defendants respectfully request that the Court grant summary judgment on all causes of action and dismiss plaintiffs' complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
              March 27, 2015

ZACHARY CARTER
Corporation Counsel - City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2373

By:    /s/
        Andrew Lucas
        New York City Law Department
        Special Federal Litigation Division