IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSHUA WILES,

                                     PLAINTIFF,

             -against-

THE CITY OF NEW YORK, a municipal entity,
et al.

                              DEFENDANTS.
------------------------------------------------------------------X

Index No. 13-cv-2898 (VSB)

ECF CASE

**MEMORANDUM OF LAW IN OPPOSITON TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

David A. Thompson, Esq. [DT3991]
*Stecklow Cohen & Thompson*
*Attorneys for Plaintiff*
217 Centre Street, 6th Floor
New York, New York 10012
Phone: (212) 566-8000
Fax: (212) 202-4952

# TABLE OF CONTENTS

I. Introduction .................................................................................................. 5

   A.  The November 5, 2011 Arrest ....................................................................... 5

   B.  The September 17, 2012 Arrest .................................................................... 8

   C.  Damages .................................................................................................. 10

     Lost Wages: Nov. 5, 2011 ............................................................................ 10

     Lost Wages: September 17, 2012 .................................................................. 11

     Handcuffing Damages ................................................................................. 11

II.  Standard of Review ........................................................................................ 12

III.  The Constitutional Tort of False Arrest ........................................................... 14

IV.  The Law of Disorderly Conduct And the First Amendment ................................. 15

   B.  Penal Law 240.20(5) .................................................................................. 16

   C.  Penal Law 240.20(6)  - Refusal to Disperse ................................................. 17

   D.  Resisting Arrest ......................................................................................... 18

   E.  Obstructing Governmental Administration .................................................... 19

V.  Probable Cause ............................................................... **Error! Bookmark not defined.**

   A.  The Facts of November 5, 2011 ............................... **Error! Bookmark not defined.**

VI.  Probable Cause and Qualified Immunity ......................................................... 19

VII.  First Amendment Retaliation ........................................................................ 22

VIII.  State Law Claims ........................................................................................ 24

IX.  Compensable Injury ...................................................................................... 25

X.  The Individual Defendants Zielinski, Slayne and McNamara are  In Default for Failure to Answer the Complaint; They Cannot  Move for Summary Judgment ........................................... 25

XI.  Personal Involvement and Failure to Intervene ................................................ 27

## Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ................................................................. 12

*Am. Home Assur. Co. v. Panalpina, Inc.*, 2011 U.S. Dist. LEXIS 16677 (S.D.N.Y. 2011) .......... 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ....................................... 12, 14, 23, 24

*Au Bon Pain Corp. v. Artect Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ................................................. 28

*Beller & Keller v. Tyler*, 120 F.3d 21, 25-26 (2d Cir. N.Y. 1997) ................................................. 27

*Blue v. Koren*, 72 F.3d 1075, 1082-1083 (2d Cir. 1995) ............................................................... 23

*Boos v. Barry*, 485 U.S. 312, 318 (1988) ..................................................................................... 16

*Broughton v. State*, 37 N.Y.2d 451, 458 (N.Y. 1975) ............................................................. 15, 25

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ..................................................................... 13

*City of Chi. v. Morales*, 527 U.S. 41, 59 (1999) ......................................................................... 18

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. N.Y. 2011) ............. 27

*Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003) ............................... 22

*Crenshaw v. City of Mount Vernon*, 372 Fed. Appx. 202, 207 (2d Cir. N.Y. 2010) .................... 22

*Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ................................................. 23, 24

*Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) ...................................... 13

*Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) ............................................. 23, 24

*East River Hous. Corp.*, 2015 U.S. Dist. LEXIS 24924, *106-107 (S.D.N.Y. March 2, 2015) .... 14

*Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007) ................................................................. 12

*Guntlow v. Barbera*, 907 N.Y.S.2d 86, 90 (N.Y. App. Div. 3d Dep't 2010) ................................ 14

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ......................................................................... 21

*Haus v. City of New York*, 2011 U.S. Dist. LEXIS 155735, 71-72 (S.D.N.Y. Aug. 31, 2011 ....... 18

*Jaegly v. Couch*, 439 F.3d 149, 151-152 (2d Cir. N.Y. 2006) ...................................................... 14

*Kerman v. City of New York,* 374 F.3d 93, 126 (2d Cir. N.Y. 2004) ..................................... 11, 26

*Lepore v Town of Greenburgh*, 120 A.D.3d 1202, 1204 (N.Y. App. Div. 2d Dep't 2014) ........... 25

*Lozada v. Weilminster*, 2015 U.S. Dist. LEXIS 35955, * 56 (E.D.N.Y. Mar. 23, 2015) ............. 24

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) ............................... 12

*Messina v. Matarasso*, 284 A.D.2d 32, 35-36 (N.Y. App. Div. 1st Dep't 2001) ........................ 25

*New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ................................................................... 28

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 432-33 (2d Cir. 2009) .......... 21

Ornelas v. United States, 517 U.S. 690, 696 (1996) ...................................................................... 21

*Papineau v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) ........................................................ 16, 17, 18

*People v Baker*, 20 N.Y.3d 354, 359 (2013) ................................................................................ 15

*People v Coley*, 38 Misc. 3d 1220(A), 1220A (N.Y. City Crim. Ct. 2013 .................................. 19

*People v Oden*, 36 NY2d 382, 384 (1975) ................................................................................... 15

*People v Small*, 109 A.D.3d 842, 843 (N.Y. App. Div. 2d Dep't 2013) ...................................... 19

*People v. Casey*, 95 N.Y.2d 354, 362 (N.Y. 2000) ...................................................................... 19

*People v. Edmond*, 17 Misc. 3d 1130(A), 1130A (N.Y. Sup. Ct. 2007 ....................................... 17

*People v. Lupinacci*, 191 A.D.2d 589 (N.Y. App. Div. 2d Dep't 1993) ....................................... 19

*People v. Peacock*, 68 N.Y.2d 675, 677 (1986 ........................................................................... 19

*People v. Perez*, 47 A.D.3d 1192, 1193-1194 (N.Y. App. Div. 4th Dep't 2008) ........................ 19

*People v. Weaver*, 16 N.Y.3d 123, 127 (2011) ..................................................................... 15, 22

*Peterson v. Syracuse Police Dep't*, 467 Fed. Appx. 31, 33 (2d Cir. N.Y. 2012) ......................... 27

*Rivera v. Rochester Genesee Reg. Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) .................. 12

*Rowley v. City of New York*, 2005 U.S. Dist. LEXIS 22241 (S.D.N.Y. Sept. 29, 2005) ............. 13

*Santos v. State Farm Fire & Casualty Co.*, 902 F.2d 1092, 1095 (2d Cir. N.Y. 1990) ................ 27

*Sprint Communs. Co., L.P. v. Chong*, 2014 U.S. Dist. LEXIS 96320 (S.D.N.Y. July 14, 2014) .. 28

*Stewart v. Fischer*, 2013 U.S. Dist. LEXIS 148321 (S.D.N.Y. Oct. 15, 2013) ............................ 21

*Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (U.S. 2014) ............................................................. 21, 22

*Trueman v. New York State Canal Corp.*, 451 Fed. Appx. 27, 29 (2d Cir. N.Y. 2011) ................ 14

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ...................................................................... 14

**Statutes**

Fed. R. Civ, P. 55(a)................................................................................................ 26

Fed. R. Civ. P. 56(e)............................................................................................... 14

Fed.R.Civ.P. 12(h)(1)............................................................................................. 26

Penal Law § 240.20........................................................................................ passim

*People v. Jones*, 9 N.Y.3d 259, 263 (2007) ................................................ 15, 16, 24

UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF NEW YORK
----------------------------------------------------------------x

JOSHUA WILES,                                                    Index No. 13-cv-2898 (VSB)

          *Plaintiff,*

           v.                                                    Plaintiff's Memorandum of Law
                                                                In Opposition to the
THE CITY OF NEW YORK, a municipal entity,                       Defendants' Motion for
NEW YORK CITY POLICE OFFICER PASTULA,                           Summary Judgment
NEW YORK CITY POLICE LIEUTENANT
ZIELINSKI, NEW YORK CITY POLICE
SERGEANT JOHN SLAYNE, NEW YORK CITY
POLICE OFFICER JOHN MCNAMARA, and NEW
YORK CITY POLICE OFFICERS "JOHN DOES
1-10,"
          *Defendants.*
----------------------------------------------------------------x

     The plaintiff, Joshua Wiles, by his attorney David Thompson of Stecklow Cohen &

Thompson, hereby submits this memorandum of law in opposition to the defendants' motion for

summary judgment.

# I.    Introduction

    1.    This is a case with two very distinct claims.  On November 5, 2011 and

September 17, 2012, the plaintiff was arrested on a sidewalk in lower Manhattan.  In each case,

he was issued a Desk Appearance Ticket (DAT) and charged with disorderly conduct under Penal

Law 240.20.  In each case, the District Attorney declined to prosecute the charges.  From there,

the two claims' circumstances begin to differ..

    **A.    The November 5, 2011 Arrest**

    2.    On November 5, 2011, the plaintiff was a participant in an Occupy Wall Street

demonstration on a Saturday in front of the State Supreme Courthouse at 60 Centre Street.  (Pl.

56.1 ¶ 21).  This was a demonstration composed of something more that 100 people.  (Video E

(Cruz) 00:00 – 04:00).  The plaintiff was unequivocally part of the demonstration, having

marched with the group from Zuccotti Park to 60 Centre Street.  The demonstration was boisterous but peaceful.  (Cruz) 00:00 – 04:00).  It remained on the sidewalk in the square which was, as usual for a Saturday, deserted except for the protestors and the police watching them.  (Cruz) 00:00 – 04:00).  The defendants' 56.1 statement contains no allegations whatsoever that this group of protestors – even assuming that they occupied the entirety of the broad sidewalk – caused any public inconvenience.

3. Nevertheless, at a certain point, the police ordered the protestors to leave the sidewalk.  The plaintiff believed these orders were not lawful, and did not obey them.  (Pl. 56.1 ¶¶ 28 – 35).  The police officer that gave these orders, defendant Lt. Michael Zielinski, testified at his deposition that during the time he issued the orders, the protestors who were present were **<u>not</u>** committing disorderly conduct, and were **<u>not</u>** blocking the sidewalk  (Pl. 56.1 ¶¶ 28 – 35).

4. The main issue that will have to be decided in this half of the case is whether the plaintiff and Lt. Zielinski are correct that the orders being given had no valid basis.  At this stage, this means that the defendants must show that the facts are **<u>indisputable</u>** that the orders were valid and lawful.  The defendants cannot meet this burden, for several reasons.

5. Certainly, where the officer that gave the orders cannot justify them, that raised questions of fact for the jury.  However, on a more detailed basis, the defendants have failed to allege the critical element to **<u>every</u>** disorderly conduct charge (including failure to disperse) under New York law: they have failed to allege that the conduct of the plaintiff had any effect on the public at large.  This can't be presumed as a matter of law, or common sense.  If the protestors obstructed the sidewalk (which is in dispute) but no one was inconvenienced, no law was broken.  An New York Times article concerning the event remarked on the absence of anyone other than police and protestors at the incident.  It serves to remind us that even a large city like New York has its desert places, and the plaza in front of the courts on a Saturday is one of those places.  The law does not say that public inconvenience can be presumed absent proof.   Here, there is no

proof of public inconvenience arising from the protest that Joshua Wiles was part of, and so there cannot be summary judgment in the defendants' favor.

6.      The defendants have put forward a couple of red herrings, which should be considered only long enough to be swept aside.  The first of these has to do with a brief moment in which the plaintiff chanted "We want the steps" (i.e., 'we want to go on the steps of 60 Centre Street') with a dozen or so other protestors.  There is no dispute that Joshua Wiles chanted this. The only dispute is in what – if anything – it means.  The defendants' memorandum of law opines that this conduct amounted to "encouraging protestors to take the steps through a stationary police line" (p. 10).  However, the cited portions of the defendants' 56.1 ( ¶¶ 85, 90-9) give no support to that contention, discussing something entirely unrelated. There is no evidence in the defendants' entire submission to support this characterization.  Furthermore, Lt. Zielinski reviewed the video of the plaintiff engaging in this chant, and testified that the plaintiff's chanting was **lawful**.  (Pl. Responsive 56.1 ¶ 24-3, 4).  This in itself is sufficient to exclude a finding that, as a matter of law, this chant was in some way illegal.  If this issue has any significance whatsoever, it is for a jury to decide.

7.      The other red herring is the fact that, while waiting to be handcuffed, the plaintiff sat down on the sidewalk.  The defendants present this as if it is a criminal act that independently justifies the arrest.  However, the City of New York, testifying through its 30(b)(6) witness Deputy Chief Steven Anger, testified that at the time the plaintiff was sitting on the ground, he was already under arrest and was not free to leave.  (Pl. Responsive 56.1 ¶¶ 49-1, 2).  Under some circumstances, sitting down during the arrest process can support a charge of resisting arrest. However, it is very well established law that resisting arrest cannot be charged alone – it is a valid charge **only if** there is probable cause to arrest the person for some other, underlying offense.  If there is not, then the arrest is "unauthorized," and it is perfectly legal in New York to resist.  In this civil case, if the plaintiff was being arrested **unlawfully**, then he was free to "resist" by sitting down.  If he was being arrested lawfully, then it does not matter if he was also committing

the offense of resisting arrest, because the affirmative defense of probable cause will already have been established. Given the witness testimony that the plaintiff was already under arrest when he sat, the defendants' only way to pursue this issue will be to dispute the testimony of their own 30(b)(6) witness, and attempt to establish that when the plaintiff sat he was not, in fact, yet under arrest. Even assuming that a party can disclaim their own 30(b)(6) witness so easily, at most it would create a question of fact for the jury regarding this issue.

**B.    The September 17, 2012 Arrest**

8.      The facts and circumstances of Joshua Wiles' second claim are different in at several ways. On this occasion, the plaintiff was not with a group of protestors, he was alone. (Def. 56.1 ¶ 117). Having been arrested once before, he was trying to minimize the risk of arrest as much as possible. (Pl. 56.1 ¶¶ 66-68). At the same time, he wanted to bear witness to the one-year anniversary of one the most significant populist movements of our time, Occupy Wall Street. (Pl. 56.1 ¶¶ 66-68). At the time and place of the plaintiff's arrest, there was no demonstration occurring. (Pl. Responsive 56.1 ¶ 119-1, 2, 3). Walking downtown on the eastern side of Broadway towards the intersection of Broadway and Wall Street, the plaintiff was just one of many civilians using the sidewalk. (Pl. 56.1 ¶ 71). Some of the civilians were probably interested in Occupy Wall Street. Some were probably not. The police were controlling access to Wall Street itself. The police were not preventing civilians from walking north and south on Broadway itself, however. (Pl. 56.1 ¶¶ 82-85, 87).

9.      Nevertheless, when the plaintiff reached the intersection, police blocked him from going further. (Pl. 56.1 ¶ 72). Other civilians continued to enter and cross the intersection, going both north and south, without any apparent regard for whether those civilians were bankers, Occupiers, or something else. (Pl. 56.1 ¶¶ 82-85; Video D (Cruz) 00:00 – 04:00). Joshua Wiles was told, in sum and substance, "Get back." He did get back, moving back north on the sidewalk, and stopping about 30 feet away from the intersection. (Pl. 56.1 ¶¶ 71-75). En route, he passed his future arresting officer, Det. Pastula, who touched him on the back to "guide" him north. Det.

Pastula later testified: "I think I pushed him in the northerly direction. ... I don't even know if he noticed." (This interaction, by the way, is the basis for the defendants' claim that the plaintiff was given an "order to disperse"). (Pl. Responsive 56.1 ¶ 126-4). Joshua Wiles continued moving north about 10 to 15 feet further from where Det. Pastula remained standing. (Pl. 56.1 ¶¶ 80-81).

10.     At this point, Joshua Wiles stopped walking. Civilians continued to use the sidewalk. (Pl. 56.1 ¶¶ 80-85, 87). Some walked north, some south, some stood still. (Pl. 56.1 ¶¶ 80-85). The sidewalk was not closed, no announcements of any kind had been made by the police asking people to clear the sidewalk. In fact, the police continued to allow civilians to cross Wall Street itself going in both directions. (Pl. 56.1 ¶¶ 80-85, 87). Four times within the course of about a minute, the plaintiff called out half of a Occupy Wall Street slogan: "Whose sidewalk?" (Pl. 56.1 ¶¶ 96-99). A single person – a young woman walking south on the sidewalk some distance away from Joshua Wiles, answered with the other half of the slogan: "Our sidewalk." (Pl. 56.1 ¶¶ 96-99). Detective Pastula immediately went up to the plaintiff, and without saying anything whatsoever to him, grabbed him and arrested him. (Pl. 56.1 ¶¶ 102-103).

11.     This half of the case is very simple. Joshua Wiles was simply standing on an open sidewalk, alone, and was arrested when he called out a political slogan. The only thing that Joshua Wiles did differently from the other civilians on that portion of sidewalk was **speak**.

12.     The defendants' motion for summary judgment on this half of the case is premised on their (baseless) insistence that the facts just narrated are not the true facts. The defendants' memorandum of law says: "plaintiff does not deny that he refused orders by the police to disperse," and "he admits disobeying requests and orders to leave" (Def. Mem. pp. 13-14), but these are simply false characterizations of the record. The Court should note that these statements are **not** accompanied by record citations. In any case, the existence of competing fact narratives on a motion for summary judgment means only one thing: summary judgment cannot be granted, and the case must go to a jury.

13.     The defendants have put forward one red herring with respect to this portion of the case, that should be briefly examined before being set aside.  The defendants allege that the events of this case were but a small part of an enormous tapestry of events throughout lower Manhattan, including allegedly disruptive protests.  It is true that courts will sometimes consider such facts.  However, in such cases the defendant has presented evidence – usually voluminous evidence – of the nature of the anticipated disorder, and has made a showing of why and how there was some nexus between the anticipated disorder and the police action that resulted in the plaintiff's arrest.  Here, the defendants have presented only two unauthenticated webpage printouts (one of which is facially incomplete, beginning on page "6 of 15") that purport to describe protest actions that somebody hoped to carry out.  (Pl. Responsive 56.1 ¶¶ 99-101).  The City of New York's 30(b)(6) witness was utterly ignorant of whether any of these actions occurred, or whether the NYPD had knowledge of these particular alleged actions in advance. (Pl. Responsive 56.1 ¶¶ 99-101).

14.     In its perpetual effort to evade **Monell** liability for the acts of one of the most policy-driven police forces in the world, the City Law Department has relentlessly fought to narrow discovery in this case to matters that occurred on this one street corner, in a time interval of about ten minutes before and after the plaintiff's arrest.  The Law Department has been so successful in this effort that there is no admissible evidence in this case of any protest action happening **anywhere** in Manhattan on September 17, 2012.  Possibly there were some such actions, and possibly they (somehow) could justify plucking Joshua Wiles off the sidewalk for saying "Whose streets?", but these actions are simply **not part of this case**.  The defendants' argument that the "big picture" justifies this small person's arrest should be ignored.

**C.     Damages**

15.     As is the case with the issues underlying liability, the issues underlying lost-wages damages are somewhat different for each half of the case.

### LOST WAGES: NOV. 5, 2011

16.     The plaintiff worked full time as a teacher until August 31, 2012.  At that time, allegedly because of a temporary interruption in the continuity of the plaintiff's teaching license, the plaintiff lost his full time position.  (Pl. 56.1 ¶¶ 157-164).  The defendants have not disputed the plaintiff's contention that his principal decided not to rehire him in part because of the plaintiff's prior Nov. 5, 2011 arrest.  (Pl. 56.1 ¶¶ 157-164).  As a result, the plaintiff began the fall semester of 2012 unemployed.  (Pl. 56.1 ¶¶ 157-164).  A document that came out in discovery suggests that, in fact, there was never an interruption of the plaintiff's license, in which case the causal connection between the arrest that the loss of work would be even stronger.  (Pl. 56.1 ¶ 162).

### Lost Wages: September 17, 2012

17.     Having lost his full-time position, the plaintiff was nominated to be a per diem substitute.  Nomination meant, among other things, that Joshua Wiles would have been listed as a eligible per diem substitute in the Department of Education's "Sub Central" clearinghouse.  Being thus listed is a virtual guarantee of daily employment, because of the size of the Department of Education and the demand.  However, it is undisputable that, solely because of the plaintiff's September 17, 2012 arrest, he was listed as ineligible from the time of his nomination in November 2012 through February 2013.  During that time he was not allowed to work.  The Department of Education restored his eligibility in mid-February 2013.  Once eligible, Joshua Wiles worked every school day thereafter.  A jury could conclude that, but for his arrest, the plaintiff would have worked the 45 school days when he was deemed ineligible, at the rate of $154.97 per day.  (Pl. 56.1 ¶¶ 165 - 183).

### Handcuffing Damages

18.     It is a well-known principle that "tort defendants, including those sued under § 1983, are 'responsible for the natural consequences of their actions."  *Kerman v. City of New York,* 374 F.3d 93, 126 (2d Cir. N.Y. 2004).  It makes sense, perhaps, that the infliction of transient pain should not rise to the level of a separate cause of action for excessive force.

However, where a defendant has liability for false arrest, it only makes sense to allow damages when physical pain is inflicted in the course of that unlawful arrest. After all, emotional distress *damages* are recoverable in a false arrest case as a matter of course, even though an intentional infliction of emotional distress *cause of action* against a police officer is a virtual impossibility. The arresting officers in this case caused pain that the plaintiff would not have suffered but for the defendants' unlawful arrests. The pain they caused was an utterly foreseeable consequence of the arrest. Whether or not the Court sustains the cause of action for excessive force, this harm should be an element of the jury's consideration when assessing damages.

## II.    Standard of Review

19.    Summary judgment is appropriate only when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

20.    Here, as the moving party, the defendants bear the burden to show the absence of a genuine dispute of any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

21.    "'A genuine issue exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Rivera v. Rochester Genesee Reg. Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). In determining whether a genuine dispute exists, the Court must "'constru[e] all the evidence in the light most favorable to the non-movant and draw[] all reasonable inferences in [her] favor.'" *Id.* (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)).

22.     The defendants, as the party seeking summary judgment, bear the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 322–23.

23.     A defendant who moves for summary judgment is on notice of all of the issues raised in the complaint, and must address these in its primary motion papers, or waive the right to seek summary judgment thereon. *Rowley v. City of New York*, 2005 U.S. Dist. LEXIS 22241 (S.D.N.Y. Sept. 29, 2005) (rejecting argument that plaintiff's opposition "opened the  door" to issues that the moving defendant raised for the first time on reply, because the issue was evidence "[t]hroughout [the plaintiffs'] Amended Complaint"). *Accord Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) aff'd, 173 F.3d 843 (2d Cir. 1999) ("New arguments first raised in reply papers in __support__ of a motion will not be considered.") (emphasis in original).

24.     The movant for summary judgment must present sufficient legal argument and facts in its principal moving papers. __New legal arguments__ may not be raised for the first time on reply. *See Rowley v. City of New York*, 2005 U.S. Dist. LEXIS 22241, 13-14 (S.D.N.Y. Sept. 29, 2005) (rejecting argument made by movant The City of New York in their summary judgment reply papers) (reviewing cases). *Accord Fitzgerald v. City of Troy*, 2013 U.S. Dist. LEXIS 139056 (N.D.N.Y Sept. 27, 2013) ("Defendants failed to properly raise this argument as a grounds for summary judgment on Plaintiffs' First Amendment retaliation claims. Defendants' motion can be denied on that basis alone.") __New factual allegations__ may not be presented for the first time on reply. *United States v. East River Hous. Corp.*, 2015 U.S. Dist. LEXIS 24924, 106-107 (S.D.N.Y. Mar. 2, 2015) (holding that movant's "Declaration and Exhibit submitted in conjunction with East River's reply should not be considered because they improperly raise new issues."). *Accord Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998)

(refusing to consider "factual allegations" first raised in reply).  **New evidence** presented for the purpose of raising new legal or factual issues may not be presented for the first time on reply.  *See East River Hous. Corp.*, 2015 U.S. Dist. LEXIS 24924, *106-107 (S.D.N.Y. March 2, 2015).

25.     Put another way, where a movant does not raise an issue in their primary moving papers, this means that **the movant is not asking the court to render summary judgment on that issue**.  *See Am. Home Assur. Co. v. Panalpina, Inc.*, 2011 U.S. Dist. LEXIS 16677 (S.D.N.Y. 2011).

26.     If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.

27.     In the present case, the plaintiff bears the burden simply to show that he was arrested without a warrant, and that he suffered harm as a result.  The defendants bear the burden on all other factual and legal issues.  Accordingly, on almost all issues in this case, the defendants have waived factual and legal arguments not made in their moving papers.

## III.    The Constitutional Tort of False Arrest

28.     A § 1983 claim for false arrest "derives from his Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151-152 (2d Cir. N.Y. 2006) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

29.     A warrantless arrest is "presumptively unlawful."  *Trueman v. New York State Canal Corp.*, 451 Fed. Appx. 27, 29 (2d Cir. N.Y. 2011) (citing *Guntlow v. Barbera*, 907 N.Y.S.2d 86, 90 (N.Y. App. Div. 3d Dep't 2010)).  The existence of probable cause constitutes an affirmative defense to a false arrest claim.  *See id*.

30.     The court looks to the law of the state in which the arrest occurred in order to determine the existence or non-existence of probable cause.  *See Jaegly*, 439 F.3d at 151-152.

"In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).

31.     Probable cause is an affirmative defense that the defendants must prove in order to prevail:" [W]here the arrest or imprisonment is extrajudicial, that is, without legal process or color of legal authority, it is not necessary to allege want of probable cause in a false imprisonment action. Indeed, the burden is on the defendant to prove the opposite." *Broughton v. State*, 37 N.Y.2d 451, 458 (N.Y. 1975). "Probable cause exists if the facts and circumstances known to the arresting officer warrant a prudent person in believing that the offense has been committed" *People v Baker*, 20 N.Y.3d 354, 359 (2013) (*citing People v Oden*, 36 NY2d 382, 384 (1975)).

## IV.    The Law of Disorderly Conduct And the First Amendment

### A.        Penal Law 240.20 (Disorderly Conduct)

32.     Section 240.20 New York Penal Law ("PL 240.20") defines the offense of disorderly conduct.  Disorderly conduct is a violation, not a misdemeanor, and is therefore not a crime.  According to PL 240.20:  "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . (5) He obstructs vehicular or pedestrian traffic; or (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse…"  N.Y. Penal Law § 240.20(5) & (6).

33.     In order to avoid Constitutional infirmity, each section of the disorderly conduct statutes incorporates the requirement of a manifest "intent to provoke a breach of the peace, or [intentional conduct] whereby a breach of the peace may be occasioned."  *People v. Jones*, 9 N.Y.3d 259, 263 (2007), and the statute is limited to conduct that creates or recklessly threatens a "breach of the peace." *People v. Weaver*, 16 N.Y.3d 123, 127 (2011).

34.     "The First Amendment protects political demonstrations and protests - activities at the heart of what the Bill of Rights was designed to safeguard." *Papineau v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) (citing *Boos v. Barry*, 485 U.S. 312, 318 (1988)).   Organized political protest is "classically political speech" which "operates at the core of the First Amendment." *Id.* "The [Supreme] Court has repeatedly held that police may not interfere with orderly, nonviolent protests merely because they disagree with the content of the speech or because they simply fear possible disorder." *Id.*

35.     "In the protest context, the Supreme Court has already well-articulated the contours of the right and made clear that the police may not interfere with demonstrations unless there is a 'clear and present danger' of riot, imminent violence, interference with traffic or other immediate threat to public safety.  Neither energetic, even raucous, protesters who annoy or anger audiences, nor demonstrations that slow traffic or inconvenience pedestrians, justify police stopping or interrupting a public protest." *Papineau*, 465 F.3d at 57-58 (quoting *Cox v. La.*, 379 U.S. 536, 546 (1965) ("Cox I")).

36.     "'[C]lear and present danger' means more than annoyance, inviting dispute or slowing traffic." *Papineau*, 465 F.3d at (citing *Edwards v. South Carolina*, 372 U.S. 229, 232 (1963)).  A group of protesters that slows traffic does not thereby "jeopardize their speech rights," or become subject to arrest. *Id.*  (citing *Cox I*, 379 U.S. 536).

**B.     Penal Law 240.20(5)**

37.     Section 240.20(5) of the Penal Law states that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [h]e [or she] obstructs vehicular or pedestrian traffic." N.Y. Penal Law § 240.20(5).

38.     "New York courts have interpreted this statute to permit punishment only where the conduct at issue does **more** than **merely inconvenience** pedestrian or vehicular traffic." *Papineau*, 465 F.3d at 59 (citing *People v. Pearl*, 66 Misc. 2d 502, 321 N.Y.S.2d 986, 987 (1st

Dep't 1971)) (emphasis added). Thus, the elements of 240.20(5) **have not been met** even where demonstrators block a sidewalk, "requiring [pedestrians] to enter the roadway to get to the other side," or "forc[ing] pedestrians out into the street." *Papineau*, 465 F.3d at 59 (quoting *Pearl*, 66 Misc. 2d 502 and *People v. Nixon*, 248 N.Y. 182, 185, 187 (1928)).

39.     After Papineau was decided, the New York Court of Appeals reaffirmed the principle once again: "Something more than a mere inconvenience of pedestrians is required to support the charge" of disorderly conduct. *People v. Jones*, 9 N.Y.3d 259, 262 (2007) (dismissing charge). In Jones, the New York Court of Appeals found a 240.20(5) charge to be facially defective where the arresting officer alleged that the defendants occupied the sidewalk so that "numerous pedestrians in the area had to walk around defendants." *Jones*, 9 N.Y.3d at 261.

### C.     Penal Law 240.20(6) - Refusal to Disperse

40.     Penal Law 240.20(6) provides: "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." Penal Law 240.20(6).

41.     "This type of disorderly conduct occurs when, **in addition to the prescribed mens rea**, the defendant congregates with other persons in a public place and refuses to comply with a lawful order to disperse." *People v. Edmond*, 17 Misc. 3d 1130(A), 1130A (N.Y. Sup. Ct. 2007) (*citing* Penal Law § 240.20(6)). It is a required element of the offense that the accused be part of "a congregated crowd directed to disperse." *People v. Munafo*, 50 N.Y.2d 326, 332 (1980).

42.     "Obviously, however, one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution." *Wright v. Georgia*, 373 U.S. 284, 291-292 (1963). In the context of public demonstrations, the First Amendment sharply limits the authority of police to issue dispersal orders:

> [T]he police may not interrupt or disperse a gathering that is the occasion for the exercise of First Amendment rights -- notably, a political demonstration -- either because they disagree with the content of the speech or because of fear of disorder. They may, however, stop or disperse public demonstrations or protests where 'clear and present danger of riot, disorder, interference with traffic upon the streets, or other immediate threat to public safety, peace, or order appears. It bears emphasis, however, that the required clear and present danger is not established by energetic, even raucous, protesters who annoy or anger audiences or demonstrations that slow traffic or inconvenience pedestrians. *Haus v. City of New York*, 2011 U.S. Dist. LEXIS 155735, 71-72 (S.D.N.Y. Aug. 31, 2011) (*citing Papineau v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) and United States Supreme Court authority therein) (quotations and citations omitted).

43. Thus, just as inconveniencing and slowing pedestrians or traffic cannot form the basis for arresting demonstrators under Penal Law 240.20(5), such circumstances cannot be used as the pretext for the police to issue an order to disperse.

44. If the law were otherwise, police could convert lawful protests into 'unlawful' ones by the simple expedient of issuing an order to disperse, however baseless such an order might be. The protection offered to demonstrators by the First Amendment in the context of Penal law 240.20(5) would be rendered totally illusory by the unfettered use of 240.20(6).

45. As well as being lawful, an order to disperse must be clear. Where an order is unclear, the arrest of a civilian who "disobeys" to the unclear order is unlawful. *See also City of Chi. v. Morales*, 527 U.S. 41, 59 (1999) (holding a loitering statue unconstitutionally vague that provided that provided that the police "shall order all such persons to disperse and remove themselves from the area.") ("This vague phrasing raises a host of questions. After such an order issues, how long must the loiterers remain apart? How far must they move? If each loiterer walks around the block and they meet again at the same location, are they subject to arrest or merely to being ordered to disperse again?").

**D.      Resisting Arrest**

46. The New York Court of Appeals has made clear that a charge of resisting arrest cannot stand alone. Resisting arrest can only occur when probable cause to charge another offense exists, justifying the arrest in the first instance. "There being no probable cause that authorized defendant's arrest, [the defendant] cannot be guilty of resisting arrest." *People v.*

*Peacock*, 68 N.Y.2d 675, 677 (1986). Where an "officer [does] not have any ground to believe that defendant was committing, had committed or was about to commit an offense ... [the] defendant's arrest [is] not 'authorized,'" and the crime of resisting arrest is legally impossible. *Id. Accord People v. Jensen*, 86 N.Y.2d 248, 253 (1995) ("A key element of resisting arrest is the existence of an authorized arrest, including a finding that the arrest was premised on probable cause.")

### E. Obstructing Governmental Administration

47.     The police cannot take an **<u>unlawful</u>** arrest for "failure to disperse" pursuant to Penal Law § 240.20, and turn it into a **<u>lawful</u>** arrest simply by describing the same conduct as "obstructing governmental administration" (Penal Law § 195.05). "[A] defendant may not be convicted of obstructing governmental administration or interfering with an officer in the performance of an official function unless it is established that the police were engaged in *authorized* conduct." *People v. Lupinacci*, 191 A.D.2d 589 (N.Y. App. Div. 2d Dep't 1993) (emphasis added). *See People v. Perez*, 47 A.D.3d 1192, 1193-1194 (N.Y. App. Div. 4th Dep't 2008), *app. denied by,* 10 N.Y.3d 814 ("Because the arrest was not authorized, the evidence is legally insufficient to support the conviction of resisting arrest [or] obstructing governmental administration."); *People v Small*, 109 A.D.3d 842, 843 (N.Y. App. Div. 2d Dep't 2013) (conviction for OGA for refusing to give up weapon cannot be maintained where jury found weapon did not exist); *People v Coley*, 38 Misc. 3d 1220(A), 1220A (N.Y. City Crim. Ct. 2013) ("The factual part of the information for resisting arrest must contain non-hearsay allegations which would establish, if true … that the underlying arrest was authorized...People's use of the obstructing governmental administration statute...does not cure the error."). *See also People v. Casey*, 95 N.Y.2d 354, 362 (N.Y. 2000) (no resisting charge lies where the underlying arrest was without probable cause and therefore not "authorized").

## V.     Probable Cause and Qualified Immunity

48.     Probable cause is an affirmative defense to a claim for false arrest.  The determination of probable cause to arrest is a mixed question of law and fact, determined objectively as a matter of law, based on determinations of fact relating to what information and circumstances were known to the arresting officer at the time of the arrest. Ornelas v. United States, 517 U.S. 690, 696 (1996).

49.     Qualified immunity extends to government actors "insofar as their conduct does **not** violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 432-33 (2d Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

50.     The determination cannot be made at the summary judgment stage, however, when there are material factual disputes about the underlying circumstances and conduct.  *See Stewart v. Fischer*, 2013 U.S. Dist. LEXIS 148321 (S.D.N.Y. Oct. 15, 2013).

51.     The Supreme Court recently addressed this issue in *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (U.S. 2014).  The Court acknowledged that "we have instructed that courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case.'"  *Id.*

52.     However, the Court exhorted judges to take care not to define the "context" in such a way that ignores genuine disputes of fact, or fails to view the evidence in the light most favorable to the non-moving party.  As the Supreme Court put it: "[C]ourts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions."  *Id.*

53.     The Supreme Court's holding is best understood through the facts of the case before them.  The case involved a police shooting of an unarmed and innocent civilian.  The Fifth Circuit had defined the context and asked whether the defendant police officer's actions – firing his gun at the plaintiff -- were reasonable given that it was dark, the plaintiff's mother "refused orders to remain quiet and calm," and the defendant 'believed' the plaintiff "presented an immediate threat to the safety of the officers."  The answer the Fifth Circuit arrived at, unsurprisingly, was a finding that the context, thus defined, compelled a finding of qualified

immunity for the officer. The Supreme Court reversed, however, because each of these facts: the darkness, the refusal to obey, and the threat, were disputed. The Supreme Court said, "the court should have acknowledged and credited [the plaintiff's] evidence," and adhered to "the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Id.* At 1868.

54. In other words, the "context" in which the qualified immunity analysis is performed may be based on **undisputed** facts, or on disputed facts **as alleged by the non-movant**, but may not incorporate the movant's view of the disputed facts. *See also Crenshaw v. City of Mount Vernon*, 372 Fed. Appx. 202, 207 (2d Cir. N.Y. 2010) ("in an interlocutory appeal of a denial of summary judgment based on qualified immunity, we have jurisdiction over the appeal only "to the extent it is based on either the **undisputed** facts or the version of the facts presented by [the plaintiff], and we will disregard any disputed facts or facts that contradict [the plaintiff's] version of the events") (citing *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003))(emphasis in original).

55. With that in mind, the qualified immunity decision here is not difficult.

56. First, the November 5, 2011 arrest. The defendant has failed to present evidence of a "breach of the peace" and "evidence of actual or threatened **public** harm," amounting to more than mere inconvenience. The Supreme Court's ruling in Tolan teaches that the presumption in this case, for qualified immunity purposes, must be that public harm was absent. The officer who gave the orders to disperse has admitted the absence of a basis for them, which at a minimum means that the qualified immunity "context" in this case must presume that the orders to disperse were baseless. It is clearly established that an arrest for Penal Law 240.20 requires public harm, and that an order to disperse, to be lawful, must be calculated to address some public harm. *People v. Jones*, 9 N.Y.3d 259, 263 (2007), and *People v. Weaver*, 16 N.Y.3d 123, 127 (2011).

57.    The cases cited by the defendants that purport to demonstrate any "non-arbitrary" basis for an order to disperse are unavailing because they ignore the controlling (pre-incident) New York State law, which is Jones and Weaver.  Recent Court of Appeals authority, People v. Johnson, 22 N.Y.3d 1162 (N.Y. 2014), confirms that Jones and Weaver, and not the older cases setting forth the "purely arbitrary" rubric, are controlling.   In Johnson, the Court of Appeals held that probable cause was lacking when a police officer arrested one of several "reputed gang members" hanging out on a street corner for failing to obey an order to move on.  The Court, citing Jones and Weaver, held that in the absence of "possible impact on the public" resulting from failure to move on, the arrest for failure to obey the order to move on was unlawful. Johnson, 22 N.Y.3d at 1164.

58.    Next, the September 17, 2012 arrest.  In that incident, there is **dispute** as to whether there was an order to disperse given, whether the plaintiff obeyed any "guidance" given, whether he blocked pedestrian traffic.  There is **dispute** as to whether he was singled out, among all those present, for being the only person speaking out.  The Court, therefore, must approach this qualified immunity analysis by accepting the plaintiff's contentions there was no order to disperse, that he followed whatever "guidance" he was given, that he did not actually block pedestrians, and that the sole notable difference between his conduct and that of other people at the location was his speech.  In such context, a finding of qualified immunity is impossible.

## VI.    First Amendment Retaliation

59.    To prevail on a First Amendment retaliation claim a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) (citing Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)).

60.    A plaintiff may show "improper motive [through]…'expressions by the officials regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff

has been singled out, or the highly unusual nature of the actions taken.'" *Anderson*, 817 F. Supp. 2d at 96 (quoting *Blue v. Koren*, 72 F.3d 1075, 1082-1083 (2d Cir. 1995)).

*61.*     It has long been recognized that there a First Amendment retaliation claim lies whenever the defendants' improper actions "effectively chilled" the exercise of the plaintiff's First Amendment right." *Anderson v. City of N.Y.*, 817 F. Supp. 2d 77, 96 (E.D.N.Y. 2011) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). However, "[c]hilled speech is not the sine qua non of a First Amendment claim. A plaintiff has standing if he can show either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing." *Dorsett*, 732 F.3d 157. Being arrested and charged with disorderly conduct is, by itself, sufficient harm. *See Lozada v. Weilminster,* 2015 U.S. Dist. LEXIS 35955, * 56 (E.D.N.Y. Mar. 23, 2015).

62.     In the September 17, 2012 arrest, Detective Pastula told the plaintiff that he was arrested because Detective Pastula perceived him as being a "a leader." (Pl. Off. 56.1 ¶¶ 104, 133-134). The plaintiff testified to this, and Detective Pastula admitted this himself. (Pl. Off. 56.1 ¶¶ 104, 133-134). It was not only Detective Pastula who betrayed a punitive bias against the plaintiff's speech. Video shows other police officers reacting and moving towards the sound of Joshua Wiles' voice when – alone and not actually leading a group of people – he called out a signature Occupy Wall Street chant: "Whose streets?" (Pl. Off. 56.1 ¶ 109). There are many people in the vicinity behaving in a similar manner to Joshua Wiles – walking, stopping, walking again. The one person who engaged in political speech at that location is the one person who was arrested.

63.     With respect to the Nov. 5, 2011 arrest, the defendants attempt to justify the plaintiff's arrest on the basis that he chanted "We want the steps," even as one of the defendants admitted in deposition that the plaintiff's chant was not unlawful. (Pl. Off. 56.1 ¶¶ 27-28). According to the defendants' Rule 56.1 Statement, "Plaintiff led the protestors in a chant of 'we want the steps,'" "leading to an officer in a white shirt declaring the sidewalk a 'frozen zone' and

telling the Plaintiff and the protestors they must disperse."  (Def. 56.1 ¶¶ 29-30).  In this case too, the defendants' admit that it was the plaintiff's **lawful** speech caused his arrest.

64.     Joshua Wiles speech was chilled as a result of the first arrest, on Nov. 5, 2011. Because of that, he considered not going to the Occupy Wall Street one –year anniversary at all. (Pl. Off. 56.1 ¶¶ 72-77).  When he did go, he decided not to join any group, but go alone, and to remain principally an observer.  After being arrested on Sept. 17, 2012, Joshua Wiles decided "that it's not safe for me to participate in political activities."  (Pl. Off. 56.1 ¶¶ 199-200).

65.     In addition, it is undisputed that, because of his second arrest, the plaintiff was declared ineligible to work as a per diem substitute. (Pl. Off. 56.1 ¶¶ 185-189).

66.     For the foregoing reasons, the defendants' motion for summary judgment as to his claim for First Amendment retaliation should be denied.

## VII.   State Law Claims

67.     Under state law, a cause of action for false imprisonment lies where: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.  *Broughton v. State*, 37 N.Y.2d 451, 456 (N.Y. 1975).  Probable cause is an affirmative defense.  *See id.*

68.     "An action for battery may be sustained without a showing that the actor intended to cause injury as a result of the intended contact, but it is necessary to show that the intended contact was itself 'offensive', i.e., wrongful under all the circumstances."  Lack of consent is considered in determining whether the contact was offensive.  The intent that must be shown is the intent to make contact.  *Messina v. Matarasso*, 284 A.D.2d 32, 35-36 (N.Y. App. Div. 1st Dep't 2001).

69.     Unlike cases commenced under 42 USC § 1983, municipalities may be liable, under the doctrine of respondeat superior, for the common law torts, such as false arrest, malicious prosecution, assault, and battery, committed by their employees.  *Lepore v Town of*

*Greenburgh*, 120 A.D.3d 1202, 1204 (N.Y. App. Div. 2d Dep't 2014). Thus, the municipality may be held liable for the September 17, 2012 incident without any Monell analysis.

## VIII.  Compensable Injury

70.  "The damages recoverable for loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering; even absent such other injuries, an award of several thousand dollars may be appropriate simply for several hours' loss of liberty." *Kerman v. City of New York*, 374 F.3d 93, 125-126 (2d Cir. N.Y. 2004) (collecting cases).

71.  "[T]ort defendants, including those sued under § 1983, are 'responsible for the natural consequences of [their] actions. An actor may be held liable for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties. The fact that the intervening third party may exercise independent judgment in determining whether to follow a course of action recommended by the defendant does not make acceptance of the recommendation unforeseeable or relieve the defendant of responsibility." *Kerman v. City of New York*, 374 F.3d 93, 126-127 (2d Cir. N.Y. 2004) (citations and quotations omitted).

## IX.  The Individual Defendants Zielinski, Slayne and McNamara are In Default for Failure to Answer the Complaint; They Cannot Move for Summary Judgment

72.  A final major issue that must be addressed on this motion, is the fact that the individual defendants, Lieutenant Zielinski, Sergeant Slayne, and Police Officer McNamara, are in default because they have not answered the complaint. Being in default, they have admitted liability to the plaintiff. They cannot, therefore, move for summary judgment. Therefore, as to these defendants, the motion for summary judgment must be denied and dismissed.

73.  On April 4, 2014, the plaintiff filed an amended complaint the "First Amended Complaint"). (Docket number 17). Before the 120 days to serve this First Amended Complaint had expired, the Court granted leave to file a Second Amended Complaint, and the plaintiff did

so. The plaintiff served the Second Amended Complaint on the defendants Michael Zielinski, John Slayne, and John McNamara on July 3, 2014.[1] (Docket numbers 69-71). Pursuant to FRCP 12(a)(1)(A), a "defendant must serve an answer within 21 days after being served with the summons and complaint." *See also Beller & Keller v. Tyler*, 120 F.3d 21, 25-26 (2d Cir. N.Y. 1997). The defendants' answer was due July 24, 2014. The defendants did not answer, and are in default.

74. If a defendant fails to answer, the defendant is in default, and a default **must be entered** by the clerk of the court. *See* Fed. R. Civ, P. 55(a). *See also Peterson v. Syracuse Police Dep't*, 467 Fed. Appx. 31, 34 (2d Cir. N.Y. 2012). Indeed, "[t]he plain language of Rule 55(a) however does not mandate that a default be entered **only** upon plaintiff's request but rather implies that **however a district court ultimately becomes aware of a party's default, the clerk must enter default**." *Peterson v. Syracuse Police Dep't*, 467 Fed. Appx. 31, 33 (2d Cir. N.Y. 2012) (affirming entry of default by the judge adjudicating the case) (emphasis added). The plaintiff will submit the proper application to the clerk for entry of default; however, because the Court has "become aware" of the default, triggering the duty to enter default, the plaintiff will proceed in this opposition upon the presumption that a default will, in fact, be entered.

75. "[E]ntry of a default formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. N.Y. 2011). A defendant that is in default cannot move for summary judgment. Indeed, "courts are to accept as true all of the well-pleaded facts alleged in the complaint, except those concerning the amount of damages." *Sprint*

---

[1] Any defense that process was inadequate or improperly served has been waived, because no answer raising such defense was filed, and the defaulting defendants appeared before the Court and without filing a Rule 12 motion asserting such defenses. "A defense of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process is waived if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." *Santos v. State Farm Fire & Casualty Co.*, 902 F.2d 1092, 1095 (2d Cir. N.Y. 1990) (citing Fed.R.Civ.P. 12(h)(1)). The Court should note pursuant to Fed.R.Civ.P. 12(h)(1), a party may not raise these defenses for the first time on summary judgment: if made by motion, the motion must be "under this rule" (i.e., Rule 12).

*Communs. Co., L.P. v. Chong*, 2014 U.S. Dist. LEXIS 96320 (S.D.N.Y. July 14, 2014) (citing *Au Bon Pain Corp. v. Artect Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) and other authority).

76.     The plaintiff does not contend that the defendants' default, and the entry of default, are sufficient in themselves to terminate this case, as to those defaulting defendants, in the plaintiff's favor.  "Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  This opposition is not the proper vehicle for an affirmative motion under Rule 55(b) for entry of a default judgment, which the plaintiff will make separately, upon a schedule to be determined by the Court at the Court's discretion.

77.     What is certain is that a party that has not answered cannot move for summary judgment.  Therefore, this motion should be dismissed.  Given that this is the second time this motion for summary judgment has been filed, the defendants' motion for summary judgment should be dismissed **without** leave to refile.

## X.    Personal Involvement and Failure to Intervene

78.     The two arresting officers, P.O. McNamara and Det. Pastula, have clear personal involvement in the arrests.  Lt. Zielinski gave the orders that were the predicate or pretext for the plaintiff's Nov. 5, 2011 arrest.  He directed the activities of the officers who were making the arrests, including that of the plaintiff.  The role of Sgt. Slayne is less clear, but that is not unexpected where, as here, the Sergeant has not appeared to participate in the case.  These 11/5/11 individual defendants are not eligible to move for summary judgment, and so the merits of Sergeant Slayne's claim of non-involvement in the plaintiff's 2011 arrest must abide his involvement in this case.


DATED:        New York, New York
              May 8, 2015

Respectfully submitted,

_____//s//_____
DAVID A. THOMPSON [DT 3991]
STECKLOW COHEN & THOMPSON
ATTORNEYS FOR PLAINTIFF
217 Centre Street, 6th Floor
Phone:  (212) 566-8000
Fax:      (212) 202-4952
dave@sctlaw.nyc