13 CV 2898 (VSB) (HBP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA WILES,

                                        Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal entity, NEW YORK CITY POLICE OFFICER PASTULA, NEW YORK CITY POLICE LIEUTENANT ZIELINSKI, NEW YORK CITY POLICE SERGEANT JOHN SLAYNE, NEW YORK CITY POLICE OFFICER JOHN MCNAMARA and NEW YORK CITY POLICE OFFICERS "JOHN DOES 1-10."

                                        Defendants.

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

***ZACHARY CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Andrew Lucas*
*Tel:  (212) 356-2373*
*Matter  #:  2013-016424*

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................... i

Table of Authorities ..................................................................................................................... ii

Plaintiff Did Not Oppose Dismissal of His Claims for Excessive Force,
Malicious Prosecution, Municipal Liability, Abuse of Process, Common
Law Malicious Prosecution, and Negligent Retention, Hiring, Training
and Supervision, or Provide a Basis For Liability Against Sergeant Slayne
or Lieutenant Zielinski, and these Claims must be Dismissed ....................................................... 1

Probable Cause Existed for Plaintiff's November 5, 2011 Arrest, and
Qualified Immunity Attaches ......................................................................................................... 2

Probable Cause Existed for Plaintiff's September 17, 2012 Arrest and
QUalified Immunity Attaches ........................................................................................................ 9

Plaintiff's Lost Wages Claims Must be Dismissed ...................................................................... 10

Conclusion .................................................................................................................................... 11

## TABLE OF AUTHORITIES

## CASES

Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996)..................................................................7

Bradway v. Gonzales, 26 F.3d 313 (2d Cir. 1994) ........................................................................3

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...........................................................................1, 2

Concerned Jewish Youth v. McGuire, 621 F.2d 471 (2d Cir. 1980).............................................7

Crenshaw v. City of Mount Vernon, 372 F. Appx 202 (2d Cir. 2010)..........................................8

Farrell v. Burke, 449 F.3d 470 (2d Cir. 2006) ..............................................................................1

Faruki v. City of New York, 2012 U.S. Dist. LEXIS 47310; aff'd, 517 Fed.
    Appx. 1, 2 (2d Cir. 2013)..........................................................................................................5

Franks v. City of New York, 13 Civ. 2261 (ILG) (MDG), (E.D.N.Y. 2015).................................2

Garcia v. Doe, 779 F.3d 84 (2d Cir. 2014) .................................................................................3, 7

Haus v. City of New York, 2011 U.S. Dist. LEXIS 155735 (S.D.N.Y.
    2011) .........................................................................................................................................7

Marcavage v. City of New York, 689 F.3d 110 (2d Cir. 2012).....................................................8

Mastrovincenzo v. City of New York, 435 F.3d 78 (2d Cir. 2006)...............................................7

Papineau v. Parmley, 465 F.3d 46 (2d. Cir. 2006).......................................................................7

People v. Johnson, 22 NY3d 1162 (N.Y. 2014) ...........................................................................6

People v. Weaver, 16 N.Y.3d 123 (N.Y. 2011) ............................................................................6

Simcoe v. Gray, 577 Fed. Appx. 38 (2d Cir. 2014).......................................................................2

Taylor v. City of New York, 269 F. Supp. 2d 68 (E.D.N.Y. 2003)...............................................2

Tobias v. County of Putnam, 191 F. Supp. 2d 364 (S.D.N.Y. 2002) ...........................................3

U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012) ................................................................4, 5, 8

## STATUTES

42 U.S.C. § 1983..............................................................................................................................1

N.Y.C. Charter § 435(a)...............................................................................................................7, 8

Defendants City of New York, Officer Pastula, Lieutenant Zielinski, Sergeant Slayne and Officer McNamara, by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Reply Memorandum support of their Motion to Dismiss pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**PLAINTIFF DID NOT OPPOSE DISMISSAL OF HIS CLAIMS FOR EXCESSIVE FORCE, MALICIOUS PROSECUTION, MUNICIPAL LIABILITY, ABUSE OF PROCESS, COMMON LAW MALICIOUS PROSECUTION, AND NEGLIGENT RETENTION, HIRING, TRAINING AND SUPERVISION, OR PROVIDE A BASIS FOR LIABILITY AGAINST SERGEANT SLAYNE OR LIEUTENANT ZIELINSKI, AND THESE <u>CLAIMS MUST BE DISMISSED</u>**

Plaintiff has presented no opposition to the motion for summary judgment on the claims for § 1983 excessive force, malicious prosecution, municipal liability, common law malicious prosecution or negligent retention, hiring, training and supervision. Additionally he concedes that there is no evidence that could establish that Sergeant Slayne was even involved with the arrest of plaintiff, as he is required to at this stage. "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006). <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (requiring proof of each element of the non-moving party's claim to defeat summary judgment). Plaintiff also concedes that Lt. Zielinski's only involvement was in issuing orders to disperse through a megaphone that he ignored. While Plaintiff was subject to those orders issued by Lt. Zielinski, Lt. Zielinski had no direct involvement with plaintiff, or even Officer McNamara. Exhibit J, pp. 40-43; 75-77; Exhibit F, pp. 36-66.

Plaintiff mentions Lt. Zielinski under a heading for failure to intervene only, but even under that theory his claim must be dismissed. Plaintiff cannot establish, and does not attempt to argue, that Lt. Zielinski had an opportunity to intervene, let alone had knowledge of plaintiff's arrest. To bring a claim for failure to intervene requires "there was a realistic

opportunity to intervene to prevent the harm from occurring." Simcoe v. Gray, 577 Fed. Appx. 38, 40 (2d Cir. 2014) (quotations omitted).  As the testimony of plaintiff and Officer McNamara establishes, Lt. Zielinski took no part in plaintiff's arrest, the decision to arrest him, and had no knowledge that plaintiff had decided to sit on the sidewalk and await police action.  This is indisputably confirmed by the video evidence: that Lt. Zielinski continued to clear the sidewalk to the south, towards 40 Foley Square, away from plaintiff and where he was ultimately arrested. Exhibit G; Exhibit H; Exhibit I; Exhibit BB.

All claims against Lt. Zielinski and Sgt. Slayne must be dismissed with prejudice, as well as the unopposed claims.  "Federal courts may deem a claim abandoned when a party opposing summary judgment fails to address the [movant's] argument in any way.  Accordingly, the Court dismisses these claims as abandoned." Franks v. City of New York, 13 Civ. 2261 (ILG) (MDG), (E.D.N.Y. 2015), 2015 U.S. Dist. LEXIS 66004, *5; quoting Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**PROBABLE CAUSE EXISTED FOR PLAINTIFF'S NOVEMBER 5, 2011 ARREST, AND QUALIFIED IMMUNITY ATTACHES**

Plaintiff attempts to argue that his November 5, 2011 arrest was without probable cause, or arguable probable cause despite conceding the facts that give rise to his arrest.  He concedes that he was present at a demonstration in front of 60 Centre street.  He concedes that he refused to leave the sidewalk after the police ordered the protestors and plaintiff to disperse from that sidewalk.  He concedes that he led a chant of we want the steps, Exhibit G, 5:50-6:25, and he cannot dispute the incontrovertible video evidence, his own testimony, and Lt. Zielinski's testimony, which establishes that protestors became upset, unruly, and pushed against the police line.  Exhibit F, 46: 21-46:7; Exhibit G, 7:00-8:30; Exhibit L, 176: 5-17.  He fails to present any

evidence that the concerns expressed by Chief Anger regarding the hazards of the protest moving to the steps are illegitimate. Exhibit K, 224:5-225:23. He even admits that he sat down on the sidewalk and waited to be placed into police custody rather than comply with police orders. Exhibit I. His claim that there is no probable cause for his arrest rests entirely on the allegation that the orders to disperse were unlawful. To tread this path plaintiff relies upon mischaracterizing testimony, disregarding incontrovertible evidence, and misrepresenting the duties of the police and the law in the Second Circuit.

Initially plaintiff argues that NY PL 240.20 cannot apply based on, *inter alia*, a small section of testimony from Lt. Zielinski. Plaintiff holds this testimony out to argue that Lt. Zielinski did not believe he was issuing a lawful order to disperse, or that individuals were committing disorderly conduct when he issued the orders. See Generally Exhibit L, 173:3 – 189:4. This argument fails for four reasons.

First, even if Lt. Zielinski did not believe he was issuing lawful orders it is immaterial. The test for both qualified immunity and probable cause are objective tests. Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994). That means regardless of Lt. Zielinski's subjective belief the relevant analysis would still from the perspective of the reasonable officer. The same rule applies with respect to the analysis for disorderly conduct more narrowly. Garcia v. Doe, 779 F.3d 84, 93 (2d Cir. 2014); See Tobias v. County of Putnam, 191 F. Supp. 2d 364, 374-5 (S.D.N.Y. 2002) (applying reasonable officer standard to NY PL 240.20). The critical analysis is not whether Lt. Zielinski thought the orders were lawful, which he did, or even whether the arresting officer thought the orders were lawful, which he did, but whether a reasonable officer could believe they were lawful.

Second, even assuming that the orders issued by Lt. Zielinski were unlawful the analysis for probable cause turns not on Lt. Zielinski alone, but the orders of the police department. The incontrovertible record demonstrates that minutes before Lt. Zielinski issued his orders to disperse, other officers had already ordered the protestors, including plaintiff, to disperse. Exhibit G, 4:10-6:30. Plaintiff did not comply.

Defendants relied upon, and plaintiff has failed to distinguish, U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012). There plaintiff attempted to argue an order to disperse was unlawful because his arrest came after the others in the group had left. The Second Circuit made clear that the order was lawful and plaintiff's arrest was Constitutional even once the group had diminished in size below where NY PL 240.20 would apply. Similarly, as the police issued orders to a crowd that largely complied with the order to disperse, it is of no moment that the sidewalk became less congested, and would be of no moment even if the group was reduced to only plaintiff sitting on the sidewalk refusing to leave. The initial orders to disperse were valid and justify the arrest of plaintiff under NY PL 240.20.

Third, the incontrovertible record establishes that the sidewalk was obstructed by protestors at the time the orders to disperse began. Photographs at Exhibit I shows the hundreds of protestors in front of 60 Centre. Video at Exhibit G and H shows the extremely dense crowd of hundreds in front of 60 Centre. Exhibit G, 00:00–06:00; Exhibit H. The video also shows the attempts of the protestors and plaintiff to block the sidewalk, including by sitting down in response to a lawful order to disperse. Exhibit G, 06:25-06:40; Exhibit H, 09:04-09:13, Exhibit I. Any argument plaintiff's counsel presents that the sidewalk was not obstructed cannot raise a factual issue in the face of the incontrovertible evidence and fails. Faruki v. City of New York, 2012 U.S. Dist. LEXIS 47310 (S.D.N.Y. Mar. 30, 2012) ("Furthermore, the store owners can be

heard on the audio tape of the third 911 call asking Plaintiff to leave the store… Plaintiff's claim that the owners never asked her to leave the store is contradicted by the incontrovertible record[.]") aff'd, 517 Fed. Appx. 1, 2 (2d Cir. 2013).

Fourth, plaintiff's reliance on the record attempts to twist a short section of testimony and take it completely out of context for the proposition that Lt. Zielinski did not believe he was issuing lawful orders, or that the protestors were committing disorderly conduct. On page 173 of Lt. Zielinski's deposition plaitniff asked whether he could tell from the video at 05:34 whether disorderly conduct was being committed. Having not been present or able to make out the recorded order to disperse from the limited video plaitniff made available, Exhibit L, p. 172: 16-24, he stated no. Twelve minutes into the video, at page 180-1, he observed that people were able to move with more freedom on the sidewalk than previously. That is immaterial to the question of probable cause to arrest. The initial orders to disperse began at least seven and a half minutes prior, and the individuals who complied with those lawful order may have opened up the sidewalk somewhat. That does not make plaintiff's choice to ignore those orders lawful, or the later orders unlawful. U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012). Plaintiff again mischaracterizes testimony on 187-188 where he questioned the witness on isolated moments to ask whether individuals were committing disorderly conduct. Taken out of context these moments are immaterial to probable cause. Additionally, Lt. Zielinski testified clearly to the lawful and legitimate basis for the orders to disperse he gave previously in the deposition. Exhibit L, 75:9–82:8.

Chief Anger also testified to the legitimate reason to prevent the protest from moving onto the steps and to disperse the crowd, and plaintiff presented no evidence to contradict those reasons. Exhibit K, 224:5-225:23. These orders were issued after a period of

time where hundreds of protestors obstructed the entire sidewalk in front of 60 Centre Street. Exhibit G, 00:00-04:30; Exhibit H, 00:00-03:00, Exhibit I; Exhibit L, 75:9–82:8. All evidence, including plaintiff's testimony, shows the crowd becoming upset and pushing against the police line when they were unable to take the steps. Exhibit F, 46: 21-46:7; Exhibit G, 05:00-08:30; Exhibit H 00:00-08:00; Exhibit L, 176: 5-17. Finally, plaintiff signalled his continued intentional defiance of the orders by sitting down and waiting for the police to arrest him. Officer McNamara had probable cause to arrest plaintiff for disorderly conduct and obstruction of governmental administration because plaintiff was part of a crowd that obstructed the sidewalk, disobeyed lawful orders to disperse, and plaintiff personally prevented officers from deploying with mesh barricades, setting aside the fact that he encouraged an admittedly unruly crowd of protestors to take the steps through a line of police officers.

Plaintiff presents a limited number cases to argue for a different analysis of what sort of conduct implicates the disorderly conduct statute. He relies primarily on People v. Johnson, 22 NY3d 1162 (N.Y. 2014). This state case dismissed an indictment against three individuals who were found to be insufficiently blocking a store entrance. While plaintiff uses this case and several others to mistakenly identify the standard as requiring a "breach of the peace," that language is misleading, particularly as used here. "[T]his court has equated [breach of the peace] with public inconvenience, annoyance or alarm, the governing phrase of our current disorderly conduct statute." People v. Weaver, 16 N.Y.3d 123, 128 (N.Y. 2011). Plaintiff apparently overlooked that the statute applies even where there is no evidence of public inconvenience, annoyance or alarm, "if the conduct recklessly creates a risk of such public disruption." Id. ("[T]here is no per se requirement that members of the public must be involved or react to the incident.").

Accordingly plaintiff's argument that the sidewalk did not have enough pedestrians for the disorderly conduct statute to apply fails, even if it were supported by the record, which it is not. Exhibit G, 00:00-15:00; Exhibit L, 76:22-82:11.

Plaintiff also relies upon the cases Papineau v. Parmley, 465 F.3d 46, 56 (2d. Cir. 2006) and Haus v. City of New York, 2011 U.S. Dist. LEXIS 155735 (S.D.N.Y. 2011). These comparisons are misplaced. In Papineau an entire protest was dispersed when police moved in and began making arrests without any warning on private property. While some individuals had blocked the roadway, officers were unsure who had engaged in that unlawful activity. In fact both Papineau and Haus expressly hold police action as proper where "interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears." Papineau v. Parmley, 465 F.3d 46, 57 (2d Cir. 2006); Plaintiff's MOL, ¶ 42.

The Second Circuit has recently affirmed this rule and distinguished Papineau because, *inter alia*, the protest and arrests there took place on private property, and no warnings were issued prior to arrests being made. Garcia v. Doe, 779 F.3d 84, 94 (2d Cir. 2014). Conversely in Garcia the Court recognized the explicit duties and obligations of the NYPD to regulate vehicular and pedestrian traffic, including at demonstrations. Id. See N.Y.C. Charter § 435(a). As noted in Bery v. City of New York, the City of New York "…certainly has a significant interest in keeping its public spaces safe and free of congestion." Bery v. City of New York, 97 F.3d 689, 697 (2d Cir. 1996); accord Mastrovincenzo v. City of New York, 435 F.3d 78, 100 (2d Cir. 2006) ("[R]educing sidewalk and street congestion in a city with eight million inhabitants[] constitutes[s] [a] significant governmental interest[]…") (internal quotation marks omitted); see also Concerned Jewish Youth v. McGuire, 621 F.2d 471, 478 (2d Cir. 1980) (where

the Court found that the interests of residents, visitors and workers must be balanced with that of protestors).

The City of New York has an obligation and right to regulate pedestrian traffic at demonstrations. This is upheld both by statute and controlling second Circuit caselaw. N.Y.C. Charter § 435(a); Marcavage v. City of New York, 689 F.3d 110 (2d Cir. 2012) (finding probable cause for obstruction of governmental administration arrest where officers, carrying out a governmental function of regulating pedestrian traffic during a demonstration, ordered plaintiffs to leave the area numerous times before their arrest). Plaintiff has presented various distinguishable state cases and non-controlling federal cases, but he fails to address and cannot rebut the law which holds that the orders issued were lawful unless they were "purely arbitrary and not calculated in any way to promote the public order." Crenshaw v. City of Mount Vernon, 372 F. Appx 202, 206 (2d Cir. 2010); U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012). Here the orders managed congestion on an extremely crowded sidewalk, kept an agitated crowd from a police line it was testing, prevented the dangers from the protestors taking the steps, Exhibit K, 224:5-225:23, and allowed the protestors to continue their action in Foley Square. Exhibit G, Exhibit H, Exhibit J, 40:5-42:17. Any of these justify the lawful orders given and plaintiff concedes he disobeyed them. There was probable cause to arrest plaintiff for disorderly conduct and obstruction of governmental administration and his claims for false arrest, and First Amendment retaliation must be dismissed. To the extent they are not, the officers involved in plaintiff's November 5, 2011 arrest are entitled to qualified immunity as any right of plaintiff's to defy the apparently lawful orders was not clearly established, and reasonable officers could differ, at least, in finding probable cause to arrest him.

## PROBABLE CAUSE EXISTED FOR PLAINTIFF'S SEPTEMBER 17, 2012 ARREST AND QUALIFIED IMMUNITY ATTACHES

Plaintiff contests his arrest on September 17, 2012 claiming that he was alone, and that he was never ordered to disperse. Turning to the record, plaintiff admits that officers both attempted to move him north and ordered him north on the sidewalk near the intersection of Broadway and Wall Street. Exhibit B, 42: 10-12; 45: 13-15; Exhibit F, 94:1-3. Plaintiff claims to know that he needed to move north, away from the congested access area at Wall Street, but did not do so. Exhibit F, 82:23-83:2. Instead, in response he chanted what a reasonable officer would interpret as him defying their attempts and orders to get people back from the employee entrance, leading a call and response of "who's sidewalk?" "our sidewalk." Exhibit N, 01:21-01:35.

Plaintiff admits to being present when officers attempted to clear that area, and admits that he instead stayed in place, gestured to what he perceived as media, and led a call and response instead of moving from that location as ordered. His arrest was proper. As for plaintiff's claim that he was somehow apart from the demonstration, again, a reasonable officer would understand, and plaintiff to some extent does not deny, that numerous other individuals present were associated with Occupy Wall Street. Plaintiff appeared to be part of that demonstration when he called out what counsel describes as an "Occupy Wall Street slogan." Plaintiff's MOL ¶ 10. Regardless, within the legal framework described above, in light of the published plans of Occupy Wall Street to literally occupy Wall St., and the attempts by the police to manage traffic at that intersection, the orders and attempts to disperse cannot be taken as arbitrary, and plaintiff's signaled defiance of them subjected him to arrest under NY PL

240.20(5) and 240.20(6) as well as for Obstruction of Governmental Administration.   Exhibit Q; Exhibit R, D835.[1]

Alternatively, officers are entitled to qualified immunity as a reasonable officer would believe plaintiff did not have a clearly defined right to disrupt traffic at that location or disobey the lawful orders and attempts to clear the area.  Furthermore, a reasonable officer could interpret plaintiff's chant that it was 'his sidewalk' as a refusal of the lawful orders he was given and an attempt to disrupt the already crowded sidewalk.  Additionally, plaintiff's First Amendment claim must be dismissed.  Even if plaintiff's chant drew Detective Pastula's attention and led to his arrest, the objective test for qualified immunity and probable cause preclude liability.  Furthermore there is no indication that his arrest was motivated by an attempt to silence his message, merely to keep the entrance to Wall Street.

### PLAINTIFF'S LOST WAGES CLAIMS MUST BE DISMISSED.

As discussed in the underlying motion to dismiss plaintiff's lost wages claim related to his November 5, 2011 arrest are precluded by his own failure to maintain his teaching license.  After disregarding numerous notifications he let his licensure lapse and, as warned numerous times, lost his teaching position.  Accordingly he is not entitled to any damages on this claim to the extent he has any actionable arrest claim.

Additionally, plaintiff's counsel proposes that he is entitled to lost wages related to his September 17, 2012 arrest, however, those damages remain too speculative.  Plaintiff was a substitute teacher placed on a list with no guarantee to work.  Regardless this claim is

---

[1] Defendants note that plaintiff contests the admissibility and use of Exhibit Q.  Plaintiff's arguments are unfounded, and Exhibit Q was both exchanged as part of discovery and used by plaintiff at depositions.  Additionally, defendants note, as Chief McNamara did in Exhibit AA, the NYPD quotes from portions of the Exhibit Q OWS plans in Exhibit R.  Whether or not roving intersection and sidewalk occupations took place, which they did – e.g. http://cityroom.blogs.nytimes.com/2012/09/17/protests-near-stock-exchange-on-occupy-wall-st-anniversary/# -, the police department did have to plan and police for that possibility as demonstrated in Exhibit R.

precluded by plaintiff contracting away his right to work in the event of an arrest, even absent a conviction.

## **CONCLUSION**

For the foregoing reasons defendants respectfully request that the Court grant summary judgment on all causes of action and dismiss plaintiffs' complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          June 12, 2015

>                       ZACHARY CARTER
>                       Corporation Counsel - City of New York
>                       *Attorney for Defendants*
>                       100 Church Street
>                       New York, New York 10007
>                       (212) 356-2373
>
>                       By:   /s/
>                             Andrew Lucas
>                             New York City Law Department
>                             Special Federal Litigation Division