DAVID A. THOMPSON
STECKLOW & THOMPSON

217 CENTRE STREET, 6TH FLOOR
NEW YORK, NEW YORK 10013
TEL:    (212) 566-8000
FAX:    (212) 202-4952
DAVE@SCTLAW.NYC

September 30, 2016

**BY ECF**
Hon. Thomas P. Griesa
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:    *Wiles v. the City of New York*, 13-cv-2898

Dear Honorable Judge Griesa:

Yesterday, the defendants supplemented their briefing in the pending motion for summary judgment with a letter which, essentially, asks this Court to adopt the decision of a summary judgment motion in a different case, *Mediavilla v. The City of New York*, 14-cv-8624. While the plaintiff in *Mediavilla* was arrested during the same November 5, 2011 protest as Joshua Wiles, the *Mediavilla* plaintiff was engaged in different conduct, and the fact-based summary judgment motion in this case cannot be decided based on the facts in *Mediavilla*. Furthermore, as will be explained further below, the decision in *Mediavilla* incorrectly applies the law in several ways. It ought not to be followed.

The primary basis for the decision in Mediavilla was that Jose Mediavilla's conduct in closely approaching defendant Lt. Michael Zielinski and repeatedly shouting "Treason!" at him contained a sufficient physical component of interference with Lt. Zielinkski's work, that there was probable cause to arrest Mr. Mediavilla for obstructing governmental administration (Penal Law 195.05). The court in *Mediavilla* held that the same conduct provided probable cause to arrest Mr. Mediavilla for violation of Section 1 of the disorderly conduct statute (fighting/tumultuous conduct). Mr. Wiles, on the other hand, engaged in no such conduct. The primary basis for the judgment in *Mediavilla* is lacking here.

The court in *Mediavilla* did, however, also decide that Mr. Mediavilla's refusal to leave the area when ordered to do so violated Section 6 of the disorderly conduct statute (Penal Law 240.20(6)), and provided a separate basis for arrest for obstructing governmental administration (Penal Law 195.05). Mr. Wiles, believing that he had the right to remain on the sidewalk and engage in peaceful protest, did not obey orders to leave. In this regard, the facts in *Wiles* and *Mediavilla* are similar, if not necessarily identical. In reaching its conclusion in *Mediavilla*, the court made erroneous findings of law and fact, which this Court should not repeat.

Joshua Wiles was one of perhaps a hundred Occupy Wall Street protestors who marched to 60 Centre Street on Nov. 5, 2011, a Saturday, intending to mount the steps of the courthouse. By protesting on the courthouse steps, the size of the protest would be evident in photographs. The police refused to allow the protestors to go onto the steps. The protestors remained on the sidewalk in front of the courthouse. Video of the protest shows protestors spread out over most of, and possibly all of, the width of the sidewalk.[1] However, video also shows that it was possible to move around the sidewalk within and through the group of protestors. There was no evidence that any pedestrians who wanted to walk through the group of protestors would be unable to do so. There was no specific evidence that there were any non-protestor pedestrians at that location. After about 15 minutes, the police began ordering the protestors off the sidewalk, declaring the sidewalk "closed." The police announced that the protest on the sidewalk was a "hazard." The police blocked the sidewalk with orange netting which they stretched across the width of the sidewalk, and began to make arrests. Joshua Wiles was one of those arrested.

The arrest of Joshua Wiles was lawful **only if** the police orders to disperse were lawful. They were not.

The court in *Mediavilla* relied on the statements of police that the presence of the protestors was a "hazard," and "unsafe," as justifying the orders to disperse. This was factual and legal error. The nature of the "hazard" is not self-evident from the video, and, in fact, the defendants have never been able to identify any non-speculative hazard created by the protestors. (Defendant Steven Anger opined in deposition that, if there

---

[1]     There are questions of fact as to how much of the sidewalk was occupied, and for how long.

2

was an emergency inside the courthouse, the presence of protestors could hinder rescue efforts).

The police cannot rely on the existence of a "hazard" to justify arrests if the hazard does not, in fact, exist. Otherwise, the police would have complete discretion to disperse and terminate any protest, simply by making the naked assertion that the protest created some unspecified hazard. The protests of disfavored groups would be deemed "hazardous," while favored groups' protests would be deemed safe. The First Amendment does not permit this. It is "obvious" that "a State may not unduly suppress free communication of views, religious or other, under the guise of conserving desirable conditions." *Cantwell v. Conn.*, 310 U.S. 296, 308 (1940). A dispersal order curtailing First Amendment expression is lawful only if made in response to a "clear and present danger" of an "immediate threat to public safety, peace, or order." *Cantwell*, 310 U.S. at 308. A speculative hazard will not do. As to this issue, then, the defendants must demonstrate that no reasonable jury could fail to find that the presence of the protestors on the sidewalk created a clear and present danger of an immediate threat to public safety. Because there is no concrete evidence of any hazard **at all**, the defendants cannot meet this burden.

By accepting the existence of a "hazard" as indisputable, the court in *Mediavilla* misinterpreted the evidence: there was no evidence of **any** hazard other than the self-serving declarations of the police. By crediting the defendants' contention that a hazard existed, without considering that a jury could find that no hazard existed based on the absence of any evidence of danger, the court also committed the legal error of failing to draw all inferences in favor of the non-movant plaintiff.

The only other possible basis for the police order to disperse was that the protestors were collectively violating Section 5 of the disorderly conduct statute (Penal Law 240.20(5), obstructing pedestrian traffic). Here again, the *Mediavilla* court deemed defense allegations to be indisputable truths, when evidence supporting those allegations was lacking. The *Mediavilla* court wrote: "it is more than likely and reasonable to believe that a majority of pedestrians in the vicinity would have steered clear of the demonstrators." (*Mediavilla* Decision, p. 23). The court speculates: first, that there were non-protestor pedestrians at the location, and second, that these possible pedestrians

3

would have crossed the street to avoid walking through the protest. A court may not rule against the non-movant on a motion for summary judgment based on what the judge believes is "likely" and "reasonable." Juries, not judges, decide such things. In the absence of any evidence that real, flesh-and-blood pedestrians actually were obstructed, a reasonable jury could easily find that the protestors were not committing disorderly conduct.

There can be no doubt that in the absence of other pedestrians, it is impossible to violate 240.20(5). *See, e.g., People v Coley*, 38 Misc. 3d 1220(A), 1220A (N.Y. City Crim. Ct. 2013) (dismissing criminal complaint that failed to allege "what pedestrians were forced to do as a result of defendant's...behavior."). The language of the statute plainly requires the existence of other pedestrians ("He **obstructs** vehicular or pedestrian traffic"). The Court of Appeals, reviewing decades of case law, explained: "In virtually all of our prior decisions, the validity of disorderly conduct charges has turned on the presence or absence of adequate proof of public harm." *People v. Baker*, 20 N.Y.3d 354, 359 (2013).[2] The violation also requires intent, and intent to obstruct pedestrians cannot be found in conduct performed where there are no pedestrians.[3] And, because the plaintiff was engaged in First Amendment-protected protest, the plaintiff's conduct is ruled by the "clear and present danger" test of *Cantwell*, which, it bears repeating, requires an "immediate threat to public safety, peace, or order," not a potential obstruction of hypothetical pedestrians. *Cantwell*, 310 U.S. at 308.

Video of the protest does not rule out the possibility that pedestrians could walk through the protest on the sidewalk, albeit with some inconvenience. "New York courts have interpreted this statute to permit punishment **only** where the conduct at issue does

---

[2]     The disorderly conduct statute is limited to conduct that creates or recklessly threatens a "breach of the peace." *People v. Weaver*, 16 N.Y.3d 123, 127 (2011). Breach of the peace, in turn, means a disturbance of real consequence to the community, a "disturbance ... of the whole community, or of any sizeable segment thereof." *People v. Chesnick*, 302 N.Y. 58, 61 (1950).

[3]     While the *mens rea* of the statute includes recklessness, in the Penal Law, "recklessness" requires disregard of a known risk, and "[t]he risk must be of such nature and degree that disregard thereof constitutes a **gross deviation** from the standard of conduct that a reasonable person would observe in the situation." Penal Law § 15.05 (emphasis added). It cannot seriously be argued that non-violently protesting financial corruption is conduct which "constitutes a gross deviation" from acceptable standards.

**more than merely inconvenience** pedestrian or vehicular traffic." *Papineau v. Parmley*, 465 F.3d 46, 59 (2d Cir. 2006) (emphasis added). After *Papineau* was decided, the New York Court of Appeals reaffirmed the principle once again: "Something **more than a mere inconvenience of pedestrians** is required to support the charge" of disorderly conduct. *People v. Jones*, 9 N.Y.3d 259, 262 (2007) (dismissing charge).

Even if it were indisputable that the protest rendered the entire sidewalk completely impassable, it is clearly established law that the elements of 240.20(5) have **not** been met even where demonstrators block a sidewalk, "requiring [pedestrians] to enter the roadway to get to the other side," or "forc[ing] pedestrians out into the street." *Papineau*, 465 F.3d at 59. (It should be noted that video shows that large plastic traffic cones closed the portion of the street closest to the sidewalk to a depth of approximately four feet, so that if any pedestrians were present, and stepped into the street to go around the protest, they could have done so safely.).

Summary judgment could not be granted to the defendants unless there was no **possible dispute** that pedestrians were not merely inconvenienced, but that there was some larger and more substantial public harm caused by the protestors' presence on the sidewalk. Even if the *Mediavilla* court's speculation that there existed pedestrians who crossed the street to avoid the protest were indisputable fact, Penal Law 240.20(5), as interpreted by the New York Court of Appeals, and as limited by First Amendment jurisprudence, would not have been violated.

The *Mediavilla* court also erred in interpreting Penal Law 240.20(6), which makes it a violation to refuse to obey a **lawful** police order. New York Courts have long held that citizens are free to disobey orders which do not have a lawful basis. *See, e.g., Jones*, 9 N.Y.3d 259. The *Mediavilla* court improperly relied on *People v. Galpern*, 259 N.Y. 279, 284-85 (1932), which interpreted a predecessor statute, and which has been superseded both by the passage of Penal Law 240.20 and by Court of Appeals decisions interpreting the current statute, in particular *People v. Munafo*, 50 N.Y.2d 326, 331 (N.Y. 1980), *People v. Tichenor*, 89 N.Y.2d 769, 777 (1997), *People v. Jones*, 9 N.Y.3d 259 (2007), and *People v. Johnson*, 22 N.Y.3d 1162, 1164 (2014). The facts of *Jones* (2007) and *Galpern* (1932) are essentially identical. In *Galpern*, the court summarized the facts as follows: "the defendant did 'congregate' with five or six friends on a public street,

even if he did so in an orderly and inoffensive way." *Galpern*, 259 N.Y. at 284. In *Jones*, a police officer observed "defendant along with a number of other individuals standing around at the above location, to wit a public sidewalk, not moving." *Jones*, 9 N.Y.3d at 261. In *Jones*, there was an added allegation – absent in *Galpern* -- that "numerous pedestrians in the area had to walk around defendants. " *Id.* In both cases, the police ordered the defendant to move on, and the defendant refused. In 1932, in *Galpern*, the Court of Appeals held that the defendant was guilty of disorderly conduct because the order he disobeyed was not "purely arbitrary." In 2007 in *Jones*, the Court of Appeals held that the complaint had to be dismissed for lack of facial sufficiency: the defendant's refusal to move was lawful, the order to disperse was not. The Court of Appeals reached a similar result in a later case, in which "defendant stood with three other young men, reputed to be gang members, on a street corner, and the four refused to move when asked to do so by the police." *People v. Johnson*, 22 N.Y.3d 1162, 1164 (2014). *See also Wright v. Georgia*, 373 U.S. 284, 291-292 (1963) ("Obviously ... one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution.").

The *Mediavilla* court also erred in the interpretation and application of Penal Law 195.05 (obstructing governmental administration ("OGA")). An order which, because unlawful, would not support an arrest for 240.20(6), likewise cannot justify an arrest for OGA. Under well-established interpretation of Penal Law 195.05, it is not obstructing governmental administration to obstruct **unlawful** police conduct. *See Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. N.Y. 2010). For example, it is not OGA to interfere in an arrest, if the arrest is without probable cause. *See id.* ("In New York, however, for an arrest to be 'an official function,' it must be lawful."). In fact, mere failure to obey an **lawful** order, without more, is not OGA. *See Dowling v. City of New York*, 2013 US Dist. LEXIS 142108. \*10 (E.D.N.Y. 2013).

For similar reasons, the *Mediavilla* court's reliance on the City Charter was erroneous. The Charter does not, in itself, criminalize any conduct, and so it cannot provide probable cause for any arrest. Nor can the Charter's general grant of police powers to the police department supersede Court of Appeals interpretation of the Penal

Law, or endow police with the power to make arrests in the absence of a specific criminal violation.

It is unclear whether the *Mediavilla* court intended to hold that Mr. Mediavilla's repetitive shouting of "Treason!" would have provided probable cause for his arrest in the absence of other conduct. To the extent that the *Mediavilla* court intended such a holding, the decision is in error. To the extent that the defendants have argued that Mr. Wiles' chant of "We want the steps" somehow justified the arrest, there is no evidence "that his words were intended to produce, and likely to produce, imminent disorder, [and therefore] those words could not be punished by the State on the ground that they had a tendency to lead to violence." *Hess v. Indiana*, 414 U.S. 105, 109 (1973).

Finally, it should be noted that the *Mediavilla* decision has no relation or application whatsoever to Mr. Wiles' claims arising from his September 7, 2012 arrest. In that arrest, Mr. Wiles, alone among dozens of intermingled pedestrians and protestors walking and standing on the sidewalk near the intersection of Wall Street and Broadway was arrested, because Mr. Wiles, alone among those present, called out an Occupy Wall Street political slogan: "Whose streets?" There could not be a clearer case of an arrest made in retaliation for political speech.

For all the foregoing reasons, this Court should not follow the *Mediavilla* court's factual findings or legal conclusions, and should deny the defendants' motion for summary judgment in its entirety.

Respectfully submitted,

David Thompson